UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 18-CV-23181-WILLIAMS/TORRES

RANDALL NOON, as Personal
Representative of the Estate of
KAREN NOON, Deceased,

Plaintiff(s),

v.

CARNIVAL CORPORATION, a Panamanian
Corporation d/b/a CARNIVAL CRUISE LINES,

Defendant(s).
_______________________________________________/

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

The Plaintiff RANDALL NOON, proceeding as Personal Representative of and on behalf of the Estate of KAREN NOON, Deceased, files this Second Amended Complaint against Defendant CARNIVAL CORPORATION, a Panamanian Corporation d/b/a CARNIVAL CRUISE LINES (Carnival), pursuant to the Order of February 1, 2019 dismissing the first Amended Complaint without prejudice and authorizing filing of a Second Amended Complaint (DE 23), and alleges:

**JURISDICTION, VENUE AND PARTIES**

1. This is an action for damages in excess of seventy-five thousand ($75,000.00) dollars, exclusive of interest and costs.

2. Plaintiff RANDALL NOON is sui juris and at all material times has been a citizen and resident of the state of Michigan.

3. Decedent KAREN NOON was at all material times a citizen and resident of the state of Michigan.

4. Plaintiff RANDALL NOON is the duly appointed and acting personal representative of the Estate of KAREN NOON, Deceased, and is proceeding in that capacity in this action. He is also the surviving spouse of KAREN NOON.

5. Defendant CARNIVAL CORPORATION (CARNIVAL) is a Panamanian corporation with its principal place of business in Miami, Miami-Dade County, Florida. At all material times Defendant CARNIVAL CORPORATION has done business under the fictitious name "CARNIVAL CRUISE LINES." For federal jurisdictional purposes, CARNIVAL is both a citizen of Panama and a citizen of Florida.

6. Subject matter jurisdiction exists, based on diversity of citizenship pursuant to 28 U.S.C. §1332(a) (2). As alleged above there is complete diversity in citizenship of the parties because both Plaintiff RANDALL NOON and decedent KAREN NOON are and at all material times were residents of Michigan, while Defendant CARNIVAL is a citizen both of Panama and of Florida for jurisdictional purposes. The amount of damages claimed exceeds the minimum jurisdictional amount required for diversity of citizenship cases.

7. At all material times, CARNIVAL has conducted ongoing substantial and not isolated business activities in Miami-Dade County, Florida, in the Southern District of Florida, through having its principal place of business there, so that in personam jurisdiction exists in the United States District Court for the Southern District of Florida.

8. At all material times, CARNIVAL has engaged in the business of operating maritime cruise vessels for paying passengers, including the Plaintiff and decedent.

9. The ticket contract between the parties, which was drafted by or on behalf of CARNIVAL without any negotiations with the Plaintiff or decedent, requires all fare paying passengers to bring any lawsuit against CARNIVAL arising out of injuries or events occurring on the subject voyage in this federal judicial district. Furthermore, CARNIVAL does business in this judicial district and has its principal place of business in this district. Venue is therefore proper in this Court.

**PRELIMINARY ALLEGATIONS COMMON TO ALL COUNTS**

10. At all material times, Defendant CARNIVAL has been engaged in the business of operating maritime cruise vessels for fare paying passengers and for this purpose operates, among other vessels, the "SENSATION", a large passenger cruise ship.

11. At all material times, the Plaintiff RANDALL NOON and his wife, decedent KAREN NOON, were fare paying passengers on board the SENSATION under the ticket contract referenced above and were thus legally entitled to be aboard the vessel for the entire voyage.

12. The subject voyage began on July 3, 2017 at Miami, Florida and ended at Miami, Florida on the morning of July 8, 2017. Intervening days of the cruise included both days at sea and stops at various intermediate ports. The cruise thus both began and ended at a port in the United States of America.

13. On the evening of July 7, 2017, KAREN NOON experienced shortness of breath and respiratory distress. She was taken back to her stateroom on a wheelchair provided by CARNIVAL. Once Mrs. NOON was back in her stateroom her family members called the ship's medical center and informed the medical center staff that Mrs. NOON was having difficulty breathing. The ship's medical staff told the family that an oxygen tank would be provided, subject to a $300.00 deposit. The medical center did provide the tank, but without an examination of Mrs. NOON, either in the medical center or in her stateroom. Instead, Mr. NOON personally picked up the oxygen tank and took it back to the stateroom.

14. The oxygen tank provided required connection to an electric outlet to be used and hence was not portable and could not be used by Mrs. NOON off the ship or outside of her stateroom.

15. Mrs. NOON used the oxygen tank throughout the remainder of the evening on July 7, 2017 and the early morning of July 8, 2017, without incident until the events described in the next paragraph.

16. At approximately 7:00 a.m. on July 8, 2017, ship's medical center staff contacted Mr. and Mrs. NOON in their stateroom and informed them that they had to return the oxygen tank because it was time to disembark.

17. Shortly thereafter, two porters arrived at the stateroom and picked up the oxygen tank, without conducting any examination of Mrs. NOON beyond ordinary lay observation and without alerting ship's medical personnel that a professional medical examination was or might

be necessary. At the time the SENSATION was docked at its ultimate destination port of Miami, Florida, well within three miles from shore.

