UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

RANDALL NOON , as Personal Representative of the Estate of KAREN NOON, deceased,

Plaintiffs,

v.

CARNIVAL CORPORATION, a Panamanian Corporation d/b/a CARNIVAL CRUISE LINES,

Defendant.

CASE NO. 18-cv-23181-Williams/Torres

**DEFENDANT CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES' MOTION FOR FINAL SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW**

Christopher E. Knight
Fla. Bar No. 607363
Email: cknight@fowler-white.com
Marc J. Schleier
Fla. Bar No. 389064
Email: mschleier@fowler-white.com
Katina M. Hardee
Fla. Bar No. 16069
Email: khardee@fowler-white.com

FOWLER WHITE BURNETT, P.A.
*Attorneys for Defendant Carnival Corporation*
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 789-9200
Facsimile: (305) 789-9201

Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES, (hereinafter "CCL"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L. R. 56.1, hereby moves for the entry of a final summary judgment, and states:[1]

**INTRODUCTION**

This is a wrongful death action arising out of alleged negligence on the part of medical and non-medical personnel in their interaction with Karen Noon, a passenger aboard the CCL cruise ship *Sensation*. Mrs. Noon, who had chronic obstructive pulmonary disease, began experiencing shortness of breath and respiratory problems during the cruise on July 5, 2017, but did not go to the medical center for treatment. Mrs. Noon's condition worsened on July 6 and 7. As Mrs. Noon still did not want to go to the medical center, her husband, Mr. Noon, and daughter, Juanita Noon, went to the medical center on July 7 to pick up an oxygen concentrator for her to use for the remainder of the cruise. Mrs. Noon used the concentrator until the morning of July 8 without incident. Porters picked up the concentrator the following morning.[2] Mrs. Noon was not in respiratory distress when the porters arrived, nor did the porters observe Mrs. Noon or have any interaction with the Noon family. No CCL crewmember learned that Mrs. Noon was in distress until approximately 8:29 a.m. on July 8, when the guest services representative closing out her onboard account commented that she did not look well. The representative immediately made arrangements for Mrs. Noon to be pushed off the ship in a wheelchair by a CCL crewmember. Neither Mrs. Noon nor anyone in her family requested that CCL or one of its crewmembers call 911 or any emergency transportation service or take her to the ship's medical center for treatment. Mrs. Noon disembarked at approximately 8:42 a.m., thirteen (13) minutes later. Mrs. Noon went into cardiopulmonary arrest soon after she disembarked, and died the next day.

In his Second Amended Complaint, Plaintiff asserted the following claims against CCL: (1) vicarious liability for negligent breach of nonmedical crewmember duty to provide aid or assistance to sick or injured passengers (Count I); (2) negligent breach of assumed or undertaken duty to obtain medical care – nonmedical crew (Count II); (3) negligent breach of assumed or undertaken duty to obtain medical care – medical crew – actual authority (Count III); and (4) negligent breach of assumed or undertaken duty to obtain medical care – medical crew – apparent

---

[1] This motion incorporates the Statement of Material Facts filed by CCL and refers herein below to such facts as "SOF" followed by the applicable numbered paragraph.

[2] Mrs. Noon could not have taken the concentrator with her because it required an electrical outlet, and CCL did not have a portable concentrator on the ship.

authority. Plaintiff specifically limited the allegations of negligence against CCL to July 8, after the ship reached port in Miami, Florida. In addition to seeking compensatory damages under the Florida Wrongful Death Act, Plaintiff seeks punitive damages against CCL in each count.

As demonstrated below, CCL is entitled to a final summary judgment because Plaintiff cannot prove any of his claims. In the alternative, if any claim survives, CCL is entitled to a summary judgment on Plaintiff's claims for punitive damages, as well as Plaintiff's claims for (1) loss of Mrs. Noon's earning capacity, (2) loss of Mrs. Noon's earnings, (3) loss of support and services on behalf of Mr. Noon and grandchildren Makayla Noon, Sage May Lenard, and Elijah Randall Lenard, (4) loss of net accumulations, and (5) funeral expenses on behalf of the estate.

## ARGUMENT

### I. SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered if the pleadings, depositions, affidavits, and other materials in the record show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In making its assessment as to whether summary judgment is warranted, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990). The opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. The Eleventh Circuit has explained that, for issues on which the non-movant would bear the burden of proof at trial,

> the moving party is not required to support its motion with affidavits or other similar material *negating* the opponent's claim in order to discharge this initial responsibility. Instead, the moving party simply may show [ ] – that is, point[ ] out to the district court – that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary

> judgment with affirmative evidence demonstrating that the non-moving party will be able to prove its case at trial.

*U.S. v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437-38 (11th Cir. 1991) (en banc) (citations, footnote, and internal quotation marks omitted; emphasis added).

All of Plaintiff's claims against CCL sound in negligence. To satisfy the burden of proof in a negligence action, a plaintiff must show: (1) that defendant owed plaintiff a duty; (2) that defendant breached such duty; (3) that this breach was the proximate cause of plaintiff's injury; and (4) that plaintiff suffered damages. *Cohen v. Carnival Corp.*, 945 F. Supp. 2d 1351, 1355 (S.D. Fla. 2013). It is also a plaintiff's burden to establish vicarious liability. *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1236, 1252 (11th Cir. 2014). Because CCL is moving for summary judgment on issues for which Plaintiff bears the burden of proof at trial, CCL meets its burden by pointing out to the absence of evidence to support Plaintiff's case.

## II. THIS ACTION IS GOVERNED BY GENERAL MARITIME LAW

Incidents occurring on the navigable waters and bearing a significant relationship to traditional maritime activities are governed by general maritime law. *See e.g., Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959). It is well-settled that the law governing passenger suits against cruise lines is the general maritime law. *See e.g.*, *Everett v. Carnival Cruise Lines*, 912 F. 2d 1355, 1358 (11th Cir. 1990). Plaintiff alleges that the subject incident occurred while Mrs. Noon was a passenger aboard the CCL cruise ship *Sensation*. [D.E. 24 at ¶ 11]. Accordingly, general maritime law applies.

