UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

RANDALL NOON, as Personal Representative of the Estate of KAREN NOON, deceased,

Plaintiffs,

v.

CARNIVAL CORPORATION, a Panamanian Corporation d/b/a CARNIVAL CRUISE LINES,

Defendant.

CASE NO. 18-cv-23181-Williams/Torres

**CARNIVAL CORPORATION'S DAUBERT MOTION TO PRECLUDE AND EXCLUDE ALL EVIDENCE, TESTIMONY AND ARGUMENT CONCERNING DR. ROBERT MYERBURG'S OPINION REGARDING DECEDENT'S LIFE EXPECTANCY THAT ARE BASED ON INSUFFICIENT DATA AND/OR PURE SPECULATION**

Defendant CARNIVAL CORPORATION, a Panamanian Corporation d/b/a CARNIVAL CRUISE LINES ("CCL"), files this *Daubert* Motion to Preclude and Exclude All Evidence, Testimony and Argument Concerning Dr. Robert Myerburg's Opinion Regarding Decedent's Life Expectancy that are Based on Insufficient Data and/or Pure Speculation. As grounds therefor, CCL states as follows:

## I. INTRODUCTION

Plaintiff RANDALL NOON ("Mr. Noon") – surviving widow of the late Karen Noon who passed away on July 9, 2017, after taking a cruise on the Carnival *Sensation*—sued CCL. His alleged causes of action against CCL include (1) vicarious liability for negligent breach of nonmedical crewmember duty to provide aid or assistance to sick or injured passenger (Count I); (2) negligent breach of assumed or undertaken duty to obtain medical care – nonmedical crew (Count II); (3) negligent breach of assumed or undertaken duty to obtain medical care – medical

crew – actual authority (Count III); and (4) negligent breach of assumed or undertaken duty to obtain medical care – medical crew – apparent authority. [D.E. 24].

## II. MATERIAL FACTS

1. On June 25, 2019, Plaintiff produced the expert witness report of Dr. Robert Myerburg. See Expert Report of Dr. Robert Myerburg attached hereto as Ex. "A".

2. Dr. Myerburg did not opine as to decedent's life expectancy. However, Dr. Myerburg noted that he had the right to expand or alter any of his opinions based upon any new or additional information provided to him in the future. See id. at P. 10.

3. During Dr. Myerburg's deposition on July 26, 2019, he indicated that he had an opinion as to the life expectancy of decedent. See Deposition of Dr. Robert Myerburg attached hereto as Ex. "B", P. 35; L. 9-12.

4. Specifically, Dr. Myerburg testified that he formed his opinion "from the combination of the Jackson records and the deposition of her husband and two summaries of depositions of her daughters. . . ." See id. at P. 35; L. 17-22.

5. Dr. Myerburg further opined that decedent was "asymptomatic from her COPD [Chronic Obstructive Pulmonary Disease] except when she got superimposed problems . . . . And once that cleared she went back to her baseline of problems in my report." Id. at P. 36; L. 1-6.

6. Although Dr. Myerburg admitted that it was "very hard" to "actually put[] a number to [decedent's life expectancy], he opined that the average woman in the overall population would live until their early 80's, but that he would "give [decedent's] life expectancy approximately late 70s, early 80s, so roughly 25 years I guess." Id. at P. 37; L. 12-18.

7. When questioned regarding his methodology for determining decedent's life expectancy, Dr. Myerburg admitted that he did not look at the life tables specifically in preparation

for his deposition, but "the general number" of 25 years of additional life expectancy is in the range for a "54-year old woman in the United States." Id. at P. 42; L.12-17. However, decedent was 56 years old at the time of her death, with a date of birth of June 12, 1961.

8. Dr. Myerburg claimed that the "specific number comes from experience and knowledge about the reduction in life expectancy for a population of patients and individuals who have COPD." Id. at P. 40; L. 1-4. Yet, when Dr. Myerburg was questioned regarding what training and experience allows him to express opinions on life expectancy of persons with COPD, he stated "I can't be specific about that. . . . " Ex. "B" at P. 42; L. 19-23.

