UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

RANDALL NOON, as Personal Representative of the Estate of KAREN NOON, deceased,

Plaintiffs,

v.

CARNIVAL CORPORATION, a Panamanian Corporation d/b/a CARNIVAL CRUISE LINES,

Defendant.

CASE NO. 18-cv-23181-Williams/Torres

**DEFENDANT CARNIVAL CORPORATION'S OBJECTIONS TO AMENDED REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS [D.E. 45]**

Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES (hereinafter "CCL"), by and through his undersigned counsel, and pursuant to Fed. R. Civ. P. 72, S.D. Fla. Mag. R. 4, and 28 U.S.C. § 636(b)(1), hereby submits its Objections to the Magistrate Judge's Amended Report and Recommendation [D.E. 45], entered on August 12, 2019 relative to Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, or in the Alternative, Motion to Strike Claims for Punitive Damages [D.E. 30], and states as follows:

**FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND**

1. This is a wrongful death action arising out of alleged negligence on the part of medical and non-medical personnel in their interaction with Karen Noon, a passenger aboard the CCL cruise ship *Sensation*, after the ship reached its ultimate destination port of Miami, Florida in July of 2017. [D.E. 24 at ¶¶ 11-21].

2. In the Second Amended Complaint, Plaintiff, Randall Noon, as Personal Representative of the Estate of Karen Noon, alleges that, on July 7, 2017, during the subject cruise, Mrs. Noon started to experience shortness of breath and respiratory distress. [*Id.* at ¶ 13]. Plaintiff

alleges that the medical center was called and informed of Mrs. Noon's medical condition, and that the medical staff told the family that an oxygen tank would be provided, subject to a $300.00 deposit. [*Id.*]. Plaintiff alleges that Mr. Noon picked up the oxygen tank, and that Mrs. Noon used the oxygen tank throughout the remainder of the evening of July 7, 2017 until the early morning of July 8, 2017 without incident. [*Id.* at ¶¶ 13, 15]. Plaintiff further alleges that, at approximately 7:00 a.m. on July 8, 2017 (when the ship was docked in Miami, Florida), the ship's medical center staff contacted Mr. and Mrs. Noon in their stateroom and informed them that they had to return the oxygen tank because it was time to disembark. [*Id.* at ¶ 16]. Plaintiff alleges that, shortly thereafter, two porters arrived at the stateroom and picked up the oxygen tank. [*Id.* at ¶ 17]. Plaintiff alleges that Mrs. Noon remained on board without supplemental oxygen until she ultimately disembarked from the ship. [*Id.* at ¶ 21]. Plaintiff alleges that, soon after Mrs. Noon disembarked, she went into respiratory arrest. [*Id.* at ¶ 24]. Plaintiff alleges that emergency responders arrived and found Mrs. Noon unresponsive in cardiopulmonary arrest, with no respirations. [*Id.* at ¶ 25]. Plaintiff alleges that the Miami-Dade Fire Rescue Department transported Mrs. Noon to Jackson Memorial Hospital, where she was pronounced dead on July 9, 2017. [*Id.* at ¶¶ 26-29].

3. Plaintiff initially asserted one claim against CCL in his Complaint, based on CCL's alleged vicarious liability for negligence on the part of medical and other crewmembers. [D.E. 1]. CCL moved to dismiss Plaintiff's Complaint, arguing that: (1) Plaintiff failed to allege a sufficient factual basis to support his claims, alleging sixteen (16) negligent acts and omissions without pleading adequate facts; and (2) the Complaint was as an impermissible "shotgun" pleading, in that Plaintiff improperly commingled multiple distinct claims in a single count. [D.E. 7]. In the alternative, CCL moved to strike Plaintiff's claim for punitive damages brought in his vicarious liability count, as Plaintiff failed to allege or demonstrate that the conduct at issue amounted to

intentional misconduct, as required in this circuit when an action is governed by general maritime law. [*Id.*].

4. On October 10, 2018, the Magistrate Judge entered a Report and Recommendation, wherein he recommended that CCL's motion to dismiss be granted without prejudice. [D.E. 12]. The Magistrate Judge determined that Plaintiff's Complaint failed for at least two reasons. [*Id.*, p. 5]. First, the Magistrate Judge found that Plaintiff's Complaint failed because it violated Rule 8 in that it constituted a shotgun pleading with conclusory allegations that failed to provide CCL with adequate notice of the claims against it and the grounds upon which those claims rested. [*Id.*]. The Magistrate Judge held that the Complaint improperly commingled multiple claims into a single count and that it was unclear which of Plaintiff's factual allegations related to his multiple theories of vicarious liability because Plaintiff failed to separate them into separate counts. [*Id.*, pp. 7-8]. Second, the Magistrate Judge found that the Complaint lacked the necessary factual support to state a claim for relief. [*Id.*, p. 9]. Specifically, the Magistrate Judge stated:

