UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 18-CV-23181-WILLIAMS/TORRES

RANDALL NOON, as Personal
Representative of the Estate of
KAREN NOON, Deceased,

Plaintiff(s),

v.

CARNIVAL CORPORATION, a Panamanian
Corporation d/b/a CARNIVAL CRUISE LINES,

Defendant(s).
_______________________________________________/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR FINAL SUMMARY JUDGMENT (DE 51)**

Plaintiff Randall Noon, as Personal Representative of the Estate of Karen Noon, Deceased, responds to the Statement of Material Facts (DE 51) filed by Defendant Carnival Corporation d/b/a Carnival Cruise Lines in support of its Motion for Final Summary Judgment (DE 50).[1] Plaintiff responds to each numbered factual assertion by Carnival, respectively, and adds additional statements of fact as provided by Local Rule 56.1 of this District.

**Plaintiff's Response to Defendant's Statement of Material Facts**

1. Undisputed.

2. Undisputed.

[1] Since Carnival has filed its supporting Statement of Material Facts (DE 51) as a document separate from its Motion for Final Summary Judgment and supporting memorandum (DE 50), the Plaintiff is responding separately to Carnival's Statement of Material Facts.

3. Disputed in part. The description of Juanita Noon's employment and certification is accurate, but Ms. Noon testified that, although she has taken some nursing courses, she does not have a nursing degree and did not graduate from her nursing program. (DE 52, Deposition of Juanita Noon, July 25, 2019 at 9:7-21).

4. Undisputed.

5. Disputed in part. Mr. Noon and Melissa Noon testified that they did not look at Carnival's website at all before the cruise, regarding any topic, not that they specifically declined to look at the description of onboard medical care, if any, on the website. (DE 54, Deposition of Randall Noon, May 3, 2019 at 25:4-9; DE 53, Deposition of Melissa Lenard Noon, July 23, 2019 at 17:10-12).

6. Disputed in part. Ms. Juanita Noon's exact testimony was that shipboard medical care was not a concern to her before beginning the subject voyage because "We've [the Noon family] taken a cruise before" and therefore believed themselves to be already familiar with the availability of an onboard medical center. (DE 52 Juanita Noon at 27:9-12).

7. Disputed in part. Melissa Noon's exact testimony as to her observations on July 5, 2017 was that she observed "something coming on" regarding her mother Karen's health, which she attributed to her mother's "allergies" and the "bronchitis" her mother got "quite often." Melissa was familiar with her mother's state of health and therefore "could tell when she was starting to get a little sick" by features such as "the color of her skin" and "eyes." Melissa observed in this context that her mother's eyes were "a little tiny bit" "puffy," "like when you have allergies." Melissa testified that her mother "always wheezed a little bit" because of her


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

"COPD." On July 5, Melissa observed her mother's breathing to be a "little" labored "from the heat, I think." (DE 53, Melissa Noon at 40:13-41:22). Melissa Noon also testified that at dinner on the evening of July 5 Karen Noon said that "she thought she was getting a cold." (DE 53, Melissa Noon at 49:8-10). Since the Noon family at that point took Karen's word that she was merely "getting a cold," they did not suggest that she go to the medical center or see a doctor, since they considered that step "Not [necessary] for a cold." (DE 53, Melissa Noon at 49:8-19).

8. Disputed in part. On July 6, 2019, Melissa Noon did observe her mother to be tired and having difficulty breathing and did observe her mother's condition to be worse than it had been the day before. Melissa also testified, however, that her mother "didn't think it was serious" and believed that "she'd feel better" "after she took a nap and stuff." (DE 53, Melissa Noon at 57:3-15).

9. Disputed in part. Melissa Noon's exact testimony about her mother's observed condition at dinner on July 6 was that her mother did appear "sick" but "not more than it was earlier in the day." (DE 53, Melissa Noon at 58:21-59:10).

