UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

RANDALL NOON, as Personal Representative of the Estate of KAREN NOON, deceased,

Plaintiffs,

v.

CARNIVAL CORPORATION, a Panamanian Corporation d/b/a CARNIVAL CRUISE LINES,

Defendant.

CASE NO. 18-cv-23181-Williams/Torres

**DEFENDANT CARNIVAL CORPORATION'S REPLY TO PLAINTIFF'S RESPONSE TO CARNIVAL'S DAUBERT MOTION [DE63]**

Defendant CARNIVAL CORPORATION, a Panamanian Corporation d/b/a CARNIVAL CRUISE LINES ("CCL"), files this reply to Plaintiff's Response [DE 63] to CCL's Daubert Motion to Preclude and Exclude All Evidence, Testimony and Argument Concerning Dr. Robert Myerburg's Opinion Regarding Decedent's Life Expectancy that are Based on Insufficient Data and/or Pure Speculation [DE 58]. As grounds therefor, CCL states as follows:

**MEMORANDUM OF LAW AND ARGUMENT**

On a motion to exclude expert testimony, the burden of proof rests squarely on the proponent of the expert testimony, not the movant challenging the testimony. General Electric v. Joiner, 522 U.S. 136, 142 (1997). This Court has the responsibility to close the gate on expert testimony that does not possess the appropriate indicia of reliability. *See* Federal Rule of Evidence 702(b)(an expert's testimony must be based on sufficient facts or data); United States v. Frazier, 387 F.3d 1244, 1266 (11th Cir. 2004)(A trial judge may therefore find that there is too much of an analytical gap between the data and the proffered opinion and may exclude any expert testimony

that is "imprecise and unspecific" or whose factual basis is not sufficiently explained).

In the instant case, CCL moved to strike or exclude the opinion testimony of Plaintiff's expert Cardiologist, Dr. Robert Myerburg, on the ground that his opinions as to decedent's life expectancy are unreliable and inadmissible because they are predicated upon insufficient facts and data, thereby amounting to unfounded assumptions and pure speculation. [DE 58]. In recognition of these significant deficiencies that render Dr. Myerburg's opinions unreliable, Plaintiff's Response to CCL's Daubert Motion relies almost exclusively on the fact that Dr. Myerburg based his opinion on published governmental data, the United States Life Tables. [DE 63, P. 2].

Plaintiff loses sight of the fact that while Dr. Myerburg may have based his opinion on the United States Life Tables, Dr. Myerburg's opinions related to decedent's life expectancy were generalized calculations unrooted from the facts of the case. Indeed, Dr. Myerburg did not review one single record of decedent's medical records from Sparrow Medical Center which spanned over a 30 year period or any other documents which contained significant facts of the case which would have aided him in reaching a reliable conclusion as to decedent's life expectancy.

In fact, Plaintiff's reliance on Myers-Clark v. Frahler Electric Co., 2007 WL 189248 at *2 (W.D. Wa. Case No. C05-5553 JKA, January 22, 2007), and Weirich v. Horst Realty Co., LLC, 2009 WL 920960 (E.D. Pa. Civil Action No. 07-cv-871, March 27, 2009, which are non-binding on this Court, is misplaced. [DE 63 at P. 3]. For instance, Plaintiff cited to Myers-Clark for the proposition that the court rejected a "challenge to a life expectancy opinion based on an insurance commissioner's life expectancy tables and holding that the issue of the decedent's 'alleged smoking and drug use habits are fair matters for cross-examination, but not fatal to the [expert] testifying as an expert on life expectancy issues.'" See id. However, Plaintiff failed to mention that in Myers-Clark the life expectancy figures offered by defendant's expert were remarkably similar to those

of plaintiff's expert. 2007 WL 189248 at *2. Presumably, since the life expectancy figures were remarkably similar, the court held that the issue of decedent's smoking and drug use habits were matters that were proper for cross-examination. Id. That is not the case here.

In Weirich, Plaintiff asserts that the court "rejected the argument that *Daubert* required exclusion of a work life expectancy opinion based on statistics for the general population in a journal of legal economics, despite a suggestion that the generally applicable work life expectancy had to be reduced because Weirich had multiple sclerosis." [DE 63 at p. 3]. Yet, Plaintiff did not disclose the fact that the Weirich court found that the expert had reviewed a significant amount of documents in advance of drafting his report, including plaintiff's medical records, employment history and education as well as various pleadings from the case. See id. at *5. For that reason, the expert's failure to review certain other documents, which may have led to error or improper assumptions, was not considered "a basis for the wholesale preclusion" of the expert's opinion. Id. (citations omitted). Here, Dr. Myerburg admittedly did not review any of decedent's 30+ years of medical history prior to her cardiac arrest.

More importantly, the Southern District has excluded expert testimony in cases where opinions related to life expectancy were generalized calculations unrooted from the facts of the case. In Rinker v. Carnival Corp., No. 09-23154-CIV, 2012 WL 37381, at *1 (S.D. Fla. Jan. 6, 2012), the court found that "Dr. Lessne's report and its conclusions lack 'fit' with the facts of this case" because his report was based on the life expectancy of a healthy 62-year-old woman, not a 62-year-old woman with stage three colon cancer, as were the circumstances in the action. See id. at *1. Accordingly, the Rinker court concluded that the expert's "estimates are nothing more than his own *ipse dixit*." Id. at 2. See also Cook ex rel, Estate of Tessier v. Sheriff if Monroe County, Fla., 402 F.3d 1092, 10 (11th Cir. 2005) (stating that a district court may exclude expert testimony

when its factual basis is not adequately explained).