18. On the morning of July 8, 2017, after the SENSATION had entered Florida territorial waters and was docked in port in Miami, FL, Plaintiff RANDALL NOON, decedent KAREN NOON and accompanying members of the NOON family clearly expressed their desire to keep the supplemental oxygen they had been provided until they were transported to a land based hospital, but CARNIVAL crewmembers supervising the disembarkation procedures refused either to allow them to keep the oxygen tank they had been provided or to provide a substitute tank.

19. At the time and place referenced in the preceding paragraph, the NOON family also requested from CARNIVAL crew members the soonest possible transport to a land based hospital or medical facility. Nevertheless, the CARNIVAL crewmembers supervising the disembarkation process failed to summon any land based emergency medical service providers to transport Mrs. NOON to a land based hospital and failed to notify any land based emergency service providers that transport was or might be needed.

20. Defendant CARNIVAL's crewmembers at all material times would not allow Mr. or Mrs. NOON to summon emergency service providers or private transportation on their own.

21. RANDALL NOON and KAREN NOON's disembarkation was delayed even after they expressed their desire to be transported to a hospital promptly and even after Mrs. NOON exhibited obvious signs of respiratory distress. Mrs. NOON remained on board without


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

supplemental oxygen or other medical services and without any medical examination or evaluation until finally allowed to disembark.

22. Once allowed to disembark, Mrs. NOON was taken off the ship by CARNIVAL nonmedical crewmembers operating a wheelchair, unaccompanied by any medical crewmembers of the vessel or by other medical personnel or emergency providers, since none had been summoned.

23. All acts and omissions of CARNIVAL crewmembers referenced in Paragraphs 16 through 22 above were conducted in furtherance of the business of CARNIVAL's passenger cruise vessel "SENSATION," in particular the supervision of disembarkation procedures for the vessel's passengers and inventory control for its medical equipment.

24. Very soon after Mrs. NOON disembarked, but while she was still at the port, she went into respiratory arrest.

25. Land based emergency responders arrived at approximately 9:06 a.m., approximately six minutes after being called to the port. Mrs. NOON was then unresponsive, in cardiopulmonary arrest and with no respirations.

26. Personnel including ambulance operators, paramedics, and emergency medical technicians employed by the Miami-Dade Fire Rescue Department, not a party to this action, transported Mrs. NOON to Jackson Memorial Hospital, approximately ten minutes by ambulance from the port.

27. While in transit and upon arriving at Jackson Memorial Hospital, Mrs. NOON had to be resuscitated and intubated.

28. After examination at Jackson Memorial Hospital on July 8, 2017, Jackson medical staff determined that Mrs. NOON had sustained a severe anoxic brain injury, lacked brainstem reflexes, had no motor response, exhibited a multi-organ failure, and had sustained a devastating cerebral insult.

29. Mrs. NOON was pronounced dead on July 9, 2017 at Jackson Memorial Hospital in Miami, Florida.

30. All the acts, omissions and events referenced in Paragraphs 16 through 25 above occurred while the SENSATION was in port in Miami, Florida, in Florida territorial waters and less than three miles from shore.

31. As a direct and proximate result of the injury to and death of KAREN NOON, her surviving spouse RANDALL NOON has sustained damages pursuant to the Florida Wrongful Death law, Florida Statutes Section 768.21, applicable since the death of KAREN NOON occurred in port in Florida. He has lost the medical and funeral bills paid or incurred by him, the spousal companionship provided to him by KAREN NOON, her earnings, earning capacity and financial support, and the value of household and other services provided by her. Furthermore, he has incurred mental pain and suffering as a result of Mrs. NOON's injury and death. These damages are permanent and continuing in their nature and will continue to be incurred by RANDALL NOON throughout the remainder of his life.

32. As a further direct and proximate result of the injury to and death of KAREN NOON, decedent KAREN NOON's grandchildren MAKAYLA NOON, SAGE MAY LENARD, and ELIJAH RANDALL LENARD have lost the support and services of the decedent. They qualify as survivors pursuant to the Florida Wrongful Death Act, Section 768.18(1), as blood relatives of the decedent partly or wholly dependent on her for support and services.

33. As a further direct and proximate result of the injury to and death of KAREN NOON, the Estate of KAREN NOON has sustained damages pursuant to the Florida Wrongful Death law, Florida Statutes Section 768.21. The estate has lost the amount of medical and burial/funeral bills paid or incurred by it and net accumulations that would have been assets of the Estate if not for her death.

34. Alternatively, the Estate of KAREN NOON and RANDALL NOON, as Michigan residents, are entitled to wrongful death and survival damages pursuant to Michigan law. Pursuant to Michigan statutory law, specifically MCLS §600.2922, the Estate of KAREN NOON is entitled to medical and funeral expenses resulting from her injury and death and to damages for the conscious pain and suffering she experienced from the time of her tortiously caused injury to the time of her death. Also pursuant to MCLS §600.2922, RANDALL NOON as surviving spouse of KAREN NOON is entitled to damages for loss of her financial support, society and companionship.

35. The Plaintiffs have complied with all conditions precedent to bringing this action. In particular, on or about July 17, 2017, within six months of the death of KAREN NOON,

counsel acting on behalf of RANDALL NOON as Personal Representative of the Estate of KAREN NOON sent the Defendant CARNIVAL a written notice of claim as required in the operative passenger ticket contract, a copy of which is attached as Exhibit 1. The incident was also reported to CARNIVAL in a timely fashion and documented in writing by CARNIVAL soon after the time it occurred, well within the six month notice period.