## III. CCL IS ENTITLED TO SUMMARY JUDGMENT ON COUNT I

As a threshold matter, CCL is entitled to a summary judgment as to Count I because no individual non-medical crewmember on the ship owed a duty to provide aid or assistance to Mrs. Noon. Importantly, Plaintiff has ***not*** pled a direct negligence claim against CCL based on its alleged breach of any duty in Count I; rather, Plaintiff elected to plead Count I solely as a claim against CCL for ***vicarious liability*** for the alleged breach of duties owed by its non-medical crewmembers. Courts have routinely recognized that claims for direct negligence and vicarious liability brought against a cruise line are separate, distinct claims. *See Gharfeh v. Carnival Corp.*, No. 17-20499-CIV-GOODMAN, 2018 WL 501270, *6 (S.D. Fla. Jan. 22, 2018) ("Count I's title suggests that it contains only a claim for vicarious liability . . . But it *also* includes allegations of *direct* negligence. Count I is thus an example of an impermissible shotgun pleading and it needs to be clarified.") (emphasis in original); *Wohlford v. Carnival Corp.*, No. 1:17-cv-20703-UU, 2017

WL 7731225, at *3 (S.D. Fla. May 10, 2017) (dismissing claim which included allegations of direct negligence and vicarious liability in the same count, stating that "[p]leading a direct negligence claim together with a vicarious liability claim, under these circumstances, is improper, confusing and violates Rule 10(b)."). As the court in *Rojas v. Carnival Corp.*, 93 F. Supp. 3d 1305 (S.D. Fla. Feb. 17, 2015) explained in determining that the Eleventh Circuit's decision in *Franza* was inapplicable to Plaintiffs' direct negligence claim against Royal Caribbean:

> In reaching its holding, the Eleventh Circuit noted that the plaintiff did "not argue that [the defendant] violated [its general duty to exercise reasonable care under the circumstances] directly. Rather, she asks us to hold [defendant] vicariously liable under the doctrine of respondeat superior, precisely because the ship's medical employees allegedly failed to treat her father with appropriate care." *Franza*, 772 F.3d at 1233. Here, Plaintiffs allege that Defendant breached its general duty to exercise reasonable care under the circumstances when it failed to timely secure air-ambulance transportation to Florida. (D.E. 56 ¶¶ 31-32). Plaintiffs do not seek to hold Defendant vicariously liable for any purported negligence of its employees. (See D.E. 56). Accordingly, the holding in *Franza* is inapplicable in this case.

*Id.* at 1310 n.2 (emphasis added). Here, we have the reverse situation – because Count I asserts a vicarious liability claim against CCL based on the alleged breach of duty by its crewmembers, cases imposing a direct duty upon a shipowner such as CCL are inapplicable.

While CCL does not dispute that a ***shipowner*** has a general duty to exercise reasonable care under the circumstances, there is no legal authority suggesting that the shipowner's employees have any similar duty. Notably, the Eleventh Circuit's recent decision in *K.T. v. Royal Caribbean Cruises, Ltd.*, No. 17-14237, 2019 WL 3312530 (11th Cir. 2019), cited by the Magistrate Judge in his Amended Report and Recommendation on CCL's Motion to Dismiss ("Report"), does not hold otherwise. The operative complaint in *K.T.* contained one claim for negligence against Royal Caribbean premised on "the duty of Defendant ROYAL CARIBBEAN to provide KATIANNA TOWERS with reasonable care under the circumstances while they were passengers aboard the *Oasis of the Seas*." *Towers v. Royal Caribbean Cruises Ltd.*, No. 1:16-cv-25157-KMM, D.E. 5 at p. 6 - ¶ 26 (S.D. Fla. Dec. 13, 2016). The Eleventh Circuit noted in its opinion that the parties agreed that ***Royal Caribbean*** owed K.T. a duty of ordinary reasonable care under the circumstances. *K.T.*, 2019 WL 3312530, at *2. The court found that "the complaint has sufficiently alleged that because Royal Caribbean's crewmembers did nothing to prevent the large group of men from plying K.T. with enough alcohol to incapacitate her and did nothing to stop those men from leading her away to a private cabin, ***Royal Caribbean*** breached the duty of ordinary care it owed her." *Id* at *3 (emphasis added). Based on *K.T.*, Plaintiff could have asserted

a direct negligence claim against CCL based on the non-medical crewmembers' failure to fulfill CCL's duty. Plaintiff chose not to do so. Instead, Plaintiff pled that the non-medical crewmembers breached their ***own*** duties to provide aid or assistance and that CCL was vicariously liable for the crewmembers' negligence. As the crewmembers did not individually owe any duty to Mrs. Noon, CCL is entitled to a summary judgment on this count.

Even if the Court could construe the duty owed by CCL as a duty owed by the non-medical crewmembers, CCL is entitled to a summary judgment on Count I because no rational factfinder could find that CCL's non-medical crewmembers breached any duty to provide aid or assistance. A shipowner is not an insurer of its passenger's safety, and as such is not liable merely because a passenger suffered an injury on a ship. *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989); *Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 65 (2d Cir. 1988). "The benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition . . ." *Keefe*, 867 F.3d at 1322. No such duty was breached by CCL or its non-medical crewmembers in this case.

Plaintiff alleges in his Second Amended Complaint that, when the porters picked up Mrs. Noon's oxygen concentrator during the morning of July 8, Mrs. Noon "was suffering from respiratory distress to an extent obvious . . . to the porters" and that "the porters actually observed and commented upon Mrs. [Noon's] distressed state." [D.E. 24 at ¶ 40]. However, not only does the evidence demonstrate that Mrs. Noon was fine when the porters arrived [SOF, ¶29], there is ***no*** evidence that the porters observed Mrs. Noon's condition, and the testimony is unequivocal that the porters did not comment on how Mrs. Noon looked. [SOF, ¶28]. When the porters arrived, Mr. Noon pushed the concentrator out the door for them to take. [SOF, ¶28]. No one asked the porters to leave the concentrator (which would not have worked without an electrical outlet in any event) [SOF, ¶¶22, 28] or to seek medical assistance for Mrs. Noon. Indeed, there is no evidence of any communications or other interactions between the porters and either Mrs. Noon or any member of her family. And given the porters' lack of medical training [D.E. 24 at ¶¶ 79, 100], there could be no expectation that they should evaluate Mrs. Noon before taking the concentrator. The porters did not breach any duty.

The evidence further reflects that the first non-medical crewmember who learned that Mrs. Noon was in distress was the guest services representative who closed out Mrs. Noon's onboard account. Upon observing Mrs. Noon's condition, the representative offered to have Mrs. Noon be

pushed off the ship in a wheelchair by a CCL crewmember and immediately made arrangements to do so. [SOF, ¶¶34-35]. Neither Mrs. Noon nor anyone in her family ever requested that the representative or any other CCL crewmember call 911 or any emergency transportation service or take her to the ship's medical center for treatment. [SOF, ¶¶ 30-31, 33, 36]. There is also no evidence that either Mrs. Noon or anyone in her family was prevented from arranging their own transportation off of the ship. And, contrary to Plaintiff's allegations, Mrs. Noon's disembarkation was not delayed. Mrs. Noon disembarked at approximately 8:42 a.m. [SOF, ¶37], thirteen (13) minutes after the CCL representative arranged for Mrs. Noon to leave the ship. [SOF, ¶ 34].