9. Another fatal flaw in Dr. Myerburg's opinion is that he did not review any of decedent's prior medical records in determining her life expectancy, as he concedes in his deposition. See id. at P. 38; L. 3-6. He only relied on the deposition of decedent's husband and summaries of her two daughters' depositions. He did not independently verify decedent's medical history.

10. A close examination of decedent's medical records from Sparrow Medical Group spanning over the last 30 years of decedent's life establishes that she suffered from hyperlipidemia, Type 2 diabetes, migraines, COPD with asthma with chronic exacerbations and tobacco abuse, which demonstrates that Dr. Myerburg's opinions as to decedent's life expectancy are baseless and pure speculation.[1]

11. Further, although Dr. Myerburg agreed that smoking decreases life expectancy, it appears that he did not take decedent's 20+ years of tobacco abuse (1/2 pack to 1 pack a day) into consideration in determining decedent's life expectancy. Id. at P. 38; L. 12-17; *see also* Deposition

---

[1] CCL will submit decedent's medical records to the Court for an in camera inspection, upon request.

of Juanita Noon attached hereto as Ex. "C" at P. 24; L 4-5 and Deposition of Randall Noon attached hereto as Ex. "D" at P. 27; L. 3-18.

12. Moreover, Dr. Myerburg did not conduct any studies, publish any articles subject to peer review on the life expectancy of persons with COPD who continue to smoke, nor has he conducted any original research or been part of research projects which examined the life expectancy of persons with COPD. Ex. "B" at P. 44; L. 24 – P; see also Dr. Myerburg's CV attached hereto as Ex. "E". Further, there is no evidence that Dr. Myerburg has read any studies, treatises or articles subject to peer review on the impact of COPD on a person's life expectancy.

13. Dr. Myerburg baselessly concluded that decedent had an additional 25 years of life expectancy.

14. Defendant CCL accordingly submits that Dr. Myerburg's opinions regarding decedent's life expectancy are not based on the requisite sufficient facts or data, and are thus unreliable.

## III. MEMORANDUM OF LAW

### A. Legal Standard Governing the Admissibility of Expert Testimony

The role of the district court in the determination of the admissibility of expert testimony is to serve as a "gatekeeper" to "ensure that any and all scientific testimony or evidence . . . is not only relevant, but reliable." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589, 113 S. Ct. 2786, 2795 (1993); *see also* General Electric Co. v. Joiner, 522 U.S. 136, 153 n. 6, 118 S. Ct. 512 (1996) (holding that the primary goal of the Daubert analysis is to determine whether the methodology employed is "junk science").

Federal Rule of Evidence 702 governs the admissibility of expert testimony and states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an

> opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) ***the testimony is based on sufficient facts or data***;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (emphasis added). Because of the power and weight given expert opinion and the leeway provided experts in their opinions, the Court's role to ensure the appropriateness and validity of the expert's testimony is particularly "significant since the expert's opinion 'can be both powerful and quite misleading because of the difficulty in evaluating it.'" United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting Daubert, 509 U.S. at 595, 113 S. Ct. at 2798).

Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony ... ***rests on a reliable foundation***," Daubert, 509 U.S. at 597, 113 S. Ct. at 2799 (emphasis added), and precludes the introduction of expert testimony which is based on supposition, rather than fact. *See, e.g.,* Hathaway v. Bazany, 507 F.3d 312, 318-19 (5th Cir. 2007) (proffered expert testimony was properly excluded where it had insufficient factual support and "a host of unsupported conjectures that falls short of a methodology"). Additionally, neither Daubert nor the Federal Rules of Evidence require a court to admit proffered opinions that are "connected to existing data only by the *ipse dixit* of the expert." Mich. Millers Mut. Ins. Corp. v. Benfield, 140 F.3d 915, 921 (11th Cir. 1998) (quoting Joiner, 552 U.S. at 146, 118 S. Ct. at 519). A trial judge may therefore find that there is ***too much of an analytical gap between the data and the proffered opinion*** and may exclude any expert testimony that is "imprecise and unspecific" or whose ***factual basis is not***