> Plaintiff alleges, for example, that Defendant's medical staff (1) failed to adequately diagnose, evaluate, and treat Mrs. Noon's observable medical conditions, and (2) failed to contact emergency personnel in a timely manner. [D.E. 1]. <u>But, there are no facts in the complaint that Mrs. Noon ever went to the medical center or that any member of the medical staff went into Mrs. Noon's stateroom.</u> Plaintiff's allegations about Defendant's non-medical personnel are equally defective. Plaintiff claims that non-medical personnel (1) failed to obtain medical assistance for Mrs. Noon when they picked up the oxygen tank, (2) failed to contact emergency services in a timely manner, and (3) negligently delayed disembarkation. <u>Yet, there are no facts indicating that Mrs. Noon requested medical assistance or if crewmembers were told if she needed emergency services. There are also no allegations that a crewmember picking up a rented oxygen tank has a duty of care to Mrs. Noon.</u>

[*Id.*, p. 10] (emphasis added). The Magistrate Judge also rejected Plaintiff's unpled theory that CCL assumed or undertook duties in accordance with Section 323 of the Second Restatement of Torts, noting, for example, that there was no allegation in the Complaint that CCL's personnel

promised to evacuate Mrs. Noon from the cruise ship as soon as possible. [*Id.*, pp. 10-11]. On October 26, 2018, this Court adopted the Report and Recommendation in its entirety, dismissed the action without prejudice, and permitted Plaintiff to file an amended complaint. [D.E. 14].

5. Plaintiff thereafter filed an Amended Complaint, wherein Plaintiff asserted claims against CCL for negligent breach of duty to provide aid or assistance to sick or injured passengers, negligent breach of assumed or undertaken duty to obtain medical care – nonmedical crew, and negligent breach of assumed or undertaken duty to obtain medical care – medical crew. [D.E. 16]. CCL once again moved to dismiss, arguing that the Amended Complaint was a "shotgun" pleading in that Counts I, II, and III commingled claims for direct negligence and vicarious liability, and Count III commingled claims for vicarious liability based upon a theory of actual agency and vicarious liability based upon apparent agency. [*Id.*]. Further, CCL argued that the Amended Complaint should be dismissed for failure to state a claim because Plaintiff failed to allege a sufficient factual basis to support the imposition of the duties alleged in Count I or any facts indicating that CCL or any of its non-medical or medical crewmembers voluntarily assumed or undertook any duty to Mrs. Noon or that they breached any such purported duty in Counts II or III. [*Id.*]. CCL alternatively moved to strike Plaintiff's claims for punitive damages. [*Id.*].

6. On February 1, 2019, the Magistrate Judge entered a Report and Recommendation on CCL's motion to dismiss directed to the Amended Complaint, wherein he recommended that the motion be granted without prejudice. [D.E. 23]. The Magistrate Judge determined, for a second time, that Plaintiff's complaint constituted a "shotgun" pleading. [*Id.*, p. 15]. As the Magistrate Judge did not believe that dismissal with prejudice was appropriate, Plaintiff was given leave to amend to correct the deficiencies contained in the Amended Complaint. [*Id.*, pp. 15-16]. Significantly, while the Magistrate Judge did not reach CCL's argument that Plaintiff failed to allege sufficient facts supporting his claims, the Magistrate Judge noted that, in filing his Second

Amended Complaint, "Plaintiff should ensure that the complaint includes the necessary factual support to survive any other challenges that Defendant may argue on another motion to dismiss." [*Id.*, p. 15 n.4]. This Court adopted the conclusions in the Report and Recommendation, dismissed the action without prejudice, and permitted Plaintiff to file an amended complaint. [D.E. 28].

7. In his Second Amended Complaint, Plaintiff asserted the following claims against CCL: (1) vicarious liability for negligent breach of nonmedical crewmember duty to provide aid or assistance to sick or injured passengers (Count I); (2) negligent breach of assumed or undertaken duty to obtain medical care – nonmedical crew (Count II); (3) negligent breach of assumed or undertaken duty to obtain medical care – medical crew – actual authority (Count III); and (4) negligent breach of assumed or undertaken duty to obtain medical care – medical crew – apparent authority. [D.E. 24]. Plaintiff specifically limited the allegations of negligence against CCL to the time period after the ship reached port in Miami, Florida. [*Id.* at ¶¶ 30, 40-43, 60, 84, 105]. While Plaintiff separated his previously-commingled claims for vicarious liability based upon actual agency and apparent agency in accordance with the Magistrate Judge's ruling, he did not add factual allegations supporting his theories of negligence. In addition to seeking compensatory damages under the Florida Wrongful Death Act (and alternatively under Michigan's wrongful death and survival statutes), Plaintiff seeks punitive damages against CCL in each count. [*Id.* at ¶¶ 51, 67, 91, 112]. Plaintiff alleges that an award of punitive damages is warranted because the conduct of CCL's crewmembers was "willful, wanton and reckless" or, alternatively, amounted to "an intentional deprivation of Mrs. NOON's rights." [*Id.* at ¶¶ 49-50, 65-66, 89-90, 110-111].