10. Undisputed.

11. Disputed in part. Juanita Noon's exact testimony was that at dinner on July 6, she did not ask her mother Karen whether she wanted to go to the onboard medical center, that Karen did not ask to go to the medical center, and that Juanita does not recall anyone else suggesting that Karen go to the medical center. (DE 52, Juanita Noon at 53:2-13).

12. Disputed in part. Melissa Noon's exact testimony was that on the morning of July 7, 2017, while she did observe her mother's breathing to be as bad as it had been the evening

before, it "wasn't worse" and was initially "about the same" as it had been the evening before, with her ability to walk "not bad." (DE 53, Melissa Noon at 64:5-20).

13. Undisputed.

14. Disputed in part. Melissa Noon did testify that, at dinner on July 7, 2017, her mother was having difficulty breathing; Melissa reported that her mother "could breathe," but that "you could hear the wheezing and shortness of breath." Her mother was, however, able to dress for dinner and walk to the dinner. (DE 53, Melissa Noon at 67:7-21).

15. Undisputed.

16. Disputed in part. Randall Noon's exact testimony was that he considered his wife's condition on the evening of July 7 to be consistent with her having "had breathing problems right along." (DE 54, Randall Noon at 48:21-25).

17. Undisputed.

18. Undisputed. However, Juanita Noon also testified that the crewmember with whom she spoke did not suggest that the Noon family bring Karen to the center to be examined and "never asked" to see Karen, even though Juanita explained that her mother was having difficulty breathing. (DE 52, Juanita Noon at 70:2-11).

19. Undisputed.

20. Undisputed.

21. Disputed. While nurse Ursua testified and his notation in the medical log indicates that he advised the Noon family to bring Karen to the medical center for evaluation, Randall Noon disputes this claim. Mr. Noon testified that when he went to the medical center, the

crewmember who provided the oxygen concentrator (presumably nurse Ursua) "didn't ask" about Karen Noon's condition and had no conversation with him "Other than here's your thing and here's the hose that you need to hook to it." (DE 54, Randall Noon at 46:2-9). Juanita Noon also testified that when she called to request the oxygen concentrator, the crewmember with whom she spoke "never asked" to examine Karen Noon and did not suggest that Karen go personally to the medical center. (DE 52, Juanita Noon at 70:2-11).

22. Undisputed.

23. Undisputed.

24. Undisputed in part. The crewmember who spoke with Juanita Noon to advise her that the oxygen concentrator had to be returned explained that this was necessary because Carnival "had to account for all their equipment." (DE 52, Juanita Noon at 77:2-5).

25. Disputed. Juanita Noon's exact testimony was that when she asked for a portable oxygen system, she was advised that "they don't have any that could leave the ship" and that "they didn't have one they could give us because they couldn't leave the ship. It's their equipment" and that Carnival "didn't have anything available." (DE 52, Juanita Noon at 77:2-12; 78:5-12; 79:2). These ambiguous statements could mean as Carnival suggests that there was no portable oxygen supplementation system present on board the ship, but could also mean that one was potentially available onboard but that Carnival policy would not allow it to leave the vessel. Carnival's corporate representative Suzanne Vazquez testified that Carnival does "have portable oxygen tanks" available "if they need to get to an emergency situation with a guest onboard," but

will ordinarily not allow them to be used in passenger cabins due to the risk of fire. (DE 57, Deposition of Suzanne Vazquez, July 9, 2019 at 63:18-25).

26. Disputed in part. Mr. Noon testified as Carnival states, but also testified that he did not hear "most" of the conversation between Juanita Noon and the individual advising her that the oxygen concentrator had to be returned. (DE 54, Randall Noon at 54:25-55:3).

27. Undisputed.

28. Undisputed in part. Randall Noon also testified that he had no conversation at all with the porters, since "we knew why they were there, to pick that up." (DE 54, Randall Noon at 56:3-21).

29. Undisputed in part. Randall Noon's full testimony was that his wife "wasn't doing too bad with the oxygen," but that when Carnival "took the oxygen away she kind of went downhill after that." (DE 54, Randall Noon at 57:7-9).