As in Rinker, Dr. Myerburg's conclusions pertaining to life expectancy "lack fit with the facts of this case." Dr. Myerburg himself described his conclusion as "the average life expectancy for a woman at [the decedent's] age." [DE 58, Ex. "B" at P. 37; L. 12-14]. But when questioned regarding his methodology for determining decedent's life expectancy, Dr. Myerburg admitted that he did not look at the life tables specifically in preparation for his deposition, but "the general number" of 25 years of additional life expectancy is in the range for a "54-year old woman in the United States." Id. at P. 42; L.12-17. However, decedent was 56 years old at the time of her death, with a date of birth of June 12, 1961.

Equally important, Dr. Myerburg admitted that he made his conclusion on life expectancy without reviewing any of the decedent's prior medical records. Id. at P. 38; L. 3-6. In fact, Dr. Myerburg admitted that his "perception" on life expectancy was exclusively based on his review of the deposition of the decedent's husband, two deposition summaries of the decedent's daughters, and the Jackson records from the date of death. Id. at P.35; L. 17-22. In other words, Dr. Myerburg admitted that he did not conduct an independent review of the decedent's prior medical records, rather the extent of his knowledge of the same is limited only to a cursory review of accounts of the decedent's medical history as described by her family members. Id.

Although Dr. Myerburg conceded that smoking is a life-limiting activity, he did not take same into account when determining decedent's life expectancy. Id. at P. 38; L. 12-14. Had Dr. Myerburg reviewed decedent's medical records, he would have known that decedent had been previously diagnosed with tobacco abuse as of February 2017 and reported that she has smoked one pack of cigarettes a day for the last 20 years and was not interested in discussing quitting. This clearly demonstrates that Dr. Myerburg's estimate of decedent's life expectancy is unreliable for

failure to account for reductions in life expectancy due to smoking. [DE 58, Ex. "B" at P. 38; L. 12-14].

Likewise, Dr. Myerburg's description of decedent's medical condition is not only inconsistent, but contradicts record evidence. Specifically, Dr. Myerburg's conclusion as to the "specific number" of decedent's estimated life expectancy was not rooted in record evidence or the facts of this case. Dr. Myerburg admitted that "from a statistical point of view, the reduction [in life expectancy] is relatively small" for a person who has minimally symptomatic COPD or asymptomatic COPD . . . And that [he] put a good deal of weight on the question of her lack of symptomology from her COPD and the incidents of cancer in the general population" [DE 58, Ex. "B" at P. 39; L. 6-15]. Contrary to Dr. Myerburg's statements that the decedent had "minimally symptomatic COPD" prior medical records show that in fact the decedent suffered from exacerbated or chronic COPD.

Another issue with the sufficiency and reliability of Dr. Myerburg's opinion is the fact that he claimed that the "specific number [of years for decedent's life expectancy] comes from experience and knowledge about the reduction in life expectancy for a population of patients and individuals who have COPD." Id. at P. 40; L. 1-4. Yet, when Dr. Myerburg was questioned regarding what training and experience allows him to express opinions on life expectancy of persons with COPD, he was unable to elaborate in any level of detail, and, in fact, stated "I can't be specific about that. . . . " Id. at P. 42; L. 19-23.

Moreover, Dr. Myerburg did not conduct any studies, publish any articles subject to peer review on the life expectancy of persons with COPD who continue to smoke, nor has he conducted any original research or been part of research projects which examined the life expectancy of persons with COPD. Id. at P. 44; L. 24 – P; [DE 58, Ex. "E"]. There is also no evidence that Dr.

Myerburg has read any studies, treatises or articles subject to peer review on the impact of COPD on a person's life expectancy.

Consequently, given the foregoing, and the reasons set forth in CCL's Daubert Motion [DE 58], the opinions of Dr. Myerburg regarding decedent's life expectancy should be excluded under Fed. R. 702 and Daubert and its progeny as sheer, unreliable speculation and conjecture.

**IV. CONCLUSION**

Based on the foregoing arguments and authorities, Defendant CARNIVAL CORPORATION, a Panamanian Corporation d/b/a CARNIVAL CRUISE LINES respectfully requests this Court to enter an Order striking or excluding the above-discussed opinion testimony of Plaintiffs' expert Dr. Robert Myerburg.

Respectfully submitted,

/s/ Katina M. Hardee
Katina M. Hardee
Fla. Bar No. 16069
Email: khardee@fowler-white.com

Christopher E. Knight
Fla. Bar No. 607363
Email: cknight@fowler-white.com

George M. Koonce, III
Fla. Bar No. 519261
Email: gkoonce@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 789-9200
Facsimile: (305) 789-9201

**CERTIFICATE OF SERVICE**

I hereby certify that on September 13, 2019, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Katina M. Hardee
Katina M. Hardee

**SERVICE LIST**

CASE NO. 18-cv-23181-Williams/Torres

Philip M. Gerson, Esq.
GERSON & SCHWARTZ, P.A.
1980 Coral Way
Miami, Florida 33145-2624
E-Mail: pgerson@gslawusa.com
filing@gslawusa.com
zdiaz@gslawusa.com
Telephone: (305) 371-6000
Facsimile: (305) 371-5749
RANDALL NOON , as Personal
Representative of the Estate of
KAREN NOON, deceased