## COUNT I - VICARIOUS LIABILITY FOR NEGLIGENT BREACH OF NONMEDICAL CREWMEMBER DUTY TO PROVIDE AID OR ASSISTANCE TO SICK OR INJURED PASSENGERS

36. The Plaintiff adopts, re-alleges and incorporates by reference all allegations of Paragraphs 1 through 35 above and further alleges the following.

37. At all material times, the non-medical crewmembers of the Defendant CARNIVAL supervising the disembarkation procedures for the passengers of the SENSATION and inventory control for the vessel's equipment owed KAREN NOON AND RANDALL NOON, as fare paying passengers aboard the cruise vessel, a duty of reasonable care for their safety and security.

38. At all material times, the non-medical crewmembers' duty of reasonable care to passengers referenced above included a duty to furnish passengers actually or constructively known to those crewmembers to be sick or injured such aid and assistance as ordinarily prudent persons would render under similar circumstances.

39. The non-medical crewmembers' duty of reasonable care to furnish sick or injured passengers prudent aid or assistance, as detailed in the preceding paragraphs, included duties to provide passengers actually or constructively known to be sick or injured prompt access to ship based competent medical care, prompt evacuation from the vessel to the nearest land based facility able to provide them reasonably necessary medical care, or both, having due regard to the reasonably apparent nature and seriousness of the medical emergency, the location of the vessel in port, and the availability of ship based and nearby land based care.

40. As of the time the porters from the ship's medical center retrieved the non-portable oxygen tank as described in Paragraph 17 above, Mrs. NOON was suffering from respiratory distress to an extent obvious even to lay crewmembers, including CARNIVAL's non-medical crew such as the porters. Indeed, the porters actually observed and commented upon Mrs. NOON's distressed state.

41. After the porters from the ship's medical center retrieved the oxygen tank and throughout the ensuing disembarkation procedures, Mr. and Mrs. NOON and the family members accompanying them repeatedly advised the ship's non-medical crewmembers conducting and supervising the disembarkation procedures that Mrs. NOON was seriously ill and in respiratory distress and repeatedly requested prompt transportation to the nearest available land based hospital.

42. Notwithstanding the NOON family's explicit requests and Mrs. NOON's obviously distressed medical condition, serious enough to be apparent even to the ship's porters,


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

the CARNIVAL non-medical crew members conducting the disembarkation procedures failed to summon emergency responder services to transport Mrs. NOON to a land based hospital, failed to summon ship's medical personnel to monitor or treat her condition pending transport to a land based hospital, and refused to allow the NOON family to summon private transportation to a land based hospital. Instead, the crew members insisted that they would have to arrange transportation off the ship and insisted that Mrs. NOON and the NOON family had to follow all standard disembarkation procedures, including checkout at the guest services department and customs processing, before leaving the ship. As a result of the non-medical crewmembers' insistence on following all routine disembarkation procedures before allowing the NOON family to leave the ship, refusal to summon emergency responders or the ship's own medical personnel, and refusal to allow the NOON family to summon alternative transportation off the ship, Mrs. NOON remained on the ship without medical supervision and treatment or supplemental oxygen during the period between the time the oxygen tank was retrieved and the time she had completed disembarkation procedures and was finally allowed off the ship, a period of over an hour.

43. The failure of CARNIVAL crewmembers supervising the disembarkation procedures to respond appropriately either to Mrs. NOON's obviously distressed condition or to the NOON family's explicit requests for prompt transportation off the ship to the nearest land based hospital, as detailed above, constituted a failure to exercise reasonable care to provide such aid and assistance as prudent persons would provide and hence was negligence.

44. At all material times, CARNIVAL was vicariously liable for the breaches of duty by its non-medical crewmembers detailed above, since at all material times those non-medical crewmembers were acting in furtherance of the business operations of CARNIVAL's passenger cruise vessel SENSATION, in particular the supervision of passenger disembarkation procedures and inventory control for the vessel's equipment.

45. As a direct and proximate result of the non-medical crewmembers' negligent breach of their duties of reasonable care to passengers actually or constructively known to be sick or injured and particularly to Mrs. NOON, as detailed above, for which CARNIVAL is vicariously liable as detailed above, necessary medical treatment for Mrs. NOON's respiratory distress was delayed for the period between the time the porters retrieved the oxygen tank and the time she was finally allowed to disembark.

46. As a direct and proximate result of the delay in medical treatment for Mrs. NOON's respiratory distress while in port in Miami, Florida, and hence of the negligence of CARNIVAL's crewmembers detailed above, for which CARNIVAL is vicariously liable as detailed above, Mrs. NOON sustained respiratory failure leading to cardiac arrest, suffered a resulting severe anoxic brain injury, and died.

47. As a direct and proximate result of the injury to and death of Mrs. NOON in port in Miami, Florida, the Estate and survivors of KAREN NOON have sustained and will continue to sustain wrongful death damages pursuant to the Florida Wrongful Death Act, Florida Statutes Section 768.21, as described in Paragraphs 31 through 33 above.