Where, as here, there is insufficient evidence that a cruise line and/or its crewmembers have breached any duty in providing aid or assistance to a passenger, courts routinely grant summary judgment in favor of the cruise line. *See, e.g., Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1370 (11th Cir. 2018) (affirming summary judgment on grounds that plaintiff did not present sufficient evidence of negligence on the part of cruise line's crew where crewmembers tried to comply with policy and that were not unreasonably lax in doing so); *Torres v. Carnival Corp.*, 635 F. App'x 595, 601 (11th Cir. 2015) (affirming summary judgment where the plaintiff alleged that cruise line had a duty to assist passenger down disembarkation ramp due to rise in the ramp, but she testified that "she did not feel she needed any assistance" and failed to present any evidence to the contrary); *McClanahan v. NCL (Bahamas) Ltd.*, 281 F. Supp. 3d 1350, 1354 (S.D. Fla. Dec. 4, 2017) (granting summary judgment against cruise line on claim of lack of assistance given dim lighting and absence of handrails in theater where plaintiff did not ask for assistance); *Malley v. Royal Caribbean Cruises, Ltd.*, No. 16-20038-CIV-KING, 2016 WL 8710797, at *3 (S.D. Fla. Dec. 29, 2016) (granting summary judgment on claim that cruise line breached its duty to plaintiff by failing to station a crew member to help her traverse a raised threshold of a doorway where plaintiff did not ask for assistance; the court stated that "automatic negligence cannot be attributed to the Defendant simply because the Plaintiff was injured aboard the Defendant's ship"). Accordingly, the Court should grant a summary judgment in favor of CCL on this count.

## IV. CCL IS ENTITLED TO SUMMARY JUDGMENT ON COUNTS II, III AND IV

Counts II, III, and IV are premised on CCL's non-medical and medical crewmembers allegedly having voluntarily assumed or undertook a duty to furnish aid to Mrs. Noon when she was in respiratory distress. The law regarding voluntary assumption of duty provides that **one who undertakes to act**, even when under no obligation to do so, thereby becomes obligated to act with reasonable care to ensure that the person or property of others will not be injured as a result

of the undertaking. *See Nova Se. Univ. v. Gross*, 758 So. 2d 86, 87-88 (Fla. 2000); *Union Park Mem'l Chapel v. Hutt*, 670 So. 2d 64, 67 (Fla. 1996). Restatement (Second) of Torts § 323, which pertains to the negligent performance of undertaking to render services, provides that:

> One who undertakes gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if:
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

*Restatement (Second) of Torts § 323*. The voluntary undertaking to do an act that if not accomplished with due care might increase the risk of harm to others or might result in harm to others due to their reliance upon the undertaking confers a duty of reasonable care, because it "creates a foreseeable zone of risk." *Union Park*, 670 So. 2d at 67. As the Magistrate Judge explained in his Report, a defendant who voluntarily undertakes an action "must do so carefully as to *not* put others at an undue risk of harm." [D.E. 45, p. 16] (emphasis in original).

Significantly, Section 323 of the Second Restatement of Torts "applies whether the harm to the other or his things results from the defendant's negligent conduct in the manner of his performance of the undertaking, or from his failure to exercise reasonable care to complete it or to protect the other when he discontinues it"; however, "[t]he actor may normally abandon his efforts at any time *unless, by giving the aid*, he has put the other in a *worse position* than he was in before the actor attempted to aid him." *§ 323 cmts. a, c* (emphasis added). Consequently,

> [w]here . . . the actor's assistance has put the other in a worse position than he was in before, either because the actual danger of harm to the other *has been increased by the partial performance, or* because *the other, in reliance upon the undertaking, has been induced to forgo other opportunities of obtaining assistance*, the actor *is not free to discontinue his services where a reasonable man would not do so*.

*§ 323 cmt. c* (emphasis added). As reflected above, the doctrine ***only*** applies where a party's commencement of performance has increased the risk to the plaintiff or the plaintiff chooses not to obtain other assistance in reliance upon the undertaking.

Plaintiff does not allege that any crewmember on the ship began to render aid to Mrs. Noon. Nor does Plaintiff allege that Mrs. Noon refrained from obtaining other assistance in reliance on a promise or representation by any crewmember to render aid to her. To the contrary, Counts II, III,

and IV are premised solely on the crewmembers' ***failure*** to make ***any*** arrangements to render aid or assistance to Mrs. Noon.[3] But allegations of a negligent omission to act do not create a duty under the voluntary undertaking doctrine. *See White v. Advanced Neuromodulation Sys.*, 51 So. 3d 631, 636 (Fla. 2d DCA 2011) ("Bolin's actions in observing and assessing Mr. White's incision site did nothing to increase the risk of harm to Mr. White. Nor did Bolin's actions cause other people to refrain from rendering aid. . . . We therefore hold that . . . Bolin's voluntary actions did not impose an affirmative duty on her to do any more than she had already done."); *Estate of Johnson v. Badger Acquisition of Tampa, LLC*, 983 So. 2d 1175, 1183-84 (Fla. 2d DCA 2008) (holding that alleged failure of consultant pharmacist to advise treating physicians of issues with decedent's drug regimen may have been a missed opportunity to increase her level of care, but did not create a duty); *L.A. Fitness Int'l , LLC v. Mayer*, 980 So. 2d 550, 561 (Fla. 4th DCA 2008) (holding that employee's actions in assessing customer for CPR did not commit him to perform CPR even if it was indicated, reasoning that the employee's actions neither "worsened [the customer's] condition" nor caused others to "refrain from rendering aid in reliance on [the employee's] undertaking"). As the Magistrate Judge recognized, "by definition no legal duty arose and no negligence would follow under this doctrine."[4] [D.E. 45, p. 18].

As explained below, the evidence further establishes that neither the medical crewmembers nor the non-medical crewmembers undertook or breached any duty to furnish aid to Mrs. Noon.

**<u>Counts III and IV – Medical Crewmembers</u>**

The only interaction between the Noon family and any medical crewmember was when Mr. Noon and Juanita Noon went to the medical center to borrow the oxygen concentrator. Nurse Rosel Ursua advised them to bring Mrs. Noon down to have a doctor's consultation for proper medical assessment and evaluation. [SOF, ¶21]. Mr. Noon and Juanita declined to do so, advising that this had happened before, and they only needed oxygen for Mrs. Noon. [*Id.*]. As such, Mr. Noon and Juanita opted to borrow the oxygen concentrator for the remainder of the cruise and

---

[3] *Compare Sexton v. Carnival Corp.*, Case No. 18-20629-CIV-MORENO, 2018 WL 3405246, at *1, 3 (S.D. Fla. July 10, 2018) (denying motion to dismiss claim against cruise line for breach of a voluntarily assumed duty to use reasonable care when it elected to provide the plaintiff with medical services; the complaint alleged that the ship's physician actually provided the plaintiff with medical care, and misdiagnosed his stroke as a bacterial infection).