***sufficiently explained***. Joiner, *supra*; Frazier, 387 F.3d at 1266.

Additionally, district courts are charged with this "gatekeeping" function "to ensure that ***speculative***, ***unreliable*** expert testimony does not reach" the trier of fact under the mantle of reliability that accompanies the appellation "expert testimony." McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002) (emphasis added). In determining whether expert testimony and any report prepared by the expert may be admitted, a district court must engage in a "rigorous" three-part inquiry into whether (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) ***the methodology by which the expert reaches his conclusions is sufficiently reliable***; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See* City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998); Rink v. Cheminova, Inc., 400 F.3d 1286 (11th Cir. 2005); Frazier, 387 F.3d at 1260. The Eleventh Circuit refers to these requirements as the "qualifications," "reliability," and "helpfulness" prongs, respectively. Frazier, 387 F.3d at 1260. The party offering the expert has the burden of satisfying each of these three elements by a "preponderance of the evidence." Rink, 400 F.3d at 1292; *see* Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1261 (11th Cir. 2004). Furthermore, expert testimony is admissible only to the extent it concerns matters that are beyond the understanding and experience of the average citizen. Frazier, 387 F.3d at 1262; *see also* Fed. R. Evid. 702.

The importance of Daubert's gatekeeping requirement cannot be overstated. Frazier, 387 F.3d at 1260. As the Supreme Court framed it in Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999): "[t]he objective of that requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies

or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

Last, this Court has excluded expert testimony in cases where opinions related to life expectancy were generalized calculations unrooted from the facts of the case. Rinker v. Carnival Corp., No. 09-23154-CIV, 2012 WL 37381, at *1 (S.D. Fla. Jan. 6, 2012).

In the instant case, Dr. Myerburg's proposed opinion testimony – as summarized in paragraphs 3-12 above – should be stricken and excluded because it does ***not*** satisfy the "reliable foundation" or "based on sufficient facts or data" and "helpfulness" prongs under Rule 702, Daubert and its progeny.

**B. Dr. Myerburg's Opinions Regarding Decedent's Life Expectancy are Unreliable and Inadmissible Because Same is Predicated Upon Baseless Assumptions and Suppositions as well as Conjecture**

Defendant CCL submits that Dr. Myerburg's at-issue proposed opinion testimony is ***inadmissible***. Dr. Myerburg did ***not*** base his opinions upon sufficient facts or data, as discussed in detail in Section II above. Applying Rule 702 and the Daubert analysis demands the exclusion of Dr. Myerburg's challenged opinions.

The Eleventh Circuit's opinion in United States v. Frazier, 387 F.3d 1244, 1265 (11th Cir. 2004) (*en banc*), is particularly instructive because there, ***as here***, the expert "offered precious little in the way of a ***reliable foundation or basis for his opinion***." (emphasis added). In that case, the defendant sought to introduce expert testimony on the transfer of hairs and bodily fluids during sexual assault. Id. at 1252. The expert was prepared to testify that no hair or bodily fluids were discovered at the crime scene, and therefore it was unlikely the defendant had sexually assaulted the alleged victim. Id. The Government moved to exclude the expert's testimony, and the district court did so after holding a Daubert hearing. Id. at 1252-56.

On appeal, the Frazier court affirmed and concluded that although the expert was qualified, his methodology was not reliable and his opinion would not have been helpful to the fact-finder. Id. at 1264-66. With respect to reliability, the appellate court explained that the expert had based his opinion on "his experience, and on various texts in forensic investigation." Id. at 1265. The problem; however, was that the expert never explained how his experience or the relevant texts supported his opinion. Id. Because the basis for the opinion was left unstated, "it would be very difficult indeed for the district court . . . to make even an informed assessment, let alone to verify" that the opinion was reliable. Id. The appellate court in Frazier thus concluded that the district court did not abuse its discretion by excluding the expert's testimony for being unreliable. Id.