8. On February 21, 2019, CCL moved to dismiss Plaintiff's Second Amended Complaint for failure to state a claim. [D.E. 30]. CCL argued that Count I should be dismissed because Plaintiff failed to allege a sufficient factual basis to support the imposition of the duties alleged therein on the part of any non-medical crewmembers on the ship. [*Id.*]. In addition, CCL

argued that Counts II, III, and IV should be dismissed because Plaintiff failed to allege any facts indicating that any non-medical or medical crewmembers on the ship voluntarily assumed or undertook any duty to Mrs. Noon or that they breached any such purported duty. [*Id.*]. Because Plaintiff had two opportunities to amend his complaint to state a claim against CCL but failed to do so, CCL argued that the Second Amended Complaint should be dismissed with prejudice. [*Id.*]. In the alternative, CCL argued that Plaintiff's claims for punitive damages should be stricken because Plaintiff failed to allege facts demonstrating intentional misconduct, as required in this circuit when an action is governed by general maritime law. [*Id.*].

9. On March 7, 2019, Plaintiff filed a response in opposition to CCL's motion. [D.E. 33]. On March 14, 2019, CCL filed a reply. [D.E. 34].

10. The Court referred CCL's motion to the Magistrate Judge for a report and recommendation. [D.E. 31-32]. After entering a Report and Recommendation on the motion on August 10, 2019 [D.E. 44], the Magistrate Judge entered an Amended Report and Recommendation ("Report") on August 12, 2019. [D.E. 45]. In his Report, the Magistrate Judge recommended that CCL's motion be denied in its entirety. [*Id.*]. For the reasons set forth below, CCL respectfully requests that the Court reject the Magistrate Judge's recommendation that its motion be denied.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C.§ 636(b)(1)(B), a district court judge may designate a magistrate judge to issue recommendations on dispositive matters, which are to be reviewed *de novo* by the district court. A party seeking to challenge a report and recommendation of the magistrate judge must file "written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006). If a party makes a timely and specific objection

to the report and recommendation, the district court must conduct a *de novo* review of the portions of the report to which objection is made. *See* 28 U.S.C. § 636(b)(1)(C); *Macort*, 208 F. App'x at 783-84; *Heath v. Jones*, 863 F. 2d 815, 822 (11th Cir. 1989). The district court may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); *Macort*, 208 F. App'x at 784; *Heath*, 863 F. 2d at 822.

## ARGUMENT

### I. COUNT I OF THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILED TO ALLEGE A SUFFICIENT FACTUAL BASIS TO SUPPORT HIS CLAIM FOR VICARIOUS LIABILITY FOR THE ALLEGED NEGLIGENCE OF THE SHIP'S NON-MEDICAL CREWMEMBERS

As CCL explained in its motion, it is entitled to dismissal of Count I because no individual non-medical crewmember on the ship owed a duty to provide aid or assistance to Mrs. Noon. Importantly, Plaintiff has ***not*** pled a direct negligence claim against CCL based on its alleged breach of any duty in Count I; rather, Plaintiff elected to plead Count I solely as a claim against CCL for ***vicarious liability*** for the alleged breach of duties owed by its non-medical crewmembers. Courts have routinely recognized that claims for direct negligence and vicarious liability brought against a cruise line are separate, distinct claims. *See Gharfeh v. Carnival Corp.*, No. 17-20499-CIV-GOODMAN, 2018 WL 501270, *6 (S.D. Fla. Jan. 22, 2018) ("Count I's title suggests that it contains only a claim for vicarious liability . . . But it *also* includes allegations of *direct* negligence. Count I is thus an example of an impermissible shotgun pleading and it needs to be clarified.") (emphasis in original); *Wohlford v. Carnival Corp.*, No. 1:17-cv-20703-UU, 2017 WL 7731225, *3 (S.D. Fla. May 10, 2017) (dismissing claim which included allegations of direct negligence and vicarious liability in the same count, stating that "[p]leading a direct negligence claim together with a vicarious liability claim, under these circumstances, is improper, confusing and violates Rule 10(b)."). As the court in *Rojas v. Carnival Corp.*, 93 F. Supp. 3d 1305 (S.D. Fla. Feb. 17,

2015) explained in determining that the Eleventh Circuit's decision in *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225 (11th Cir. 2014) was inapplicable to the plaintiffs' direct negligence claim against Royal Caribbean:

> In *Franza*, the plaintiff sought "to hold the [defendant] cruise line . . . vicariously liable for the purported negligence of two of its employees, the ship's doctor and its nurse, under one of two theories: actual agency (also termed respondeat superior) or apparent agency." 772 F.3d at 1228. In reversing the district court and permitting the plaintiff's claims to go forward, the Eleventh Circuit declined to adopt the longstanding rule set forth most prominently in *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364, 1368 (5th Cir. 1988) that immunized a shipowner from respondeat superior liability whenever a ship's employees render negligent medical care to its passengers. 772 F.3d at 1228. In reaching its holding, the Eleventh Circuit noted that the plaintiff did "not argue that [the defendant] violated [its general duty to exercise reasonable care under the circumstances] directly. Rather, she asks us to hold [defendant] vicariously liable under the doctrine of respondeat superior, precisely because the ship's medical employees allegedly failed to treat her father with appropriate care." *Franza*, 772 F.3d at 1233. Here, Plaintiffs allege that Defendant breached its general duty to exercise reasonable care under the circumstances when it failed to timely secure air-ambulance transportation to Florida. (D.E. 56 ¶¶ 31-32). Plaintiffs do not seek to hold Defendant vicariously liable for any purported negligence of its employees. (See D.E. 56). Accordingly, the holding in *Franza* is inapplicable in this case.