30. Disputed in part. The Noon family's plan was to obtain medical assistance for Karen Noon "whether it's emergency room or whatever," as soon as they left the ship. (DE 53, Melissa Noon at 82:21-23). Juanita Noon had already advised the crewmember who called to announce that the oxygen concentrator had to be returned that the Noon family intended to go to the "ER" as soon as they left the ship. (DE 52, Juanita Noon at 77:9-10).

31. Disputed in part. As noted above, Juanita Noon testified that she advised the crewmember calling to retrieve the oxygen concentrator of the family's intention to go to the "ER" as soon as they left the ship. (DE 52, Juanita Noon at 77:9-10).

32. Undisputed.

33. Disputed in part. While waiting in line to pay at the guest check-out desk, no one in the Noon family explicitly asked for Carnival to call emergency services. However, Juanita Noon testified that when the guest services representative at the check-out desk asked if Karen Noon was all right, Juanita said "not really, she is having trouble breathing" and that "We kind of need to get off the ship now to go to the ER." (DE 52, Juanita Noon at 82:9-13).

34. Undisputed.

35. Undisputed.

36. Disputed in part. As noted above, Juanita Noon had already advised the guest services representative that the Noon family needed to "get off the ship now to go to the ER." (DE 52, Juanita Noon at 82:9-13).

37. Undisputed.

38. Disputed in part. While the Noon family did not expressly ask Customs officials to call an ambulance for Karen, this was so because once the Noon family cleared Customs "they pulled straight out the door" "to the exit," and they had already explained to Carnival officials that "We were headed to the ER" and had "kept telling them we need to get off the ship, we're going to the ER." (DE 52, Juanita Noon at 86:23-25, 87:5-8).

39. Undisputed.

40. Undisputed.

41. Undisputed.

42. Undisputed.

43. Undisputed.



GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

44. Undisputed.

45. Disputed in part. Randall Noon's exact testimony was that Karen Noon "had all the money" in the Noon household and that he "had no clue" what she did with it. (DE 54, Randall Noon at 74:20-22).

46. Undisputed.

**<u>Plaintiff's Statement of Additional Material Facts</u>**

47. Randall Noon and Melissa Noon did not look at Carnival's website at all before the cruise, regarding any topic. (DE 54, Randall Noon at 25:4-9; DE 53, Melissa Noon at 17:10-12).

48. Juanita Noon does not have a nursing degree. (DE 52, Juanita Noon at 9:7-21).

49. The availability of shipboard medical care was not a concern to Juanita Noon before beginning the subject voyage because "We've [the Noon family] taken a cruise before" and therefore believed herself already to be familiar with the availability of an onboard medical center. (DE 52, Juanita Noon at 27:9-12).

50. On July 5, 2017, Melissa Noon observed "something coming on" regarding her mother Karen's health, which she attributed to her mother's "allergies" and the "bronchitis" her mother got "quite often." Melissa was familiar with her mother's state of health and therefore "could tell when she was starting to get a little sick" by features such as "the color of her skin" and "eyes." Melissa observed in this context that her mother's eyes were "a little tiny bit" "puffy," "like when you have allergies." Melissa testified that her mother "always wheezed a little bit" because of her "COPD." On July 5, Melissa observed her mother's breathing to be a "little" labored "from the heat, I think." (DE 53, Melissa Noon at 40:13-41:22).


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

51. At dinner on the evening of July 5, 2017 Karen Noon said that "she thought she was getting a cold." (DE 53, Melissa Noon at 49:8-10). Since the Noon family at that point took Karen's word that she was merely "getting a cold," they did not suggest that she go to the medical center or see a doctor, since they considered that step "Not [necessary] for a cold." (DE 53, Melissa Noon at 49:8-19).

52. On July 6, 2017, Melissa Noon testified that her mother did not think her condition was serious and expressed a belief that "she'd feel better" "after she took a nap and stuff." (DE 53, Melissa Noon at 57:3-15).

53. At dinner on July 6, 2017, Melissa Noon observed her mother to be "sick" but "not more than it was earlier in the day." (DE 53, Melissa Noon at 58:21-59:10).