48. As an alternative to the compensatory damages alleged in the preceding paragraph, RANDALL NOON and the Estate of KAREN NOON have sustained and will continue to sustain, as a direct and proximate result of the injury to and death of Mrs. NOON in port in Miami, Florida, wrongful death and survival damages under Michigan law as described in Paragraph 34 above.

49. The conduct of CARNIVAL non-medical crewmembers conducting and supervising the disembarkation procedures for the NOON family, as described above, was willful, wanton or reckless in light of the apparent and urgent nature of Mrs. NOON's medical condition, the ready availability of land based and ship based medical care if it had been promptly summoned, and the privileging by ship's crewmembers of standard disembarkation procedures over the obvious and urgent medical needs of CARNIVAL's passenger Mrs. NOON.

50. Alternatively, the conduct of CARNIVAL non-medical crewmembers conducting and supervising the disembarkation procedures for the NOON family amounted to an intentional deprivation of Mrs. NOON's rights, given the crewmembers' actual knowledge of Mrs. NOON's medical condition and its serious and urgent nature, the explicit requests by the NOON family for prompt transportation of Mrs. NOON to the nearest land based medical care, the ready availability of land based and ship based care, and the intentional refusal of the ship's crew either to summon land based medical assistance promptly or to allow the NOON family to summon private transportation on their own.


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

51. The willful, wanton, reckless or intentional misconduct detailed in the preceding two paragraphs was undertaken in furtherance of the business operations of CARNIVAL's vessel SENSATION and hence warrants an award of punitive damages against CARNIVAL.

**WHEREFORE**, the Plaintiff demands judgment for compensatory and punitive damages against the Defendant CARNIVAL.

## COUNT II – NEGLIGENT BREACH OF ASSUMED OR UNDERTAKEN DUTY TO OBTAIN MEDICAL CARE - NONMEDICAL CREW

52. The Plaintiff adopts, re-alleges and incorporates by reference all allegations of Paragraphs 1 through 35 above and further alleges the following.

53. At all material times, the non-medical crewmembers of Defendant CARNIVAL owed KAREN NOON AND RANDALL NOON, as fare paying passengers aboard CARNIVAL's cruise vessel, a duty of reasonable care for their safety and security. The crewmembers also owed Mrs. NOON a duty to exercise reasonable care in furnishing goods and services they had undertaken to provide her and upon which they knew or should have known she was relying.

54. As of the time the ship's porters retrieved the oxygen tank when the ship had reached port, as described in Paragraph 17 above, Mrs. NOON was suffering from respiratory distress to an extent obvious even to lay crewmembers and that was in fact actually observed and commented upon by the porters retrieving the tank.

55. As of the time the ship's porters retrieved the oxygen tank when the ship had reached port, as described in Paragraph 17 above, the porters and CARNIVAL's other non-medical crewmembers knew or should have known that Mrs. NOON was relying upon the oxygen tank to assist her breathing.

56. After the porters from the ship's medical center retrieved the oxygen tank and throughout the ensuing disembarkation procedures, Mr. and Mrs. NOON and the family members accompanying them repeatedly advised the ship's non-medical crewmembers conducting and supervising the disembarkation procedures that Mrs. NOON was in respiratory distress and seriously ill and repeatedly requested prompt transportation to the nearest available land based hospital.

57. Notwithstanding the NOON family's explicit requests for prompt medical assistance and medical transportation, Mrs. NOON's obviously distressed medical condition, and CARNIVAL's knowledge that Mrs. NOON had been relying on supplemental oxygen provided by CARNIVAL to assist herself in breathing, the CARNIVAL non-medical crew members conducting the disembarkation procedures failed to summon emergency responder services to transport Mrs. NOON to a land based hospital, failed to summon ship's medical personnel to monitor or treat her condition pending transport to a land based hospital, failed to provide Mrs. NOON with supplemental oxygen or a substitute oxygen tank pending transport to a land based hospital, and refused to allow the NOON family to summon private transportation to a land based hospital. Instead, the crew members insisted that they would have to arrange

transportation off the ship and insisted that Mrs. NOON and the NOON family had to follow all standard disembarkation procedures, including checkout at the guest services department and customs processing, before leaving the ship, obtaining medical care, or receiving supplemental oxygen. As a result of the non-medical crewmembers' insistence on following all routine disembarkation procedures before allowing the NOON family to leave the ship, refusal to summon emergency responders or the ship's own medical personnel, failure to provide a substitute for the supplemental oxygen tank upon which they knew or should have known Mrs. NOON to have relied, and refusal to allow the NOON family to summon alternative transportation off the ship, Mrs. NOON remained on the ship without medical supervision and treatment or supplemental oxygen during the period between the time the oxygen tank was retrieved and the time she had completed disembarkation procedures and was finally allowed off the ship, a period of over an hour.

58. The failure of CARNIVAL non-medical crewmembers supervising disembarkation procedures to fulfill their undertaken or assumed duty to support Mrs. NOON's respiration pending transport to a land based facility capable of doing so, as detailed above, constituted negligence.

59. At all material times Defendant CARNIVAL was vicariously liable for the breaches of undertaken or assumed duties by its non-medical crewmembers detailed above, since at all material times the undertakings and assumptions of duty by CARNIVAL's non-medical crewmembers were undertaken in furtherance of the business operations of CARNIVAL's

passenger cruise vessel SENSATTION, in particular supervision of the disembarkation procedures for passengers on the SENSATION and inventory control for its equipment.