[4] Notwithstanding such finding, the Magistrate Judge recommended denial of CCL's motion to dismiss Counts II, III, and IV for other reasons which will be addressed later in this section.

bought a nasal cannula to use with it. [*Id.*]. Nurse Ursua advised to call 911 if medical assistance was needed. [*Id.*]. The next morning, someone called the Noons to advise that the concentrator would be picked up prior to disembarkation. [SOF, ¶24]. Juanita asked if there was a portable concentrator that could leave the ship, but was advised that CCL did not have one. [SOF, ¶25]. The Noons did not indicate that Mrs. Noon was in respiratory distress or otherwise in need of medical assistance. There is no evidence that anyone at the medical center had knowledge of Mrs. Noon's medical condition at such time or that she needed oxygen in order to get off of the ship.

While allowing Mrs. Noon to borrow the oxygen concentrator arguably gave rise to a voluntarily assumed duty to ensure that the concentrator was functional and not defective (there is no dispute that it worked fine), such act did ***not*** give rise to a separate, voluntarily assumed duty on the part of Nurse Ursua or any other medical crewmember to render aid to Mrs. Noon. And there is no evidence that Nurse Ursua, upon provision of the concentrator to Mrs. Noon, promised to monitor or render aid to her.[5] Nor would Mr. Noon and Juanita have had any expectation that any medical crewmember would be rendering aid, given that they specifically advised Nurse Ursua that Mrs. Noon just needed the concentrator and did not require medical assessment and evaluation. Accordingly, CCL is entitled to summary judgment on Counts III and IV.

Even assuming *arguendo* that Nurse Ursua or any other medical crewmember – by virtue of the undertaker's doctrine or otherwise – had a duty to render medical assistance or other aid to Mrs. Noon, Plaintiff cannot prove that any such duty was breached. Expert testimony is required in order for Plaintiff to establish that a medical provider deviated from the standard of care. *See, e.g., Lambert v. U.S.*, 198 F. App'x 835, 839 (11th Cir. 2006); *Cruz v. U.S.*, No. 12-21518-CIV, 2013 WL 395460, at *4 (S.D. Fla. Jan. 31, 2013); *Cagle v. U.S.*, No. 3:15-cv-0350-J-20JBT, 2017 WL 6368249 at *3 (M.D. Fla. Aug. 3, 2017). Plaintiff's expert, Dr. Robert Myerberg, did not opine either in his report or his deposition that Nurse Ursua or any other medical crewmember breached any duty owed to Mrs. Noon. Even if expert testimony was not needed, the evidence in the record does not demonstrate that there was any breach. As such, Plaintiff cannot establish this essential element of his claims, and CCL is entitled to a summary judgment on Counts III and IV.

---

[5] *Compare Disler v. Royal Caribbean Cruises Ltd.*, Case No. 17-23874-CIV-MORENO, 2018 WL 1916614, at *4 (S.D. Fla. Apr. 23, 2018) (denying motion to dismiss claim brought directly against cruise line for breach of an assumed duty to arrange air ambulance services to airlift a passenger to a location that could provide the required and necessary medical treatment <u>where cruise line advertised on its website that it could do so</u>) (emphasis added).

Alternatively, CCL is entitled to a summary judgment on Count IV because there is no evidence establishing that any medical crewmember was acting as CCL's apparent agent. In order to prevail on a claim of vicarious liability based upon apparent agency, a plaintiff must establish that (1) the alleged principal made some sort of representation or manifestation causing a third party to believe that the alleged agent had authority to act for the benefit of the principal; (2) such belief was reasonable; ***and*** (3) the third party reasonably acted on such belief to his detriment. *See Franza*, 772 F.3d at 1252. Not only is the record devoid of any representation or manifestation made by CCL to Mrs. Noon that Nurse Ursua or any other medical provider was acting as its agent or employee, there is no evidence that Mrs. Noon relied on or changed her position in reliance on any alleged belief of same. Where, as here, a plaintiff cannot establish actual, reasonable reliance on a ship medical provider's agency status, summary judgment is appropriate. *See Terry v. Carnival Corp.*, No. 1:17-cv-21036-JLK, 2019 WL 2502031, at *7-8 (S.D. Fla. Apr. 16, 2019); *Rinker v. Carnival Corp.*, 836 F. Supp. 2d 1309, 1319 (S.D. Fla. 2011).

**Count II – Non-Medical Crewmembers**

As for CCL's non-medical crewmembers, the porters' retrieval of the concentrator arguably gave rise to an assumed duty to ensure that Mrs. Noon was not harmed during retrieval. The act of retrieval, however, did not give rise to a separate, voluntarily assumed duty on the part of such crewmembers to render aid. The evidence reflects that the porters did not have any communications with Mrs. Noon or her family, let alone promise that they would provide any assistance to her. Even if the porters' mere observation of Mrs. Noon's condition could provide a basis to find a voluntarily assumed duty to render aid, there is no record evidence demonstrating that Mrs. Noon was in respiratory distress when the porters arrived or that the porters actually observed Mrs. Noon's condition. The porters merely did their job of picking up the concentrator. Moreover, there is no evidence that any other non-medical crewmember began, or promised, to provide assistance to Mrs. Noon other than the guest services representative, who immediately arranged to have Mrs. Noon taken off of the ship. As explained in the previous section, the representative was not negligent in doing so. CCL is entitled to a summary judgment on Count II.

**Legal Authority Cited in Magistrate Judge's Report**

While the Magistrate Judge agreed in his Report that none of CCL's crewmembers assumed a duty under a straightforward application of the undertaker's doctrine [D.E. 45, p. 18], he nevertheless denied CCL's motion to dismiss Counts II, III, and IV based upon vicarious liability principles discussed in the Eleventh Circuit's decision in *Franza* and the imposition of a

special duty arising from Restatement (Second) of Torts § 314A. With all due respect to the Magistrate Judge, his reliance on such legal authority in addressing the viability of claims for breach of an assumed or undertaken duty was misplaced.

As explained above, a voluntarily assumed duty arises out of particular conduct of the defendant, whether through commencement of performance of an act or a promise to perform an act upon which the plaintiff relies. It only applies when one undertakes to act ***when under no obligation to do so***. Thus, by definition, a voluntarily assumed duty is ***not*** a legal duty imposed by statute, regulation, treatise, or decisional authority.