**Here**, Dr. Myerburg's challenged opinions should likewise be stricken and excluded, given the list of problems and factual deficiencies discussed in Section II above, as constituting inadmissible, speculative and guess-work testimony. It is axiomatic that "[s]peculative testimony is ***not*** admissible in evidence." XL Ins. Am., Inc. v. Ortiz, 673 F. Supp. 2d 1331, 1343 (S.D. Fla. 2009) (emphasis added).[2] In this regard, the observations of the Florida Supreme Court in Drackett Prods. Co. v. Blue, 152 So. 2d 463 (Fla. 1963), are particularly instructive:

[2] Florida's state appellate courts regularly hold that an expert's opinions inadmissible if based on speculation and conjecture. *See, e.g.*, Whitby v. Infinity Radio Inc., 951 So. 2d 890, 898 (Fla. 4th DCA 2007) (error for trial court to permit damages expert to testify regarding lost profits when the testimony was "speculative and conjectural"); Doctors Co. v. State, Dept. of Ins., 940 So. 2d 466, 470 (Fla. 1st DCA 2006) (no abuse of discretion in excluding opinion testimony of financial insurance expert based on his "suspicion"; "An expert's opinion testimony is inadmissible if it is grounded on speculation, conjecture, or incorrect assumptions."); M.A. Hajianpour, M.D., P.A. v. Khosrow Maleki, P.A., 932 So. 2d 459, 464 (Fla. 4th DCA 2006) ("When the expert's opinion is based on speculation and conjecture, not supported by the facts, or not arrived at by recognized methodology, the testimony will be stricken."); Jones v. State, 908 So. 2d 615, 622 (Fla. 4th DCA 2005) ("testimony based on speculation should be excluded as inadmissible"); Durrance v. Sanders, 329 So. 2d 26, 30 (Fla. 1st DCA) ("testimony consisting of guesses, conjectures or speculation . . . is clearly inadmissible"), *cert. denied*, 339 So. 2d 1171 (Fla. 1976).

> ***Conjecture has no place in [court] proceedings.... The law seems well established that testimony consisting of guesses, conjecture, or speculation - suppositions without a premise of fact - are clearly inadmissible in the trial of causes in the courts of this country***. A statement by a witness as to what action he would have taken if something had occurred which did not occur ... or what course of action a person would have pursued under certain circumstances which the witness says did not exist will ordinarily be rejected as inadmissible and as proving nothing.

Drackett, 152 So. 2d at 465 (emphasis added). *See* LeMaster v. Glock, Inc., 610 So. 2d 1336, 1338 (Fla. 1st DCA 1992) ("It has long been the rule that the witness's opinion as to what would have happened if circumstances were different constitutes rank speculation that is not competent evidence[.]").

This Court should exclude Dr. Myerburg's opinion relating to life expectancy because it was not tailored to the facts of this case. This Court has excluded expert testimony in cases where opinions related to life-expectancy were generalized calculations unrooted from the facts of the case. For instance in Rinker v. Carnival Corp., this Court found that "Dr. Lessne's report and its conclusions lack 'fit' with the facts of this case" because his report was based on the life expectancy of a healthy 62-year-old woman, not a 62-year-old woman with stage three colon cancer, as were the circumstances in the action. Rinker, 2012 WL 37381, at *1. Accordingly, the Rinker court concluded that the expert's "estimates are nothing more than his own *ipse dixit*." Id. at 2. See also Cook ex rel, Estate of Tessier v. Sheriff if Monroe County, Fla., 402 F.3d 1092, 10 (11th Cir. 2005) (stating that a district court may exclude expert testimony when its factual basis is not adequately explained).