*Id.* at 1310 n.2 (emphasis added). Here, we have the reverse situation – because Count I asserts a vicarious liability claim against CCL based on the alleged breach of duty by its crewmembers, cases imposing a direct duty upon a shipowner such as CCL are inapplicable.

While CCL does not dispute that a ***shipowner*** has a general duty to exercise reasonable care under the circumstances,[1] there is ***no*** legal authority suggesting that employees or agents of

[1] *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959) ("We hold that the ***owner of a ship*** in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case.") (emphasis added); *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364, 1371 (5th Cir. 1988) ("[A]lthough a ***carrier*** has no duty to furnish a doctor for its passengers' use, ***it*** does owe its sick and injured passengers a duty to exercise 'reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.'") (emphasis added); *Franza*, 722 F.3d at 1246 ("***Carriers*** owe their ailing passengers a duty to exercise reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.") (emphasis added and quotation marks omitted); *Lapidus v. NCL America LLC*, 12-21183-CIV, 2012 WL 2193055, at *3-4 (S.D. Fla. June 14, 2012) (dismissing plaintiff's direct

the shipowner have any similar duty. No case would suggest that the porters' alleged knowledge that Mrs. Noon had a condition which required the use of an oxygen tank, without more, created any duty to seek medical assistance on the part of such individuals. Further, no case would suggest that mere requests to the non-medical personnel supervising disembarkation to promptly transport Mrs. Noon from the ship to the nearest available hospital imposed an individual duty on the part of such personnel to do so. Accordingly, the non-medical crewmembers did not owe any duty to Mrs. Noon, and Count I fails to state a claim.

The only case cited by the Magistrate Judge in his Report to support the imposition of a duty under the instant circumstances is the Eleventh Circuit's recent decision in *K.T. v. Royal Caribbean Cruises, Ltd.*, No. 17-14237, 2019 WL 3312530 (11th Cir. 2019). With all due respect to the Magistrate Judge, *K.T.* is inapposite. The operative complaint in *K.T.* contained one claim for negligence against Royal Caribbean premised on "the duty of Defendant ROYAL CARIBBEAN to provide KATIANNA TOWERS with reasonable care under the circumstances while they were passengers aboard the *Oasis of the Seas*." *Towers v. Royal Caribbean Cruises Ltd.*, No. 1:16-cv-25157-KMM, D.E. 5 at p. 6 - ¶ 26 (S.D. Fla. Dec. 13, 2016). The Eleventh Circuit noted in its opinion that the parties agreed that ***Royal Caribbean*** owed K.T. a duty of ordinary reasonable care under the circumstances. *K.T.*, 2019 WL 3312530, at *2. The court found that "the complaint has sufficiently alleged that because Royal Caribbean's crewmembers did nothing to prevent the large group of men from plying K.T. with enough alcohol to incapacitate her and did nothing to stop those men from leading her away to a private cabin, ***Royal Caribbean*** breached the duty of ordinary care it owed her." *Id* at *3 (emphasis added). Based on *K.T.*,

---

negligence claim against NCL for failure to furnish prompt, proper, and adequate aid and assistance in the absence of facts in the complaint supporting the breach of such duty by NCL and stating that the factual allegations in an amended complaint "must indicate that NCL had control over whether Plaintiff received aid or assistance before a duty is created").

Plaintiff could have asserted a direct negligence claim against CCL based on the non-medical crewmembers' failure to fulfill CCL's duty. Plaintiff chose not to do so. Instead, Plaintiff pled that the non-medical crewmembers breached their ***own*** duties to provide aid or assistance and that CCL was vicariously liable for the crewmembers' negligence. [D.E. 24 at ¶¶ 37-39, 44]. As the crewmembers did not individually owe any duty to Mrs. Noon, it follows that CCL cannot be held vicariously liable for a non-medical crewmember's failure to render aid and assistance. As such, CCL objects to the Magistrate Judge's determination that Plaintiff has sufficiently pled his claim against CCL for vicarious liability for the non-medical crewmembers' alleged breach of duty to provide aid or assistance to Mrs. Noon and the Magistrate Judge's recommendation that CCL's motion to dismiss Count I be denied.