54. On the morning of July 7, 2017, Melissa Noon observed her mother's breathing to be as bad as it had been the evening before, but not worse, and was initially "about the same" as it had been the evening before, with her ability to walk "not bad." (DE 53, Melissa Noon at 64:5-20).

55. At dinner on July 7, 2017, Karen Noon was able to dress for dinner and walk to the dinner. (DE 53, Melissa Noon at 67:7-21).

56. Passengers on Carnival's vessel can request assistive devices including oxygen concentrators from the onboard guest services department, which in turn contacts the medical center to advise of the request. (DE 56, Deposition of Rosel Ursua, July 1, 2019 at 43:10-44:5).

57. When Juanita Noon called on the evening of July 7, 2017 to inquire about obtaining supplemental oxygen for her mother Karen, the crewmember with whom she spoke did not


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

suggest that the Noon family bring Karen to the medical center to be examined and "never asked" to see Karen, even though Juanita explained that her mother was having difficulty breathing. (DE 52, Juanita Noon at 70:2-11).

58. When Randall Noon went to the ship's medical center to pick up the oxygen concentrator Juanita Noon had requested, the crewmember who provided the concentrator "didn't ask" about Karen Noon's condition and had no conversation with him "Other than here's your thing and here's the hose that you need to hook to it." (DE 54, Randall Noon at 46:2-9).

59. Nurse Rosel Ursua was on duty in the medical center when Juanita and Randall Noon came to pick up the oxygen concentrator they had requested. (DE 56, Ursua at 23:24-24:20).

60. At all material times, including the dates of the Noon family's cruise, Carnival had policies allowing its crewmembers on its vessels in port to contact land based emergency services, to respond to the vessel and transport a sick or injured passenger to a land based hospital. In the port of Miami, emergency services could respond with an ambulance within "five minutes" of being called. (DE 57, Vazquez at 87:9-12; 89:1-9; 90:7-21; 94:20-95:16).

61. Nurse Ursua was familiar with Carnival's procedures for summoning an ambulance or emergency services in port to take a passenger to a land based hospital, and was also familiar with Carnival's procedure for giving priority in disembarkation to sick or injured passengers requiring shoreside care, but did "not recall" whether he advised the Noon family that those procedures were available. (DE 56, Ursua at 48:6-49:3)


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

62. The crewmember who spoke with Juanita Noon on the morning of July 8, 2017 to advise her that the oxygen concentrator had to be returned explained that this was necessary because Carnival "had to account for all their equipment." (DE 52, Juanita Noon at 77:2-5).

63. Upon being advised that the oxygen concentrator had to be returned, Juanita Noon requested a portable oxygen system to support Karen Noon's breathing until the Noon family could disembark and obtain land based assistance. The crewmember with whom she was speaking advised her that "they don't have any that could leave the ship," that Carnival "didn't have anything available," and that "they didn't have one they could give us because they couldn't leave the ship. It's their equipment." (DE 52, Juanita Noon at 77:2-12; 78:5-12; 79:2).

64. According to Carnival's corporate representative Suzanne Vazquez, Carnival does have "portable oxygen tanks" available onboard for use in an "emergency situation," but ordinarily will not allow them to be used in passenger cabins due to fire risks. (DE 57, Vazquez at 63:18-25).

65. On July 10, 2019, the Plaintiff served a Request for Admissions upon Carnival as provided in Rule 36, Federal Rules of Civil Procedure. In the Request, the Plaintiff asked Carnival to admit or deny whether, "On board the Sensation on July 7th and 8th 2017," "Carnival had" "one or more portable oxygen concentrators which did not require being plugged into an electrical socket," "portable airway equipment and oxygen," "one or more portable (less than) 5 liter oxygen tanks and flow regulators" and "one or more bag mask airway equipment." (Exhibit 1, Request for Admissions, July 10, 2019 at ¶¶1-4). Over thirty days has elapsed since the Request was served, but Carnival has not responded to it.