60. The breaches of undertaken or assumed duty by CARNIVAL's non-medical crewmembers and consequent negligence, as detailed above, occurred while CARNIVAL's vessel, its crew, and the NOON family were in port in Miami, Florida, in Florida territorial waters less than three miles from shore.

61. As a direct and proximate result of the negligent breaches undertaken or assumed duties by CARNIVAL's non-medical crewmembers, detailed above, for which CARNIVAL is vicariously liable as detailed above, necessary medical treatment for Mrs. NOON's respiratory distress was delayed for the period between the time the porters retrieved the oxygen tank and the time she was finally allowed to disembark.

62. As a direct and proximate result of the delay in medical treatment for Mrs. NOON's respiratory distress while in port in Miami, Florida, and hence of the breaches of undertaken or assumed duties on the part of CARNIVAL's non-medical crewmembers as detailed above, for which CARNIVAL is vicariously liable as detailed above, Mrs. NOON sustained respiratory failure leading to cardiac arrest, suffered a resulting severe anoxic brain injury, and died.

63. As a direct and proximate result of the injury to and death of Mrs. NOON in port in Miami, Florida, the Estate and survivors of KAREN NOON have sustained and will continue

to sustain wrongful death damages pursuant to the Florida Wrongful Death Act, Florida Statutes Section 768.21, as described in Paragraphs 31 through 33 above.

64. As an alternative to the compensatory damages alleged in the preceding paragraph, RANDALL NOON and the Estate of KAREN NOON have sustained and will continue to sustain, as a direct and proximate result of the injury to and death of Mrs. NOON in port in Miami, Florida, wrongful death and survival damages under Michigan law as described in Paragraph 34 above.

65. The breach of the undertaken duty of respiratory support by CARNIVAL's non-medical crewmembers was willful, wanton or reckless in light of their knowledge, at the time the oxygen tank it had provided was retrieved, that Mrs. NOON was relying on the supplemental oxygen previously provided by CARNIVAL's medical crewmembers to support her breathing, and in light of the apparent and urgent nature of Mrs. NOON's medical condition, the ready availability of either land based or ship based medical care if it had been promptly summoned, and the privileging by ship's crewmembers of standard disembarkation procedures over the obvious and urgent medical needs of CARNIVAL's passenger Mrs. NOON.

66. Alternatively, the conduct of CARNIVAL crewmembers conducting and supervising the disembarkation procedures for the NOON family amounted to an intentional deprivation of Mrs. NOON's rights, given the crewmembers' actual knowledge of Mrs. NOON's medical condition and its serious and urgent nature, actual knowledge of her reliance upon supplemental oxygen previously provided to her, the explicit requests by the NOON family for


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

prompt transportation of Mrs. NOON to the nearest land based medical care, the ready availability of land based and ship based care, and the intentional refusal of the ship's crew either to summon land based medical assistance promptly or to allow the NOON family to summon private transportation on their own.

67. The willful, wanton, reckless or intentional misconduct by CARNIVAL's non-medical crewmembers, as detailed in the preceding two paragraphs, was undertaken in the furtherance of the business operations of CARNIVAL's passenger cruise vessel SENSATION, in particular the supervision of disembarkation procedures for the vessel's passengers and inventory control for the vessel's equipment, and hence warrants an award of punitive damages against CARNIVAL.

**WHEREFORE**, the Plaintiff demands judgment for compensatory and punitive damages against the Defendant CARNIVAL.

## COUNT III – NEGLIGENT BREACH OF ASSUMED OR UNDERTAKEN DUTY TO OBTAIN MEDICAL CARE - MEDICAL CREW - ACTUAL AUTHORITY

68. The Plaintiff adopts, re-alleges and incorporates by reference all allegations of Paragraphs 1 through 35 above and further alleges the following.

69. At all material times, Defendant CARNIVAL owned and operated a medical center onboard its passenger cruise vessel, the SENSATION, which was open for use both by crewmembers and passengers on board the SENSATION.


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

70. At all material times, crewmembers of the Defendant CARNIVAL posted to and working in the medical center on board the SENSATION were employees or actual agents of CARNIVAL, acting in the course and scope of their employment or agency and in furtherance of the business operations of CARNIVAL on the SENSATION.

71. At all material times, crewmembers providing medical services in the medical center onboard the SENSATION were employees or agents of CARNIVAL and members of the crew of the SENSATION, subject to the orders and discipline of the vessel's captain and officers, and also subject to supervision and control by CARNIVAL.

72. At all material times, crewmembers providing medical services in the medical center onboard the SENSATION were employed by CARNIVAL pursuant to written contracts prepared exclusively by or on behalf of CARNIVAL. Accordingly CA RNIVAL represented to its medical crewmembers that they would act on behalf of CARNIVAL and they accepted this undertaking.

73. At all material times, crewmembers providing medical services in the medical center onboard the SENSATION were paid wages or salaries by CARNIVAL for their work in the medical center onboard the SENSATION.

74. At all material times, CARNIVAL made the decisions determining credentials and qualifications for staffing of its medical center, provided and paid to provide all medical equipment, pharmaceuticals, materials and supplies used in the operation of the medical center; determined the hours of operation of the medical center, and determined the number of

physicians, nurses, and supporting staff for the medical center. CARNIVAL also charged fees for medical equipment which it set, billed for, collected fees, and did not share fees with any medical center physician. CARNIVAL did not inform passengers that it considered its medical staff to be independent contractors rather than employees.