The *Franza* decision did not discuss the voluntary assumption of duty; indeed, no claims were made in the plaintiff's complaint under that theory. Rather, the court in *Franza* determined that a passenger was permitted to assert a claim for vicarious liability against a cruise ship under the doctrines of actual agency and apparent agency for the alleged medical negligence of the ship's nurse and doctor who provided care to the decedent. 772 F.3d at 1254. CCL does not dispute that the law allows a plaintiff to claim that a cruise line is vicariously liable for medical care that is alleged to have been negligently provided, whether through the provider's acts or omissions. But Plaintiff does allege such a claim here. Plaintiff's claim does not arise out of medical care that was provided (there is no dispute that none was provided in this case) or the legal duties arising out of a provider-patient relationship. To the contrary, Plaintiff's voluntary assumption of duty claim presupposes the ***absence*** of a legal duty on the part of the medical crewmembers to provide medical assistance under the circumstances and instead seeks an imposition of a duty based upon their alleged voluntary undertakings. *Franza*, thus, has no application here.

Section 314A of the Second Restatement of Torts also has no bearing on whether a voluntarily assumed duty was undertaken. As applied to cruise lines cases, Section 314A does nothing more than restate a cruise line's general duty to provide reasonable care to passengers under the circumstances. *See Casorio v. Princess Cruise Lines, Ltd.*, 677 F. App'x 361, 362 (9th Cir. 2017) ("Under the circumstances, it was reasonable for Princess to send decedent to a hospital with better medical care that the ship could provide, where decedent's condition could be accurately evaluated and air evacuation could be arranged. *See* Restatement (Second) of Torts § 314A, Comment (e) (requiring only that a passenger receive "reasonable care under the circumstances."). While the Magistrate Judge cited *Disler*, *supra*, for the proposition that a claim for voluntary assumption of duty may exist under Section 314A, the court in *Disler* did not cite that section anywhere in its decision, but rather limited its analysis to Section 323. Notably, the

Magistrate Judge also incorrectly stated that *Disler* followed *Franza* in rejecting the defendant's argument that an assumption of duty theory did not apply; while *Disler* cited *Franza*, it only did so in a ***separate*** section considering whether the cruise line had a legal duty to medically evacuate a passenger. *Disler*, 2018 WL 1916614, at *3.

Indeed, the law is clear that the question of whether a defendant has a legal duty under Section 314A is an entirely different inquiry than whether a defendant has voluntarily assumed a duty. *See, e.g. Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d 1173, 1178-81 (3d Cir. 1994) (rejecting plaintiffs' claim that casino owed a duty to render assistance to patron who suffered heart attack under Restatement 314A and separately rejecting plaintiffs' claim that, even if there would otherwise be no duty under Section 314A, casino voluntarily assumed and breached a duty to provide care); *Fieldwork Boston, Inc. v. U.S.*, 344 F. Supp. 2d 257, 264 (D. Mass. 2004) ("These cases do not involve the voluntary assumption of a duty. Rather, the duty was imposed by virtue of a given relationship between the parties. This principle is incorporated in the *Restatement (Second) of Torts* § 314A (1965).").[6] Section 314A is thus immaterial to the determination of Counts II, III, and IV.

## V. IN THE ALTERNATIVE, CCL IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES

In the event that this Court does not grant summary judgment on any particular count, the Court should grant a summary judgment in favor of CCL as to punitive damages claims asserted in such count(s). In *In re Amtrak "Sunset Limited" Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 121 F.3d 1421 (11th Cir. 1997), the Eleventh Circuit Court of Appeals held that punitive damages are not available under general maritime law absent a showing of intentional misconduct. *Amtrak* involved a train derailment caused by a vessel's collision with a railroad bridge, which resulted in numerous deaths over state territorial waters. 121 F.3d at 1422-23. The district court held that Alabama's wrongful death statute permitting punitive damages on a showing of simple

[6] *See also Davidson v. Univ. of North Carolina at Chapel Hill*, 142 N.C. App. 544 (N.C. Ct. App. 2001) ("We have addressed defendant's affirmative duty, arising from the special relationship between the parties, to provide that degree of care which a reasonable and prudent person would exercise under the same or similar circumstances. In addition, the undisputed evidence shows that defendant voluntarily undertook to advise and educate the cheerleaders regarding safety. We believe that this "voluntary undertaking" by defendant established a ***separate*** duty of care owed to plaintiff as a matter of law, ***independent*** of the duty of care arising from the special relationship.") (emphasis added).

negligence could supplement those damages allowed under general maritime law. *Id.* at 1423-24. The Eleventh Circuit reversed, finding that the application of Alabama's wrongful death statute conflicted with general maritime law. *Id.* at 1427. In so ruling, the Eleventh Circuit found that

> personal injury claimants have no claim for nonpecuniary damages such as loss of society, loss of consortium or punitive damages, except in exceptional circumstances such as willful failure to furnish maintenance and cure to a seaman, intentional denial of a vessel owner to furnish a seaworthy vessel to a seaman and in those very rare situations of intentional wrongdoing. We are aware of no decision in the Supreme Court or in any of the circuit courts which has authorized punitive damages in a personal injury case.

*Amtrak*, 121 F.3d at 1429 (emphasis added). Therefore, as explained by the Eleventh Circuit in *Amtrak*, punitive damages are only available for passenger personal injury cases where there has been a showing of intentional misconduct. Published opinions of the Eleventh Circuit Court of Appeals are binding upon the district courts within this circuit. 11th Cir. R. 36, I.O.P. (2) ("Under the law of this circuit, published opinions are binding precedent.").

Subsequently, the Supreme Court decided *Atl. Sounding Co., Inc. v. Townsend*, 557 U.S. 404 (2009), wherein a seaman sought to recover punitive damages against a shipowner for an alleged arbitrary and willful failure to pay maintenance and cure. 557 U.S. at 408. The shipowner moved to dismiss the plaintiff's punitive damages claim, which the district court denied, holding that it was bound by the Eleventh Circuit's determination in *Hines v. J.A. LaPorte, Inc.*, 820 F.2d 1187, 1189 (11th Cir. 1987) that punitive damages were available in an action for maintenance and cure. *Atl. Sounding*, 557 U.S. at 408. The Eleventh Circuit agreed that *Hines* controlled and that the plaintiff could pursue his punitive damages claim for the willful withholding of maintenance and cure. *Id.* The Supreme Court affirmed the Eleventh Circuit's decision, noting that punitive damages had long been available to a seaman for a maintenance and cure claim and that, contrary to the shipowner's argument, nothing in the Jones Act changed such understanding. *Id.* at 424-25.

The Supreme Court's decision in *Atl. Sounding* did not overrule the Eleventh Circuit's decision in *Amtrak*. Not only did the Supreme Court not mention *Amtrak* in its decision in *Atl. Sounding*, it did not decide any issue pertaining to the availability, or standard, of recovery of punitive damages in passenger personal injury cases. Rather, the Court ruled solely on the narrow issue of whether punitive damages were available to a seaman as a remedy for a shipowner's failure to pay maintenance and cure – the only issue before it. The Supreme Court's determination in *Atl. Sounding* that punitive damages were available in an action for maintenance and cure did not "directly conflict" with established Eleventh Circuit law; on the contrary, in *Hines*, as well as in

the *Atl. Sounding* decision that the Supreme Court affirmed, the Eleventh Circuit had specifically found that punitive damages were available in such actions. Indeed, the Eleventh Circuit even recognized the availability of punitive damages in maintenance and cure actions in its *Amtrak* decision.[7] 121 F.3d at 1429.