Similarly, here, Dr. Myerburg's conclusions pertaining to life expectancy "lack fit with the facts of this case." First, Dr. Myerburg himself described his conclusion as "the average life expectancy for a woman at [the decedent's] age." See Ex. "B" at P. 37; L. 12-14. Equally

important, Dr. Myerburg admitted that he made his conclusion on life expectancy without reviewing any of the decedent's prior medical records. Id. at P. 38; L. 3-6. In fact, Dr. Myerburg admitted that his "perception" on life expectancy was exclusively based on his review of the deposition of the decedent's husband, two deposition summaries of the decedent's daughters, and the Jackson records from the date of death. Id. at P.35; L. 17-22. In other words, Dr. Myerburg admitted that he did not conduct an independent review of the decedent's prior medical records, rather the extent of his knowledge of the same is limited only to a cursory review of accounts of the decedent's medical history as described by her family members. Id.

Yet, when asked whether smoking is a life-limiting activity, Dr. Myerburg admitted that it "decreases life expectancy, yes." Id. at P. 38; L. 12-14. This admission in conjunction with his admission that his estimate was calculated without reviewing the decedent's prior medical records demonstrates that Dr. Myerburg's estimate is unreliable for failure to account for reductions in life expectancy due to smoking. Ex. "B" at P. 38; L. 12-14. Review of the decedent's prior medical records reveals that the decedent had been previously diagnosed with "tobacco abuse." See Sparrow Medical Records attached hereto as Composite Ex. "F". Most notably, on February 14, 2017, the decedent reported that she has smoked one pack of cigarettes a day for 20 years and was not interested in discussing quitting. See id. Accordingly, this Court should exclude Dr. Myerburg's testimony relating to life expectancy on the grounds that it is unreliable under Daubert.

Moreover, this Court should exclude Dr. Myerburg's conclusions concerning life expectancy because his description of the decedent's medical condition is not only inconsistent, but contradicts record evidence. Specifically, Dr. Myerburg's conclusion as to the "specific number" of decedent's estimated life expectancy was not rooted in record evidence or the facts of this case. Dr. Myerburg admitted that "from a statistical point of view, the reduction [in life

expectancy] is relatively small" for a person who has minimally symptomatic COPD or asymptomatic COPD . . . And that [he] put a good deal of weight on the question of her lack of symptomology from her COPD and the incidents of cancer in the general population" Ex. "B" at P. 39; L. 6-15. Contrary to Dr. Myerburg's statements that the decedent had "minimally symptomatic COPD" prior medical records show that in fact the decedent suffered from exacerbated or chronic COPD. For these reasons, this Court should exclude Dr. Myerburg's testimony relating to life expectancy on the grounds that it is unreliable under Daubert.

In sum, Dr. Myerburg's challenged opinions are predicted upon ***insufficient*** facts and data, thereby amounting to unfounded assumptions and pure speculation that must be excluded under Rule 702, Daubert and its progeny.

## IV. CONCLUSION

Based on the foregoing, Defendant CARNIVAL CORPORATION, a Panamanian Corporation d/b/a CARNIVAL CRUISE LINES respectfully requests this Court to enter an Order striking or excluding the above-discussed opinion testimony of Plaintiffs' expert Dr. Robert Myerburg.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

In accordance with Local Rule 7.1(a)(3), undersigned counsel for the movant attempted to confer with all parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

Respectfully submitted,

/s/ Katina M. Hardee

Katina M. Hardee
Fla. Bar No. 16069
Email: khardee@fowler-white.com

Christopher E. Knight
Fla. Bar No. 607363
Email: cknight@fowler-white.com

George M. Koonce, III
Fla. Bar No. 519261
Email: gkoonce@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 789-9200
Facsimile: (305) 789-9201

**CERTIFICATE OF SERVICE**

I hereby certify that on August 23, 2019, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Katina M. Hardee
Katina M. Hardee

**SERVICE LIST**

CASE NO. 18-cv-23181-Williams/Torres

Philip M. Gerson, Esq.
GERSON & SCHWARTZ, P.A.
1980 Coral Way
Miami, Florida 33145-2624
E-Mail: pgerson@gslawusa.com
filing@gslawusa.com
zdiaz@gslawusa.com
Telephone: (305) 371-6000
Facsimile: (305) 371-5749
RANDALL NOON , as Personal
Representative of the Estate of
KAREN NOON, deceased