## II. COUNTS II, III AND IV OF THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO ALLEGE A SUFFICIENT FACTUAL BASIS TO SUPPORT HIS CLAIMS FOR BREACH OF AN ASSUMED OR UNDERTAKEN DUTY

Plaintiff alleges in Counts II, III, and IV that CCL's non-medical and medical crewmembers voluntarily assumed or undertook a duty to furnish aid to Mrs. Noon when she was in respiratory distress. The law regarding voluntary assumption of duty provides that **one who undertakes to act**, even when under no obligation to do so, thereby becomes obligated to act with reasonable care to ensure that the person or property of others will not be injured as a result of the undertaking. *See Nova Se. Univ. v. Gross*, 758 So. 2d 86, 87-88 (Fla. 2000); *Union Park Mem'l Chapel v. Hutt*, 670 So. 2d 64, 67 (Fla. 1996). Restatement (Second) of Torts § 323, which pertains to the negligent performance of undertaking to render services, provides that:

> One who undertakes gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if:
>
> (a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

*Restatement (Second) of Torts § 323*. The voluntary undertaking to do an act that if not accomplished with due care might increase the risk of harm to others or might result in harm to others due to their reliance upon the undertaking confers a duty of reasonable care, because it "creates a foreseeable zone of risk." *Union Park*, 670 So. 2d at 67. As the Magistrate Judge explained in his Report, a defendant who voluntarily undertakes an action "must do so carefully as to *not* put others at an undue risk of harm." [D.E. 45, p. 16] (emphasis in original).

Significantly, Section 323 of the Second Restatement of Torts "applies whether the harm to the other or his things results from the defendant's negligent conduct in the manner of his performance of the undertaking, or from his failure to exercise reasonable care to complete it or to protect the other when he discontinues it"; however, "[t]he actor may normally abandon his efforts at any time *unless, by giving the aid*, he has put the other in a *worse position* than he was in before the actor attempted to aid him." *§ 323 cmts. a, c* (emphasis added). Consequently,

> [w]here . . . the actor's assistance has put the other in a worse position than he was in before, either because the actual danger of harm to the other *has been increased by the partial performance, or* because *the other, in reliance upon the undertaking, has been induced to forgo other opportunities of obtaining assistance*, the actor *is not free to discontinue his services where a reasonable man would not do so*.

*§ 323 cmt. c* (emphasis added). As reflected above, the doctrine ***only*** applies where a party's commencement of performance has increased the risk to the plaintiff or the plaintiff chooses not to obtain other assistance in reliance upon the undertaking.

Plaintiff does not allege that any crewmember on the ship began to render aid to Mrs. Noon.[2] Nor does Plaintiff allege that Mrs. Noon refrained from obtaining other assistance in

[2] The medical center's provision of the oxygen tank to Mrs. Noon arguably gave rise to a voluntarily assumed duty to ensure that the tank was functional and not defective. The porters' retrieval of the tank arguably gave rise to a voluntarily assumed duty to ensure that Mrs. Noon was

reliance on a promise or representation by any crewmember to render aid to her. To the contrary, Counts II, III, and IV are premised solely on the crewmembers' ***failure*** to make ***any*** arrangements to render aid or assistance to Mrs. Noon.[3] But allegations of a negligent omission to act do not create a duty under the voluntary undertaking doctrine. *See White v. Advanced Neuromodulation Sys.*, 51 So. 3d 631, 636 (Fla. 2d DCA 2011) ("Bolin's actions in observing and assessing Mr. White's incision site did nothing to increase the risk of harm to Mr. White. Nor did Bolin's actions cause other people to refrain from rendering aid. . . . We therefore hold that . . . Bolin's voluntary actions did not impose an affirmative duty on her to do any more than she had already done."); *Estate of Johnson v. Badger Acquisition of Tampa, LLC*, 983 So. 2d 1175, 1183-84 (Fla. 2d DCA 2008) (holding that alleged failure of consultant pharmacist to advise treating physicians of issues with decedent's drug regimen may have been a missed opportunity to increase her level of care, but did not create a duty); *L.A. Fitness Int'l, LLC v. Mayer*, 980 So. 2d 550, 561 (Fla. 4th DCA 2008) (holding that employee's actions in assessing customer for CPR did not commit him to perform CPR even if it was indicated, reasoning that the employee's actions neither "worsened [the customer's] condition" nor caused others to "refrain from rendering aid in reliance on [the employee's] undertaking"). Based upon Section 323 and *L.A. Fitness*, the Magistrate Judge recognized that "by definition no legal duty arose and no negligence would follow under this doctrine." [D.E. 45, p. 18].

---

not harmed during retrieval. However, neither act gave rise to a separate, voluntarily assumed duty on the part of such crewmembers to render aid to Mrs. Noon, whether by providing medical assistance to her, seeking medical assistance for her, arranging to have her transported off the ship, or otherwise.

[3] *Compare Sexton v. Carnival Corp.*, Case No. 18-20629-CIV-MORENO, 2018 WL 3405246, at *1, 3 (S.D. Fla. July 10, 2018) (denying motion to dismiss claim against cruise line for breach of a voluntarily assumed duty to use reasonable care when it elected to provide the plaintiff with medical services; the complaint alleged that the ship's physician ***actually provided the plaintiff with medical care***, and misdiagnosed his stroke as a bacterial infection).