66. Juanita Noon advised the crewmember who called to announce that the oxygen concentrator had to be returned that the Noon family intended to go to the "ER" as soon as they left the ship. (DE 52, Juanita Noon at 77:9-10).

67. The Noon family's plan was to obtain medical assistance for Karen Noon "whether it's emergency room or whatever," as soon as they left the ship. (DE 53, Melissa Noon at 82:21-23).

68. Randall Noon had no conversation whatsoever with the porters who came to retrieve the oxygen concentrator, since "we knew why they were there, to pick that up." (DE 54, Randall Noon at 56:3-21).

69. When the guest services representative at Carnival's check-out desk asked if Karen Noon was all right, Juanita Noon told her "not really, she is having trouble breathing" and that "We kind of need to get off the ship now to go to the ER." (DE 52, Juanita Noon at 82:9-13). Randall Noon also testified that "we asked [the guest services representative] to get off the ship so we could go to the emergency room." (DE 54, Randall Noon at 60:10-11).

70. Plaintiff's expert cardiologist, Robert Myerburg, M.D., is of the opinion that

> given the fact that Mrs. Noon was in the midst of an acute-on-chronic breathing problem at the time, and had improved somewhat with supplemental oxygen provided to her while on the ship, consistent with her prior history of similar events, it is more-likely-than-not that the cardiopulmonary arrest would have been avoided if she had been able to continue supplemental oxygen support when she disembarked the ship and was being transported to the nearest hospital. ....
>
> Had she received continuous supplemental oxygenation until she arrived at the hospital for definitive care of her acute-on-chronic respiratory failure, it is more-likely-than-not that she would have avoided the cardiac arrest and survived.

(DE 58-1, Report of Robert J. Myerburg, M.D. at 10).

71. Karen Noon "had all the money" in the Noon household and her husband, Plaintiff Randall Noon, "had no clue" what she did with it. (DE 54, Randall Noon at 74:20-22).

72. While she was alive, Karen Noon performed all cooking, cleaning and laundry washing for the Noon household. She also handled the household finances and physically paid all household bills. (DE 54, Randall Noon at 72:13-25).

73. After Karen Noon died, Randall Noon cooked, cleaned, and did laundry for himself because "Somebody had to." (DE 54, Randall Noon at 79:17-22).

74. After Karen Noon died, Randall Noon was paying $810.00 per month in mortgage payments for the Noon family home. At the end of 2018, he "had to" sell the home, and did so. (DE 54, Randall Noon at 18:6-19:5; 80:16-20).


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 6, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I ALSO CERTIFY that the foregoing document is being served this day on all counsel of record or pro se parties identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

**s/PHILIP M. GERSON**
PHILIP M. GERSON
Florida Bar No. 127290
pgerson@gslawusa.com
filing@gslawusa.com
cbenedi@gslawusa.com
GERSON & SCHWARTZ, P.A.
1980 Coral Way
Miami, FL 33145-2624
Telephone: (305) 371-6000
Facsimile: (305) 371-5749
Attorneys for Plaintiffs

**SERVICE LIST**

Philip M. Gerson, Esq.
Florida Bar # 127290
E-mail: pgerson@gslawusa.com
Nicholas I. Gerson, Esq.
Florida Bar # 20899
E-mail: ngerson@gslawusa.com
Edward S. Schwartz, Esq.
Florida Bar # 346721
E-mail: eschwartz@gslawusa.com
Attorneys for Plaintiff
GERSON & SCHWARTZ, P.A.
1980 Coral Way
Miami, Florida 33145

Marc J. Schleir
Florida Bar # 389064
E-mail: MSchleir@fowler-white.com
E-mail: Mjs@fowler-white.com
Christopher Knight
Florida Bar # 607363
E-mail: Cknight @fowler-white.com
Amanda A. Kessler
Florida Bar # 60885
E-mail: akessler@fowler-white.com
Andrew Garrett Tuttle
E-mail: atuttle@fowler-white.com
Katina M. Hardee
E-mail: KHardee@fowler-white.com
Attorneys for CARNIVAL CORPORATION
FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131