75. At all material times, CARNIVAL had the right to hire and fire medical personnel and crewmembers onboard the SENSATION.

76. At all material times, Defendant CARNIVAL was vicariously liable for the acts and omissions of the crewmembers posted to and working in the medical center on board the SENSATION, since they were employees or agents of CARNIVAL and their material actions were undertaken in furtherance of the business of the vessel, in particular the supervision, management and control of use of the vessel's medical equipment.

77. Crewmembers working as physicians, nurses, and other medical personnel in the medical center onboard the CARNIVAL SENSATION at the material times undertook a duty to provide respiratory support to Mrs. NOON, and to exercise reasonable care in doing so, when the medical center crewmembers center provided Mrs. NOON with an oxygen tank at the explicit request of the NOON family and after the NOON family had advised the medical center of the reason for their request.

78. At all material times, including the time the medical center crewmembers requested retrieval of the oxygen tank they had provided Mrs. NOON, the medical center crewmembers knew or should have known that Mrs. NOON was relying on the supplemental

oxygen they had provided her to assist her in her breathing, particularly since she or her family members had expressly requested supplemental oxygen and had expressly made Mrs. NOON's condition of respiratory distress known to crewmembers in the ship's medical center when requesting the tank.

79. Notwithstanding their actual or constructive knowledge of Mrs. NOON's condition of respiratory distress and of her reliance on supplemental oxygen, the medical center crewmembers sent only non-medically trained porters to retrieve the oxygen tank as described in Paragraph 17 above. No nurse, physician or other medically trained crewmember accompanied the porters to Mrs. NOON's stateroom to observe her condition, to examine her, or to provide her medical care pending her disembarkation and transfer to a land based facility. No nurse, physician or other medically trained crewmember inquired of the NOON family at that time whether Mrs. NOON required further medical assistance from ship's medical personnel or required emergency responder assistance or transfer to a land based medical facility.

80. After the porters from the ship's medical center retrieved the oxygen tank and throughout the ensuing disembarkation procedures, Mr. and Mrs. NOON and the family members accompanying them repeatedly advised the ship's non-medical crewmembers conducting and supervising the disembarkation procedures that Mrs. NOON was in respiratory distress and seriously ill and repeatedly requested prompt transportation to the nearest available land based hospital.


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

81. During the period of time between the time the porters retrieved the oxygen tank and the time, over an hour later, Mrs. NOON was finally allowed to disembark the ship, none of the ship's medical crewmembers contacted the NOON family or asked them if they required assistance, no medically trained crewmember examined Mrs. NOON or personally observed her condition, no medically trained crewmember onboard the ship contacted or summoned emergency responder services to transport Mrs. NOON to a land based facility, and no one from the medical center offered or provided Mrs. NOON a substitute oxygen tank or supplemental oxygen. Mrs. NOON accordingly remained on the ship without medical supervision and treatment and without supplemental oxygen during the period between the time the oxygen tank was retrieved and the time she had completed disembarkation procedures and was finally allowed off the ship, a period of over an hour.

82. The failures of CARNIVAL's medically trained crewmembers to contact, observe or examine Mrs. NOON after retrieval of the oxygen tank, to offer or provide her a substitute tank or supplemental oxygen, or to contact or summon emergency responder services to transport her to a land based medical facility were breaches of their undertaken or assumed duty to support Mrs. NOON's respiration pending her transfer to a land based medical facility. The ship's medical crew were thereby negligent.

83. CARNIVAL is vicariously liable for the negligence of its medical crewmembers onboard the SENSATION, since their actions were undertaken in furtherance of the business of

the vessel, specifically the supervision, management and control of the use of the vessel's medical equipment.

84. The breaches of undertaken or assumed duty by CARNIVAL's medical crewmembers on board the SENSATION and consequent negligence as detailed above occurred while CARNIVAL's vessel, its medical and non-medical crew, and the NOON family were all in port in Miami, Florida, in Florida territorial waters less than three miles from shore.

85. As a direct and proximate result of the negligent breach of undertaken duty by CARNIVAL's medical crew as alleged above, necessary medical treatment for Mrs. NOON's respiratory distress was delayed for the period between the time the porters retrieved the oxygen tank and the time she was finally allowed to disembark.

86. As a direct and proximate result of the delay in medical treatment for Mrs. NOON's respiratory distress while in port in Miami, Florida, and hence of the breach by CARNIVAL's medical crew of their undertaken or assumed duties to Mrs. NOON as detailed above, Mrs. NOON sustained respiratory failure leading to cardiac arrest, suffered a resulting severe anoxic brain injury, and died.

87. As a direct and proximate result of the injury to and death of Mrs. NOON in port in Miami, Florida, the Estate and survivors of KAREN NOON have sustained and will continue to sustain wrongful death damages pursuant to the Florida Wrongful Death Act, Florida Statutes Section 768.21, as described in Paragraphs 31 through 33 above.

88. As an alternative to the compensatory damages alleged in the preceding paragraph, RANDALL NOON and the Estate of KAREN NOON have sustained and will continue to sustain, as a direct and proximate result of the injury to and death of Mrs. NOON in port in Miami, Florida, wrongful death and survival damages under Michigan law as described in Paragraph 34 above.