This Court has recognized on multiple occasions that it is bound by the Eleventh Circuit's decision in *Amtrak* and that, therefore, punitive damages are only available in maritime tort actions in this circuit where a plaintiff has demonstrated intentional misconduct. *See Doe v. Celebrity Cruises, Inc.*, No. 18-cv-23398-KMW, 2019 WL 3282372, at *4; *Crusan v. Carnival Corp.*, Case No. 13-cv-20592-KMW/Simonton, 2015 WL 13743473, at *6-7 (S.D. Fla. Feb. 24, 2015); *Bonnell v. Carnival Corp.*, Case No. 13-CV-22265-WILLIAMS, 2014 WL 12580433, at *3 (S.D. Fla. Oct. 23, 2014). Other district courts have agreed. *See Bodner v. Royal Caribbean Cruises, Ltd.*, Case No. 17-20260-CIV-LENARD/GOODMAN, 2018 WL 4047119, at *8 (S.D. Fla. May 8, 2018); *Gener v. Celebrity Cruises, Inc.*, Case No. 10-24589-CIV-UNGARO, 2011 WL 13223518, at *2 (S.D. Fla. Feb. 10, 2011); *Terry v. Carnival Corp.*, 3 F. Supp. 3d 1363, 1371-72 (S.D. Fla. 2014).[8] Consistent with the foregoing, the Magistrate Judge determined in his Report that "Plaintiff may only recover punitive damages upon a showing of intentional conduct." [D.E. 45, p. 32].

To demonstrate "intentional misconduct" for the purposes of recovering punitive damages, a plaintiff must show that "the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damages to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage." *Bonnell*, 2014 WL 12580433, at *3 (quoting *Mee Indus. v. Dow Chemical Co.*, 608 F.3d 1202, 1220 (11th Cir. 2010)). The Eleventh Circuit has described instances of intentional misconduct as "very rare." *In re Amtrak*, 121 F.3d at 1429. Courts in this district regularly dispose of unfounded punitive damages claims by summary judgment where the plaintiff cannot meet his or her burden of demonstrating entitlement to same under the applicable standard. *See, e.g., Bonnell*, 2014 WL

---

[7] The Eleventh Circuit has recently confirmed that *Atl. Sounding* had no effect on the continued viability of *Amtrak*. *See Eslinger v. Celebrity Cruises, Inc.*, 773 F. App'x 872, 872-73 (11th Cir. 2019); *Petersen v. NCL (Bahamas) Ltd.*, 748 F. App'x 246, 251-52 (11th Cir. 2018).

[8] Although CCL recognizes that certain district courts have determined that *Amtrak* is no longer viable in light of the Supreme Court's decision in *Atl. Sounding*, "a district court is not bound by another district court's decision, or even an opinion by another judge in the same district court, but a district court in this circuit is bound by [the Eleventh Circuit's] decisions." *Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991).

12580433, at *4-5 (granting summary judgment for Carnival on punitive damages claim, as plaintiffs failed to demonstrate "intentional misconduct;" the court found that 263 prior slip-and-falls on Carnival ships involving API flooring in three years before plaintiff's fall were insufficient to show "high probability" of injury resulting from flooring, and there was no evidence that it had "actual knowledge" of wrongfulness of maintaining the flooring); *Terry v. Carnival Corp.*, 3 F. Supp. 3d 1363, 1371-72 (S.D. Fla. 2014) (granting summary judgment for Carnival on punitive damages claims because "Plaintiffs have failed to demonstrate and the record evidence does not support a finding of intentional misconduct" in action arising out of fire that disabled cruise ship).[9]

Even assuming *arguendo* that a reasonable jury could find for Plaintiff on one or more of his negligence/vicarious liability claims, Plaintiff has failed to meet his burden of showing that CCL engaged in intentional misconduct. Plaintiff has introduced ***no*** evidence that CCL, either directly or through one of its crewmembers, intentionally pursued a course of conduct (1) with actual knowledge of the wrongfulness of the conduct and (2) the high probability that injury or damages would result. In his Report, the Magistrate Judge found that Plaintiff had sufficiently pled facts demonstrating intentional misconduct based on Plaintiff's claims "that Mrs. Noon's family members requested that crewmembers arrange for emergency transportation services to a land-based medical facility, but [] Carnival's personnel refused and intentionally prevented the family from arranging their own transportation." [D.E. 45, p. 32]. The Magistrate Judge determined that "Plaintiff's allegations . . . rely on knowledge and intent to deny Mrs. Noon life-saving services (as tenuous as those allegations may be)." [*Id.*, p. 33]. The Magistrate Judge stated that the matter will have to be revisited at summary judgment, but "suspect[ed] that there is another side to this story." [*Id.*, p. 34]. As the Magistrate Judge surmised, there is.

Contrary to Plaintiff's allegations, there is no evidence that CCL ever refused to assist Mrs. Noon or interfered with her ability to obtain other assistance. CCL's medical center provided Mrs.

---

[9] *See also Garcia v. Carnival Corp.*, No. 13-21628-CIV-ALTONAGA/O'Sullivan, 2014 WL 12531509, at *2-3 (S.D. Fla. Apr. 10, 2014) (granting summary judgment in favor of Carnival as to plaintiff's request for punitive damages in action seeking relief for the battery and sexual assault purportedly committed against her by Carnival's crewmembers; the court noted that "[t]here is not a single statement from an affidavit or deposition – or any other shred of evidence – from which a reasonable trier of fact could find wanton, willful, or outrageous conduct by Carnival"); *Fiorello v. Carnival Corp.*, No. 12-21599-CIV, 2013 WL 632264, at *3 (S.D. Fla. Feb. 20, 2013) (granting summary judgment for Carnival on the issue of punitive damages in action alleging that cabin steward sexually assaulted passenger, where plaintiff lacked evidence to establish that Carnival engaged in wanton, willful, or outrageous conduct).