Although the Magistrate Judge agreed in his Report that none of CCL's crewmembers assumed a duty under a straightforward application of the undertaker's doctrine, he nevertheless denied CCL's motion to dismiss Counts II, III, and IV based upon vicarious liability principles discussed in the Eleventh Circuit's decision in *Franza* and the imposition of a special duty arising from Restatement (Second) of Torts § 314A. With all due respect to the Magistrate Judge, his reliance on such legal authority in addressing the viability of claims for breach of an assumed or undertaken duty was misplaced. Accordingly, CCL objects to the Magistrate Judge's determination that Plaintiff has sufficiently pled claims based upon the non-medical and medical crewmembers' alleged breach of an assumed or undertaken duty and the Magistrate Judge's recommendation that CCL's motion to dismiss Counts II through IV be denied.

As explained above, a voluntarily assumed duty arises out of particular conduct of the defendant, whether through commencement of performance of an act or a promise to perform an act upon which the plaintiff relies. It only applies when one undertakes to act ***when under no obligation to do so***. Thus, by definition, a voluntarily assumed duty is ***not*** a legal duty imposed by statute, regulation, treatise, or decisional authority.

The *Franza* decision did not discuss the voluntary assumption of duty; indeed, no claims were made in the plaintiff's complaint under that theory. Rather, the court in *Franza* determined that a passenger was permitted to assert a claim for vicarious liability against a cruise ship under the doctrines of actual agency and apparent agency for the alleged medical negligence of the ship's nurse and doctor who provided care to the decedent. 772 F.3d at 1254. CCL does not dispute that the law allows a plaintiff to claim that a cruise line is vicariously liable for medical care that is alleged to have been negligently provided, whether through the provider's acts or omissions. But Plaintiff does allege such a claim here. Plaintiff's claim does not arise out of medical care that was provided or the legal duties arising out of a provider-patient relationship. To the contrary,

Plaintiff's voluntary assumption of duty claim presupposes the ***absence*** of a legal duty on the part of the medical crewmembers to provide medical assistance under the circumstances and instead seeks an imposition of a duty based upon their alleged voluntary undertakings. *Franza*, thus, has no application here.

Section 314A of the Second Restatement of Torts also has no bearing on whether a voluntarily assumed duty was undertaken. As applied to cruise lines cases, Section 314A does nothing more than restate a cruise line's general duty to provide reasonable care to passengers under the circumstances. *See Casorio v. Princess Cruise Lines, Ltd.*, 677 F. App'x 361, 362 (9th Cir. 2017) ("Under the circumstances, it was reasonable for Princess to send decedent to a hospital with better medical care that the ship could provide, where decedent's condition could be accurately evaluated and air evacuation could be arranged. *See* Restatement (Second) of Torts § 314A, Comment (e) (requiring only that a passenger receive "reasonable care under the circumstances.")). And while the Magistrate Judge cited *Disler v. Royal Caribbean Cruises Ltd.*, Case No. 17-23874-CIV-MORENO, 2018 WL 1916614 (S.D. Fla. Apr. 23, 2018), for the proposition that a claim for voluntary assumption of duty may exist under Section 314A, the court in *Disler* did not cite Section 314A anywhere in its decision, but rather limited its analysis to Section 323. 2018 WL 1916614, at *3-4. Notably, the Magistrate Judge also incorrectly stated that *Disler* followed *Franza* in rejecting the defendant's argument that an assumption of duty theory did not apply; while *Disler* cited *Franza*, it only did so in a ***separate*** section considering whether the cruise line had a legal duty to medically evacuate a passenger. *Disler*, 2018 WL 1916614, at *3.

Indeed, the law is clear that the question of whether a defendant has a legal duty under Section 314A is an entirely different inquiry than whether a defendant has voluntarily assumed a duty. *See, e.g. Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d 1173, 1178-81 (3d Cir. 1994)



FOWLER WHITE BURNETT P.A. • BRICKELL ARCH, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

(rejecting plaintiffs' claim that casino owed a duty to render assistance to patron who suffered heart attack under Restatement 314A and separately rejecting plaintiffs' claim that, even if there would otherwise be no duty under Section 314A, casino voluntarily assumed and breached a duty to provide care); *Fieldwork Boston, Inc. v. U.S.*, 344 F. Supp. 2d 257, 264 (D. Mass. 2004) ("These cases do not involve the voluntary assumption of a duty. Rather, the duty was imposed by virtue of a given relationship between the parties. This principle is incorporated in the *Restatement (Second) of Torts* § 314A (1965)."); *Davidson v. Univ. of North Carolina at Chapel Hill*, 142 N.C. App. 544 (N.C. Ct. App. 2001) ("We have addressed defendant's affirmative duty, arising from the special relationship between the parties, to provide that degree of care which a reasonable and prudent person would exercise under the same or similar circumstances. In addition, the undisputed evidence shows that defendant voluntarily undertook to advise and educate the cheerleaders regarding safety. We believe that this "voluntary undertaking" by defendant established a ***separate*** duty of care owed to plaintiff as a matter of law, ***independent*** of the duty of care arising from the special relationship.") (emphasis added); *Doe v. Big Brothers Big Sisters of America*, 359 Ill. App. 684, 701-05 (Ill. App. Ct. 2005) (rejecting plaintiff's argument that defendant owed a duty to protect plaintiff's son from sexual abuse because it had a "special relationship" with him based on the fact that it took custody of him, and separately rejecting plaintiff's "alternative[]" contention that the defendant voluntarily assumed a duty to protect plaintiff's son based on the fact that it engaged in a range of activities designed to prevent child abuse). Section 314A is thus immaterial to the determination of Counts II, III, and IV.[4]