89. The breach of the undertaken duty of respiratory support by CARNIVAL's medical crew was willful, wanton or reckless in light of their knowledge, at the time the oxygen tank they had provided was retrieved, that Mrs. NOON was relying on the supplemental oxygen provided to support her breathing, and in light of the urgent nature of Mrs. NOON's medical condition, the ready access of ship's medical personnel to Mrs. NOON to examine or treat her had they complied with their undertaken or assumed duty, and the ready availability of emergency responder services had the ship's medical personnel chosen to contact or summon them.

90. Alternatively, the conduct of CARNIVAL's medical crewmembers amounted to an intentional deprivation of Mrs. NOON's rights, given the crewmembers' actual knowledge of Mrs. NOON's medical condition and its serious and urgent nature, actual knowledge of her reliance upon supplemental oxygen previously provided by them and their actual knowledge that they were depriving her of that supplemental oxygen without providing substitute equipment and without even attempting to examine her or monitor her condition or to summon emergency responder services.

91. The willful, wanton, reckless or intentional misconduct by CARNIVAL's medical crewmembers, as detailed in the preceding two paragraphs, warrants an award of punitive damages against CARNIVAL.

**WHEREFORE**, the Plaintiff demands judgment for compensatory and punitive damages against the Defendant CARNIVAL.

## COUNT IV – NEGLIGENT BREACH OF ASSUMED OR UNDERTAKEN DUTY TO OBTAIN MEDICAL CARE - MEDICAL CREW - APPARENT AUTHORITY

92. The Plaintiff adopts, re-alleges and incorporates by reference all allegations of Paragraphs 1 through 35 above and further alleges the following.

93. At all material times, Defendant CARNIVAL owned and operated a medical center onboard its passenger cruise vessel, the SENSATION, which was open for use both by crewmembers and passengers on board the SENSATION.

94. At all material times, the medical personnel serving onboard the SENSATION were required by CARNIVAL to and did wear uniforms identifying themselves as CARNIVAL crewmembers and employees.

95. At all material times, CARNIVAL represented to passengers, through its promotional literature and otherwise, that crewmembers providing medical services in the

medical center onboard the CARNIVAL were employees or agents of CARNIVAL acting on behalf of CARNIVAL when providing medical services to passengers.

96. At all material times, KAREN NOON and RANDALL NOON relied on the express and implied representations of CARNIVAL as referenced above, including the CARNIVAL promotional literature describing the medical center onboard the SENSATION and the uniforms identifying medical personnel as crewmembers CARNIVAL required onboard medical personnel to wear. In reliance on these express and implied representations by CARNIVAL, they accepted the offer of supplemental oxygen without examination or evaluation as offered and provided by the medical center and as referenced in Paragraph 13 above.

97. At all material times crewmembers providing medical services in the medical center onboard the SENSATION were apparent agents of CARNIVAL for the reasons explained above, acting in the course and scope of their apparent agency, and CARNIVAL was accordingly vicariously liable for their material tortious acts or omissions.

98. Crewmembers working as physicians, nurses, and other medical personnel in the medical center onboard the CARNIVAL SENSATION at the material times undertook a duty to provide respiratory support to Mrs. NOON, and to exercise reasonable care in doing so, when the medical center crewmembers center provided Mrs. NOON with an oxygen tank at the explicit request of the NOON family and after the NOON family had advised the medical center of the reason for their request.


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

99. At all material times, including the time the medical center crewmembers requested retrieval of the oxygen tank they had provided Mrs. NOON, the medical center crewmembers knew or should have known that Mrs. NOON was relying on the supplemental oxygen they had provided her to assist her in her breathing, particularly since she or her family members had expressly requested supplemental oxygen and had expressly made Mrs. NOON's condition of respiratory distress known to crewmembers in the ship's medical center when requesting the tank.

100. Notwithstanding their actual or constructive knowledge of Mrs. NOON's condition of respiratory distress and of her reliance on supplemental oxygen, the medical center crewmembers sent only non-medically trained porters to retrieve the oxygen tank as described in Paragraph 17 above. No nurse, physician or other medically trained crewmember accompanied the porters to Mrs. NOON's stateroom to observe her condition, to examine her, or to provide her medical care pending her disembarkation and transfer to a land based facility. No nurse, physician or other medically trained crewmember inquired of the NOON family at that time whether Mrs. NOON required further medical assistance from ship's medical personnel or required emergency responder assistance or transfer to a land based medical facility.

101. After the porters from the ship's medical center retrieved the oxygen tank and throughout the ensuing disembarkation procedures, Mr. and Mrs. NOON and the family members accompanying them repeatedly advised the ship's non-medical crewmembers conducting and supervising the disembarkation procedures that Mrs. NOON was in respiratory

distress and seriously ill and repeatedly requested prompt transportation to the nearest available land based hospital.

102. During the period of time between the time the porters retrieved the oxygen tank and the time, over an hour later, Mrs. NOON was finally allowed to disembark the ship, none of the ship's medical crewmembers contacted the NOON family or asked them if they required assistance, no medically trained crewmember examined Mrs. NOON or personally observed her condition, no medically trained crewmember onboard the ship contacted or summoned emergency responder services to transport Mrs. NOON to a land based facility, and no one from the medical center offered or provided Mrs. NOON a substitute oxygen tank or supplemental oxygen. Mrs. NOON accordingly remained on the ship without medical supervision and treatment and without supplemental oxygen during the period between the time the oxygen tank was retrieved and the time she had completed disembarkation procedures and was finally allowed off the ship, a period of over an hour.