Noon's family with an oxygen concentrator for Mrs. Noon to use for the remainder of the cruise. When CCL's porters picked up the oxygen concentrator the following morning, Mrs. Noon was fine. CCL did not have a portable concentrator to give Mrs. Noon. Neither Mrs. Noon nor anyone in her family ever requested that CCL or one of its crewmembers call 911 or any emergency transportation service or take her to the ship's medical center for treatment. There is also no evidence that either Mrs. Noon or anyone in her family was prevented from arranging their own transportation off of the ship. No CCL crewmember learned that Mrs. Noon was in distress until approximately 8:29 a.m. on July 8, when the guest services representative closing out Mrs. Noon's onboard account commented that she did not look well. The representative immediately made arrangements for Mrs. Noon to be taken off of the ship. Mrs. Noon disembarked at approximately 8:42 a.m., a mere thirteen (13) minutes later. Even if the foregoing facts could somehow support a negligence claim, they certainly do not rise to the level of intentional misconduct. CCL is entitled to summary judgment on each of Plaintiff's punitive damage claims.[10]

CCL is also entitled to a summary judgment because there is no record evidence of any knowledge or ratification by CCL of any alleged intentional misconduct on the part of its crewmembers. The purpose of punitive damages is "to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266-67 (1981). CCL is not alleged to have directly engaged in intentional misconduct; rather, Plaintiff alleges that CCL is vicariously liable for the alleged misconduct of its crewmembers, none of whom are alleged to have been employed in a managerial capacity. Courts have determined that an alleged employer or principal cannot be held liable for punitive damages based on the misconduct of its employees unless it was aware of such conduct and encouraged, authorized, ratified, or approved same. *See Muratore v. M/S Scotia Prince*, 845 F.2d 347, 355 (1st Cir. 1988) (holding that shipowner could not be liable for punitive damages for alleged harassment of passenger by photographers because it did not authorize or ratify the conduct, it was not aware of the misconduct until afterwards, and the photographers were not managerial agents); *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1323 (M.D. Fla. 2002) ("[A] principal cannot be held liable for punitive damages where it neither authorized nor ratified

---

[10] Even if this Court were to apply the "wanton, willful or outrageous" standard, the facts of this case do not establish that CCL or one of its crewmembers engaged in engaged in wanton, willful, or outrageous conduct. As such, CCL would be entitled to a summary judgment on Plaintiff's claims for punitive damages under that standard as well.

an employee's acts."). As there is no evidence that CCL authorized or ratified any wrongful conduct, it is entitled to summary judgment Plaintiff's punitive damage claims.

## VI. IN THE ALTERNATIVE, CCL IS ENTITLED TO SUMMARY JUDGMENT AS TO CERTAIN CLAIMS FOR DAMAGES SOUGHT PURSUANT TO THE FLORIDA WRONGFUL DEATH ACT

In the event that this Court does not grant summary judgment on any particular count, the Court should grant a summary judgment in favor of CCL as to Plaintiff's claims for (1) loss of Mrs. Noon's earning capacity, (2) loss of Mrs. Noon's earnings, (3) loss of support and services on behalf of Mr. Noon and grandchildren Makayla Noon, Sage May Lenard, and Elijah Randall Lenard, (4) loss of net accumulations, and (5) funeral expenses on behalf of the estate.

### Loss of Earning Capacity

The Florida Wrongful Death Act only allows damages to be awarded in accordance with the parameters of recovery set forth in Section 768.21, Florida Statutes. *See Continental Nat'l Bank v. Brill*, 636 So. 2d 782, 784 (Fla. 3d DCA 1994). Loss of earning capacity is not an element of damages recognized in Section 768.21. *See Lifemark Hosps. of Fla., Inc. v. Afonso*, 4 So. 3d 764, 768-69 (Fla. 3d DCA 2009) (concluding that claimant in voluntary binding arbitration arising out of death of patient was not entitled to recover loss of earning capacity as part of award for economic damages because such damages were not recoverable under the Florida Wrongful Death Act). Accordingly, CCL is entitled to a summary judgment as to such damage claim.

### Loss of Earnings

According to Section 768.21, the decedent's personal representative may recover for the decedent's estate "[l]oss of earnings of the deceased <u>from the date of injury to the date of death</u>, less lost support of survivors excluding contributions in kind, with interest." § 768.21(6)(a), Fla. Stat. (emphasis added). Plaintiff has alleged that Mrs. Noon was injured on July 8 and died on July 9. Plaintiff has not introduced evidence that Mrs. Noon lost any earnings during this one-day timeframe. Not only was no testimony provided on the subject, Plaintiff did not include any computation of loss of earnings in his Rule 26 Disclosures [Ex. 1 at p. 5] or produce any documents supporting same. Accordingly, CCL is entitled to a summary judgment as to such damage claim.

### Loss of Support and Services

As a threshold matter, Mrs. Noon's grandchildren, Makayla Noon, Sage May Lenard, and Elijah Randall Lenard, may not recover support and services because they are not statutory "survivors" entitled to recover damages under the Florida Wrongful Death Act. Section 768.18(1) defines survivors to include "the decedent's spouse, children, parents, and, <u>when partly or wholly</u>

dependent on the decedent for support or services, any blood relatives and adoptive brothers and sisters." § 768.18(1), Fla. Stat. (emphasis added). Even if grandchildren qualify as blood relative survivors under the Wrongful Death Act,[11] there is no evidence in the record establishing that Makayla, Sage, and Elijah were partly or wholly dependent on Mrs. Noon at the time of her death. The term "dependent" connotes one who looks to another for aid or support, relies upon same, and would not be able to sustain himself or herself without such aid or support. *See Guillen v. Kitching*, 354 So. 2d 900, 901 (Fla. 3d DCA 1978); *see also Duval v. Hunt*, 15 So. 876, 881 (Fla. 1894) ("We think that when the suit is brought by a person who bases his right to recover upon the fact that he is a dependent upon the deceased for support, then he must show, regardless of any ties of relationship or strict legal right to such support, that he or she was, either from the disability of age, or nonage, physical or mental incapacity, coupled with the lack of property means, dependent in fact upon the deceased for support."). Plaintiff has offered no evidence that Makayla was dependent upon Mrs. Noon for support, rather than her father (Mrs. Noon's son), or her mother, with whom she lived [SOF, ¶43]. And while Sage and Elijah briefly lived with Mr. and Mrs. Noon from late 2016 until June 2017, they were not living with the Noons at the time of Mrs. Noon's death [SOF, ¶44], and there is no evidence that there were any future plans to do so. Mr. Noon also testified that he was not aware of any financial support given by Mrs. Noon to her grandchildren.[12] [SOF, ¶45]. As neither Makayla, Sage, nor Elijah looked to Mrs. Noon for aid or support at the time of her death, relied upon Mrs. Noon for support or services, or were unable to sustain themselves without support and services from Mrs. Noon (as opposed to their parents), they are not "survivors," and CCL is entitled to a summary judgment as to this damage claim.

Plaintiff has also offered no evidence that Mr. Noon – who had a full-time job as a factory worker [SOF, ¶42] – was financially supported by Mrs. Noon. Indeed, in answering an interrogatory requesting that he state in detail what loss of support he claimed, he only stated that Mrs. Noon supported her grandchildren; with respect to himself, Mr. Noon merely claimed "loss of income." [Ex. 2, at ¶17]. As Mr. Noon has not established that he was supported by any income which was lost, CCL is entitled to a summary judgment as to this damage claim.