---

[4] As part of his analysis under Section 314A, the Magistrate Judge suggested that the provision of the oxygen tank constituted an assumption of a duty on the part of the medical crewmembers to provide care to Mrs. Noon. [D.E. 45, p. 21]. However, the mere fact that Mrs. Noon borrowed an oxygen tank from the medical center did not, without more, create a voluntarily assumed duty for any member of the medical staff to provide respiratory support. There are no allegations in the Second Amended Complaint that Mrs. Noon ever went to the medical center or that any member of the medical staff went to Mrs. Noon's stateroom. There are also no allegations

CCL did not "forget[]," as the Magistrate Judge suggested in the Report, that cruise line cases are different than the run-of-the mill case. [D.E. 45, p. 18]. CCL recognizes that the law imposes a direct duty upon cruise lines to provide passengers with reasonable care under the circumstances. But claims for voluntary assumption of duty are not based upon a duty already owed by a cruise line (or its crewmembers); they arise out of specific undertakings or promises made by the defendant. There are ***no*** cases indicating that voluntary assumption of duty claims should be treated differently because they happen to be asserted against a cruise line. The Magistrate Judge should have recommended that Counts II, III, and IV be dismissed based upon his preliminary analysis of these claims in the Report.

## III. IN THE ALTERNATIVE, PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES SHOULD BE STRICKEN BECAUSE PLAINTIFF HAS FAILED TO ALLEGE FACTS DEMONSTRATING INTENTIONAL MISCONDUCT

The Magistrate Judge correctly determined in his Report that "Plaintiff may only recover punitive damages upon a showing of intentional conduct." [D.E. 45, p. 32]. CCL objects to the Magistrate Judge's determination that Plaintiff sufficiently pled facts demonstrating "intentional misconduct" for purposes of recovering punitive damages and the Magistrate Judge's recommendation that CCL's motion to strike be denied.

As the Magistrate Judge recognized, to demonstrate "intentional misconduct" for the purposes of recovering punitive damages, a plaintiff must show that "the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damages to

---

that Mrs. Noon otherwise requested medical assistance from the medical staff. No health care provider-patient relationship was ever created. Plaintiff does not allege that the medical staff promised to ever monitor or evaluate Mrs. Noon's condition, provide her with medical care, observe or examine Mrs. Noon after retrieval of the oxygen tank, offer or provide her a substitute tank or supplemental oxygen, or contact or summon emergency responder services to transport her to a land-based medical facility. And, of course, the Second Amended Complaint is devoid of any allegation that any member of the medical staff ever commenced performance of any of the foregoing purported duties.

the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage." *Mee Indus. v. Dow Chemical Co.*, 608 F.3d 1202, 1220 (11th Cir. 2010); *Bonnell v. Carnival Corp.*, Case No. 13-CV-22265-WILLIAMS, 2014 WL 12580433, at *3 (S.D. Fla. Oct. 23, 2014). While Plaintiff alleges in a conclusory manner that the conduct of CCL's non-medical crewmembers in conducting and supervising the disembarkation procedures for the Noon family amounted to "an intentional deprivation of Mrs. Noon's rights" [D.E. 24 at ¶¶ 50, 66], the Second Amended Complaint is devoid of any ***facts*** indicating that CCL intentionally pursued a course of conduct (1) with actual knowledge of the wrongfulness of the conduct and (2) the high probability that injury or damages would result. Indeed, Plaintiff has not asserted any intentional tort claims against CCL in the Second Amended Complaint; rather, each of Plaintiff's claims sounds in simple negligence.

The Magistrate Judge found that "Plaintiff's demand for punitive damages is well taken because Plaintiff alleges that Carnival's non-medical crewmembers had actual knowledge of Mrs. Noon's medical condition and did nothing to aid her," suggesting that the crewmembers' alleged knowledge of Mrs. Noon's condition and the alleged refusal to assist Mrs. Noon and prevention of her family members from contacting emergency service providers could constitute "gross recklessness tantamount to intentional misconduct." [D.E. 45, pp. 32-33]. With all due respect to the Magistrate Judge, the allegations relied upon by the Magistrate Judge simply do not rise to the level of "intentional misconduct" sufficient to support Plaintiff's claims for punitive damages.

As a threshold matter, the allegations above only addressed the alleged conduct of CCL's non-medical crewmembers; the Magistrate Judge did not point to ***any*** factual allegations supporting the punitive damage claims contained in Counts III and IV based upon the conduct of the ***medical*** crewmembers. Nor could the Magistrate Judge have done so, given that the only alleged interaction with a medical crewmember occurred when the Noon family borrowed the

oxygen tank. There are ***no*** factual allegations in the Second Amended Complaint that any medical crewmember affirmatively refused to assist Mrs. Noon or prevented her family members from contacting emergency service providers, let alone intentionally pursued a course of conduct with actual knowledge of the wrongfulness of the conduct and the high probability that injury or damages would result. The Magistrate Judge should have determined that Plaintiff did not adequately plead facts establishing "intentional misconduct" with respect to CCL's medical crewmembers and should have recommended that the Court grant CCL's motion to strike the claims for punitive damages in Counts III and IV.