103. The failures of CARNIVAL's medically trained crewmembers to contact, observe or examine Mrs. NOON after retrieval of the oxygen tank, to offer or provide her a substitute tank or supplemental oxygen, or to contact or summon emergency responder services to transport her to a land based medical facility were breaches of their undertaken or assumed duty to support Mrs. NOON's respiration pending her transfer to a land based medical facility. The ship's medical crew were thereby negligent.


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

104. CARNIVAL is vicariously liable for the negligence of its medical crewmembers onboard the SENSATION, since they were apparent agents of CARNIVAL for the reasons detailed above.

105. The breaches of undertaken or assumed duty by CARNIVAL's medical crewmembers on board the SENSATION and consequent negligence as detailed above occurred while CARNIVAL's vessel, its medical and non-medical crew, and the NOON family were all in port in Miami, Florida, in Florida territorial waters less than three miles from shore.

106. As a direct and proximate result of the negligent breach of undertaken duty by CARNIVAL's medical crew as alleged above, necessary medical treatment for Mrs. NOON's respiratory distress was delayed for the period between the time the porters retrieved the oxygen tank and the time she was finally allowed to disembark.

107. As a direct and proximate result of the delay in medical treatment for Mrs. NOON's respiratory distress while in port in Miami, Florida, and hence of the breach by CARNIVAL's medical crew of their undertaken or assumed duties to Mrs. NOON as detailed above, Mrs. NOON sustained respiratory failure leading to cardiac arrest, suffered a resulting severe anoxic brain injury, and died.

108. As a direct and proximate result of the injury to and death of Mrs. NOON in port in Miami, Florida, RANDALL NOON and the Estate of KAREN NOON have sustained and will continue to sustain wrongful death damages pursuant to the Florida Wrongful Death Act, Florida Statutes Section 768.21, as described in Paragraphs 31 through 33 above.


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

109. As an alternative to the compensatory damages alleged in the preceding paragraph, RANDALL NOON and the Estate of KAREN NOON have sustained and will continue to sustain, as a direct and proximate result of the injury to and death of Mrs. NOON in port in Miami, Florida, wrongful death and survival damages under Michigan law as described in Paragraph 34 above.

110. The breach of the undertaken duty of respiratory support by CARNIVAL's medical crew was willful, wanton or reckless in light of their knowledge, at the time the oxygen tank they had provided was retrieved, that Mrs. NOON was relying on the supplemental oxygen provided to support her breathing, and in light of the urgent nature of Mrs. NOON's medical condition, the ready access of ship's medical personnel to Mrs. NOON to examine or treat her had they complied with their undertaken or assumed duty, and the ready availability of emergency responder services had the ship's medical personnel chosen to contact or summon them.

111. Alternatively, the conduct of CARNIVAL's medical crewmembers amounted to an intentional deprivation of Mrs. NOON's rights, given the crewmembers' actual knowledge of Mrs. NOON's medical condition and its serious and urgent nature, actual knowledge of her reliance upon supplemental oxygen previously provided by them and their actual knowledge that they were depriving her of that supplemental oxygen without providing substitute equipment and without even attempting to examine her or monitor her condition or to summon emergency responder services.

112. The willful, wanton, reckless or intentional misconduct by CARNIVAL's medical crewmembers acting as apparent agents of CARNIVAL, as detailed above, warrants an award of punitive damages against CARNIVAL.

**WHEREFORE**, the Plaintiff demands judgment for compensatory and punitive damages against the Defendant CARNIVAL.

## DEMAND FOR JURY TRIAL

The Plaintiff demands jury trial of all issues so triable as of right.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Amended Complaint and Demand for Jury Trial was served electronically on all attorneys of record on the attached Service List pursuant to the CM/ECF electronic filing system of the Court on this 7th day of February, 2019.

**s/PHILIP M. GERSON**
PHILIP M. GERSON
Florida Bar No. 127290
pgerson@gslawusa.com
filing@gslawusa.com
zdiaz@gslawusa.com
GERSON & SCHWARTZ, P.A.
Attorneys for Plaintiffs
1980 Coral Way
Miami, FL 33145-2624
Telephone: (305) 371-6000
Facsimile: (305) 371-5749

**SERVICE LIST**

Philip M. Gerson, Esq.
Florida Bar # 127290
E-mail: pgerson@gslawusa.com
Nicholas I. Gerson, Esq.
Florida Bar # 20899
E-mail: ngerson@gslawusa.com
Edward S. Schwartz, Esq.
Florida Bar # 346721
E-mail: eschwartz@gslawusa.com
Attorneys for Plaintiff
GERSON & SCHWARTZ, P.A.
1980 Coral Way
Miami, Florida 33145

Marc J. Schleir
Florida Bar # 389064
E-mail: mschleit@fowler-white.com
Christopher Knight
Florida Bar # 607363
E-mail: Cknight @fowler-white.com
Amanda A. Kessler
Florida Bar # 60885
E-mail: akessler@fowler-white.com
Attorneys for CARNIVAL CORPORATION
FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131