---

[11] The term "blood relative" has not been defined by the Wrongful Death Act.

[12] Even if Mrs. Noon occasionally provided gifts or services to her grandchildren, "§ 768.18(1) does not provide a safe harbor for persons fortunate enough to have a relative whose generosity enabled them to acquire luxury items or live beyond their means." *Cinghina v. Racik*, 647 So. 2d 289, 291 (Fla. 4th DCA 1994).

Finally, each of Plaintiff's damage claims for loss of support and services fail because Plaintiff failed to introduce evidence of the value of those damages. To recover for pecuniary loss, the value must be proven and reasonably certain. *See Tello v. Royal Caribbean Cruises, Ltd.*, 946 F. Supp. 2d 1340, 1343 (S.D. Fla. 2013); *see also Ivy v. Sec. Barge Lines, Inc.*, 585 F.2d 732, 740 (5th Cir. 1978) ("No documentary evidence was introduced establishing the amount of [the decedent's] financial contributions to the family, nor were his services around the house in any way valued. Under the circumstances, we conclude that the evidence of support and services was insufficient to show that the Ivys suffered any monetary loss for support and services by their son's death . . . The trial judge erred in submitting this issue to the jury."); *Matter of Adventure Bound Sports, Inc.*, 858 F. Supp. 1192, 1201 (S.D. Ga. 1994) ("To recover for this pecuniary loss, a claimant must present testimony assigning a value to the services performed by the decedent."); *Lasseigne & Sons, Inc. v. Bacon*, No. 87-4003, 1988 WL 89557, at *4 (9th Cir. Aug. 16, 1988) ("[N]o evidence was introduced as to the value of the services Randy Bacon performed while staying with his parents. There was also no evidence that Randy Bacon made any financial contributions to his parents. Accordingly, we conclude that the evidence was insufficient to support the award to Randy Bacon's parents of $25,000 for loss of support and services.").

While Mr. Noon stated in his answers to interrogatories that Mrs. Noon "handled financial affairs for the Noon household, which [Mr. Noon] must now handle by himself or using substitute services" [Ex. 2, at ¶17], no evidence was introduced as to the value of such services. Not only is there is no evidence that Makayla, Sage, or Elijah lost any services provided by Mrs. Noon, but there is also no evidence as to the value of any services purportedly lost. Similarly, even if it could be inferred that Mrs. Noon provided any financial support to her grandchildren or Mr. Noon, there is no evidence in the record as to the lost value of same. Indeed, Plaintiff has conceded that he has no documents to support her damages for loss of support and services. [Ex. 3, at ¶44]. There is also no evidence as to what Mrs. Noon's forecasted actual earnings would have been, such that she could have provided future support. A damage award cannot be based on speculation or conjecture. *See Deakle v. John E. Graham & Sons*, 756 F.2d 821, 830 n.4 (11th Cir. 1985). CCL is entitled to a summary judgment as to all claims for loss of support and services.

**Net Accumulations**

Section 768.21(6)(a) provides that a personal representative may recover for an estate the "[l]oss of the prospective net accumulations of an estate, which might reasonably have been expected but for the wrongful death, reduced to present money value." § 768.21(6)(a), Fla.

Stat. "Net accumulations" are defined in the Florida Wrongful Death Act as "the part of the decedent's expected net business or salary income, including pension benefits, that the decedent probably would have retained as savings and left as part of her or his estate if the decedent had lived her or his normal life expectancy." §768.18(5), Fla. Stat.

The purpose of allowing an estate's personal representative to recover "net accumulations is to award what would have been earned over a decedent's life time, and theoretically was lost by the decedent's untimely death." *Citrus Cty. v. McQuillin*, 840 So. 2d 343, 346 (Fla. 5th DCA 2003). Net accumulations "are more than replacement salary." *Delta Airlines, Inc. v. Ageloff*, 552 So. 2d 1089, 1092 (Fla. 1989). In the absence of evidence that a decedent had any propensity to save money in the future, or the ability to do so, an award of net accumulations is speculative and improper. *See Snyergy Gas Corp. v. Johnson*, 627 So. 2d 539, 541 (Fla. 3d DCA 1993) ($400,000.00 award in net accumulations reversed; although economic expert testified that decedent had 26 years of working life expectancy and that he would have saved 6% of his income per year, there was no evidence of decedent's propensity to save or whether he had saved anything at all at the time of his death); *Citrus Cty.*, 840 So. 2d at 346 (evidence did not support jury's award to estate for net accumulations where decedent and her husband exhausted both of their paychecks to meet living expenses, there was no record of savings, and no evidence of propensity or ability to save); *Tobias v. Osorio*, 681 So. 2d 905, 907 (Fla. 4th DCA 1996) (evidence was insufficient to support award of $150,000.00 for net accumulations where, although decedent worked, there was no evidence of decedent's salary or how much he might have saved throughout his normal life expectancy).

In the instant case, not only has Plaintiff failed to provide a method of ascertainment of Mrs. Noon's future earnings, the record is devoid of any evidence that Mrs. Noon had a propensity to save or had saved anything at all at the time of her death. CCL is entitled to a summary judgment as to Plaintiff's damage claim for loss of net accumulations.

**Funeral Expenses**

Section 768.21(6)(b) provides that a personal representative may recover for an estate "funeral expenses due to the decedent's . . . death that have become a charge against her or his estate." § 768.21(6)(a), Fla. Stat. Mr. Noon testified that he paid for Mrs. Noon's funeral expenses. [SOF, ¶46]. CCL is entitled to a summary judgment as to this damage claim.

WHEREFORE, Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES, respectfully requests that this Court grant its Motion for Final Summary Judgment.

Respectfully submitted,

/s/ *Marc J. Schleier*
Christopher E. Knight
Fla. Bar No. 607363
Email: cknight@fowler-white.com
Marc J. Schleier
Fla. Bar No. 389064
Email: mschleier@fowler-white.com
Katina M. Hardee
Fla. Bar No. 16069
Email: khardee@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 789-9200
Facsimile: (305) 789-9201

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of August, 2019, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ *Marc J. Schleier*
Marc J. Schleier

**SERVICE LIST**

CASE NO. 18-cv-23181-Williams/Torres

Philip M. Gerson, Esq.
GERSON & SCHWARTZ, P.A.
1980 Coral Way
Miami, Florida 33145-2624
E-Mail: pgerson@gslawusa.com
filing@gslawusa.com
zdiaz@gslawusa.com
Telephone: (305) 371-6000
Facsimile: (305) 371-5749
RANDALL NOON , as Personal Representative of the Estate of KAREN NOON, deceased