With respect to Plaintiff's claims for punitive damages in Counts I and II, the alleged conduct of CCL's non-medical crewmembers does not amount to "intentional misconduct." The non-medical crewmembers are not alleged to have committed an intentional tort and, while particular acts are alleged to have been "intentional," there are no allegations indicating that the crewmembers intended to harm Mrs. Noon or knew that it was very likely that their acts would harm her. Rather, consistent with the claims being asserted, the conduct alleged in the Second Amended Complaint describes nothing more than negligence. As the court explained in *Bodner v. Royal Caribbean Cruises, Ltd.*, Case No. 17-20260-CIV-LENARD/GOODMAN, 2018 WL 4047119 (S.D. Fla. May 8, 2018), punitive damages requests in claims for direct negligence and vicarious liability for negligence "necessarily fail to allege 'intentional misconduct' and must be stricken." *Id.* at *8.

While the Magistrate Judge recognized the "intentional misconduct" standard of liability under general maritime law, he incongruously suggested that a claim alleging facts constituting "gross negligence" would be sufficient. [D.E. 45, p.33]. Specifically, the Magistrate Judge stated that "the cases that Defendant relies upon contemplate the possibility of a gross negligence claim with a demand for punitive damages as opposed to a bright-line rule that intentional misconduct

can never be available in negligence cases[,]" citing *Butler v. Carnival Corp.*, No. 14-21125-CIV, 2014 WL 5430313 (S.D. Fla. Oct. 24, 2014). However, a plain reading of *Butler* reflects that it did not utilize an "intentional misconduct" standard of liability for punitive damages, but rather it was one of the district court orders which fashioned a "wanton, willful, or outrageous conduct" standard for the recovery of punitive damages in passenger personal injury cases from the reasoning in *Atl. Sounding Co., Inc. v. Townsend*, 557 U.S. 404 (2009). 2014 WL 5430313, at *5. CCL only cited *Butler* in its reply for the limited proposition that, contrary to Plaintiff's position, facts must be pled to support a demand for punitive damages under whatever standard that court applies. [D.E. 34, p. 10].

Finally, the Magistrate Judge curiously cites the Supreme Court's opinion in *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008) in discussing the appropriate standard for liability for punitive damages. The *Exxon* Court, however, did not decide any issue pertaining to the availability, or standard, of recovery of punitive damages in passenger personal injury cases.[5] While the Court generally discussed that punitive damages are awarded as a result of conduct "owing to 'gross negligence,' 'willful, wanton and reckless indifference for the rights of others,' or behavior even more deplorable," *Id.* at 493 (citations omitted), it did not create a different standard to apply to maritime personal injury cases in the Eleventh Circuit. Like *Atl. Sounding*, nothing in the opinion overruled the Eleventh Circuit's requirement in *In re Amtrak "Sunset Limited" Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 121 F.3d 1421 (11th Cir. 1997) that "intentional misconduct" must be demonstrated. Because Plaintiff's allegations do not rise to the level of "intentional misconduct," the Magistrate Judge should have determined that Plaintiff did not adequately plead facts to support a punitive damages claim with respect to CCL's non-medical

[5] *Exxon* did not even involve a claim for personal injury – the plaintiffs in that action sought compensatory and punitive damages for property damage arising from an oil spill.

crewmembers and should have recommended that the Court grant CCL's motion to strike the claims for punitive damages in Counts I and II.

## CONCLUSION

Based on the foregoing, the Magistrate Judge should have dismissed Plaintiff's Second Amended Complaint. In the alternative, the Magistrate Judge should have stricken Plaintiff's claims for punitive damages.

WHEREFORE, Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES, respectfully requests that the Court reject the Magistrate Judge's recommendation that its Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, or in the Alternative, Motion to Strike Claims for Punitive Damages be denied.

Respectfully submitted,

/s/ *Marc J. Schleier*
Christopher E. Knight
Fla. Bar No. 607363
Email: cknight@fowler-white.com
Marc J. Schleier
Fla. Bar No. 389064
Email: mschleier@fowler-white.com
Katina M. Hardee
Fla. Bar No. 16069
Email: khardee@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 789-9200
Facsimile: (305) 789-9201

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of August, 2019, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ *Marc J. Schleier*
Marc J. Schleier

**SERVICE LIST**

CASE NO. 18-cv-23181-Williams/Torres

Philip M. Gerson, Esq.
GERSON & SCHWARTZ, P.A.
1980 Coral Way
Miami, Florida 33145-2624
E-Mail: pgerson@gslawusa.com
filing@gslawusa.com
zdiaz@gslawusa.com
Telephone: (305) 371-6000
Facsimile: (305) 371-5749
RANDALL NOON , as Personal
Representative of the Estate of
KAREN NOON, deceased