UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

RANDALL NOON , as Personal Representative of the Estate of KAREN NOON, deceased,

Plaintiffs,

v.

CARNIVAL CORPORATION, a Panamanian Corporation d/b/a CARNIVAL CRUISE LINES,

Defendant.

CASE NO. 18-cv-23181-Williams/Torres

**DEFENDANT CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR FINAL SUMMARY JUDGMENT [D.E. 50]**

Christopher E. Knight
Fla. Bar No. 607363
Email: cknight@fowler-white.com
Marc J. Schleier
Fla. Bar No. 389064
Email: mschleier@fowler-white.com
Katina M. Hardee
Fla. Bar No. 16069
Email: khardee@fowler-white.com

FOWLER WHITE BURNETT, P.A.
*Attorneys for Defendant Carnival Corporation*
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 789-9200
Facsimile: (305) 789-9201

Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES, (hereinafter "CCL"), by and through undersigned counsel, hereby files this Reply Memorandum in support of its Motion for Final Summary Judgment, and states as follows:

**ARGUMENT**

**I. CCL IS ENTITLED TO SUMMARY JUDGMENT ON COUNT I**

As a threshold matter, Plaintiff concedes in his response that he "is seeking to hold Carnival vicariously liable for the actions and inactions of its crewmembers" in Count I, and is not asserting a claim for direct negligence against CCL, which Plaintiff suggests only applies to the "situation in which a problem arises at a high managerial level of the vessel operator." [D.E. 61, pp. 8-9]. Plaintiff is the master of his complaint in deciding what causes of action he wishes to plead. *See Hill v. BellSouth Telecomms., Inc.*, 364 F.3d 1308, 1314 (11th Cir. 2004); *Soc'y of Lloyd's v. Sumerel*, No. 2:06-cv-329-FtM-29DNF, 2007 WL 2114381, at *2 (M.D. Fla. July 20, 2007). In pleading a claim for vicarious liability, rather than one for direct negligence, he has committed himself to such claim. *See Sumerel*, 2007 WL 2114381, at *2 ("While plaintiff may or may not be able to prevail on this claim, it has committed itself to the statutory cause of action, not a common law cause of action.").

The law is well-settled that the duty to exercise reasonable care under the circumstances belongs to the shipowner, ***not*** the shipowner's employees. *See, e.g., Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959) ("We hold that the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case."); *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1246 (11th Cir. 2014) ("Carriers owe their ailing passengers a duty to exercise reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.") (quotation marks omitted); *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364, 1371 (5th Cir. 1988) ("[A]lthough a carrier has no duty to furnish a doctor for its passengers' use, it does owe its sick and injured passengers a duty to exercise 'reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.'"). While the duty is fulfilled through the acts of the shipowner's employees, the duty is owed by the shipowner itself. This is in contrast to those circumstances where a crewmember has an independent duty to the passenger – such as a physician or nurse who provides care or treatment to a patient – and the shipowner may be held vicariously liable for the crewmember's breach of such duty. *See Franza*, 722 F.3d at 1238. Here, because

the individual non-medical crewmembers owed no duty recognized under the law separate and apart from CCL's general duty, CCL cannot be held vicariously liable for a breach of such alleged duty.[1] CCL is entitled to a summary judgment on Count I.

In any event, Plaintiff has tacitly conceded that he cannot prevail on the theories of negligence set forth in Count I. Plaintiff alleges in Count I that (1) the porters who picked up the oxygen concentrator observed Mrs. Noon in a distressed state and failed to seek and obtain medical assistance for her [D.E. 24 at ¶ 40]; (2) the ship's non-medical crewmembers conducting and supervising the disembarkation procedures refused the Noon family's requests to summon emergency responder services to transport Mrs. Noon to the nearest available land-based hospital or otherwise allow the Noon family to summon private transportation. [*Id.* at ¶¶ 41-43]. CCL refuted these allegations in its motion, and Plaintiff makes no attempt in his response to argue that either the porters or those crewmembers involved in disembarkation were negligent. Instead, Plaintiff pivots, now arguing for the first time that the guest services representative who called the Noon family at 7:00 a.m. on July 8 to advise that the oxygen concentrator was about to be picked up negligently caused Mrs. Noon's death.

First, this theory should be rejected because it was not pled in Plaintiff's Second Amended Complaint. A plaintiff may not amend her complaint through argument in a brief opposing summary judgment. *See Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). After having had three opportunities to perfect his pleading, Plaintiff elected to limit the alleged negligence in Count I to the conduct of the porters and the non-medical crewmembers conducting and supervising the disembarkation procedures. Not only was there no specific allegation in Count I that the guest services representative who called the Noon family was negligent, the count cannot be reasonably construed to suggest that the representative was negligent. Significantly, the alleged failures of CCL's non-medical crewmembers, set forth in paragraphs 40 through 43, began at "the time the porters . . . retrieved the non-portable oxygen [concentrator]." [D.E. 24 at ¶ 40]. Nothing in those allegations could have reasonably put CCL on notice that the guest services representative was alleged to have been negligent.

---

[1] Plaintiff has cited no case holding that an individual crewmember may be held liable for breaching a general duty to exercise reasonable care under the circumstances. While the Eleventh Circuit in *K.T. v. Royal Caribbean Cruises, Ltd.*, No. 17-14237, 2019 WL 3312530 (11th Cir. 2019) interchangeably referred to the subject duty as belonging to the cruise line, and the cruise line and the crew, no crewmember was sued individually and, as explained in CCL's motion, the cruise line was sued for direct negligence, not vicarious liability.

Even if Plaintiff's unpled theory could be considered, there is insufficient evidence that the guest services representative breached any duty owed to Mrs. Noon. Mr. Noon and Juanita Noon went to the medical center to pick up the oxygen concentrator at approximately 11:00 p.m. on July 7. [D.E. 51, ¶19]. The Noon family was aware that the concentrator was only being borrowed and needed to be returned. [D.E. 51-1, p. 1; D.E. 56 at 26:3-27:16; 27:25-28:1-5; D.E. 57 at 27:18-28:6]. At approximately 7:00 a.m. on July 8, after the ship had reached its destination port of Miami, the representative called Mrs. Noon's stateroom to advise that the concentrator would be picked back up. [D.E. 51, ¶24]. Juanita Noon, who received the call, asked the representative whether there were any portable concentrators that could leave the ship, but she was told that CCL did not have any O2 bottles or portable concentrators. [*Id.*, ¶25]. Mr. Noon testified that he did not hear Juanita say that she did not want the concentrator to be picked up. [*Id.*, ¶26]. Shortly after the call, two porters came to pick up the concentrator. [*Id.*, ¶27].

There is no evidence that Juanita advised the representative that Mrs. Noon was in respiratory distress. Indeed, Mrs. Noon was feeling fine at such time. [*Id.*, ¶29]. There is no evidence that Juanita requested that the representative obtain medical assistance for Mrs. Noon. There is no evidence that Juanita requested that the representative call 911 or that Mrs. Noon be disembarked immediately, and Juanita testified that she did not ask the representative to arrange for an ambulance to meet Mrs. Noon port-side. [*Id.*, ¶27]. And there is no evidence that Juanita advised the representative that, without supplemental oxygen, Mrs. Noon was in danger of serious injury or death.

Notwithstanding the foregoing, Plaintiff parses through Juanita's limited testimony describing the call in an attempt to establish that the representative acted negligently. While Juanita did ask if CCL had portable concentrators, the representative accurately represented that the ship did not. Juanita's rhetorical question of "what are we supposed to do" related to her desire for a portable concentrator if one was available, given that the concentrator that Mrs. Noon had been using was not portable and needed to be returned. And Juanita's mere statement that "we're going to the ER as soon as we get off the ship" did not reasonably communicate to the representative that there was an emergent situation that required immediate aid or assistance, particularly in the absence of any information provided by Juanita that Mrs. Noon was currently in an emergent medical condition (which she was not) or a specific request by Juanita that 911 or emergency medical services be called. In fact, the Noon family – which included two home health aides, including Juanita [D.E. 51, ¶¶3-4] – did not believe that that Mrs. Noon was in an emergent

medical condition at such time, declining to go to the ship's medical center or otherwise seek assistance from CCL (other than the request for a portable concentrator) and instead planning to drive to the hospital [*Id.*, ¶27] rather than go to the hospital in an ambulance. The representative did not breach any duty owed to Mrs. Noon and cannot be held responsible, through CCL, for Mrs. Noon's death. CCL is entitled to a summary judgment on Count I.

Lastly, Plaintiff's reliance on cases addressing a cruise line's duty to evacuate passengers under certain circumstances is misplaced. A shipowner can only be charged with a duty to evacuate when a specific request for evacuation is made. *See, e.g., Wajnstat v. Oceana Cruises, Inc.*, No. 09-21850-Civ, 2011 WL 465340, at *4 (S.D. Fla. Feb. 4, 2011) ("The Plaintiff next alleges that Oceania Cruises is liable to him for failing to timely evacuate him when he became ill. Nowhere in the Plaintiff's complaint does he allege that either he or his physician, Dr. Lidstromer, requested the carrier to evacuate him earlier than he was actually evacuated at Sevastopol, Ukraine. . . . There are no allegations in the complaint that present a plausible cause of action against Oceania Cruises for failing to exercise reasonable care in furnishing aid and assistance to Mr. Wajnstat."); *Rinker v. Carnival Corp.*, 836 F. Supp. 2d 1309, 1316 (S.D. Fla. 2011) (denying Carnival's motion for summary judgment on allegation of failure to timely evacuate passenger where "Plaintiff's husband explicitly requested that Plaintiff be evacuated hours before she was actually evacuated"). No such request was made to the guest services representative here, and the circumstances at the time of the call did not require an evacuation.

## II. CCL IS ENTITLED TO SUMMARY JUDGMENT ON COUNTS II, III AND IV

Similar to his argument with respect to Count I, Plaintiff no longer suggests that CCL's porters or the non-medical crewmembers involved with disembarkation voluntarily assumed any duty to provide aid or assistance to Mrs. Noon. Instead, for the first time, Plaintiff argues that the guest services representative from whom the Noon family requested the oxygen concentrator on July 7 voluntarily assumed a duty to monitor Mrs. Noon's condition and take appropriate action upon being advised of its necessity. [D.E. 61, pp. 7-8]. As a preliminary matter, this Court should not consider Plaintiff's new theory, as it was not pled in the Second Amended Complaint. The allegations of Count II plainly indicate that the non-medical crewmembers' alleged duty was assumed on July 8, during the porters' retrieval of the concentrator and through the disembarkation process. There is no suggestion that a duty was assumed either on July 7 or by the representative who contacted the medical center. As explained above, a plaintiff may not amend her complaint through argument in a brief opposing summary judgment. *See Gilmour*, 382 at 1315.

Further, the representative from whom the concentrator was requested on July 7 did not undertake to do anything other than to contact the medical center so that the Noons could borrow a concentrator. There is no evidence that he promised or represented that he would do anything other than contact the medical center, nor is there evidence that the Noon family relied upon the representative to do anything else. There is no evidence that he began to monitor Mrs. Noon or made arrangements for her to be monitored. In fact, there is no evidence that the Noon family had any further interaction with that representative after the call took place on July 7. As nothing that the representative did created a foreseeable zone of risk to Mrs. Noon, he did not voluntarily assume any duty.

Even if the representative voluntarily assumed any duty to Mrs. Noon, Plaintiff does not argue that the representative breached such duty. Rather, Plaintiff argues that a ***different*** CCL non-medical crewmember breached the representative's purported assumed duty the following day by arranging for retrieval of the concentrator. Plaintiff does not cite any legal support for the proposition that an individual can breach another individual's voluntarily assumed duty, nor is CCL aware of any. The law is clear that conclusory, unsupported arguments are insufficient to withstand summary judgment. *See Catano v. Capuano*, No. 18-20223-Civ-TORRES, 2019 WL 3035752, at *5 (S.D. Fla. July 11, 2019). And even if a separate individual could commit the breach where an employer or principal is alleged to have voluntarily undertaken the duty, Count II alleges vicarious liability, not direct negligence. [D.E. 61, pp. 8-9]. For CCL to be vicariously liable, a particular employee or agent must be found to have been negligent, which would require that such individual had, and breached, a duty. *See Franza*, 772 F.3d at 1236; *Cohen v. Carnival Corp.*, 945 F. Supp. 2d 1351, 1355 (S.D. Fla. 2013). As Plaintiff does not argue that any particular non-medical crewmember undertook a duty and breached such duty, no non-medical crewmember could be found to be negligent, and CCL cannot be subject to vicarious liability.

In any event, as explained in the previous section and in CCL's motion, no CCL non-medical crewmember breached any duty that may have been owed to Mrs. Noon, whether by picking up the borrowed oxygen concentrator or otherwise. CCL is entitled to a summary judgment as to Count II.

Plaintiff also argues that medical crewmember Nurse Ursua undertook a duty to monitor Mrs. Noon's condition and to take appropriate action upon being advised of the concentrator's necessity through his act of providing the concentrator to the Noons for Mrs. Noon's use. As explained in CCL's motion, allowing Mrs. Noon to borrow the oxygen concentrator arguably gave

rise to a voluntarily assumed duty to ensure that the concentrator worked properly, and nothing more. There is no evidence that Nurse Ursua promised or represented that he would do anything other than provide the concentrator, nor is there evidence that the Noon family relied upon Nurse Ursua to do anything else. There is no evidence that he began to monitor Mrs. Noon or made arrangements for her to be monitored. Indeed, the Noon family did not want anything from the medical center other than the concentrator, declining a medical assessment and medical evaluation on behalf of Mrs. Noon. [D.E. 51, ¶21].

Plaintiff also cannot show that Nurse Ursua breached any voluntarily assumed duty. The only breach of a voluntarily assumed duty identified by Plaintiff occurred when the oxygen concentrator was retrieved. There is no evidence that Nurse Ursua was involved in any way with the retrieval of the concentrator or had any information regarding Mrs. Noon's condition at that time. Plaintiff has also not opposed CCL's argument that expert testimony is required to establish that Nurse Ursua breached a duty or that Plaintiff's claims based on medical crewmember negligence fail because he has not offered any such testimony. CCL is entitled to a summary judgment as to Counts III and IV.

Finally, Plaintiff did not respond to CCL's argument that it is entitled to a summary judgment on Count IV on the ground that there is no evidence establishing that any medical crewmember was acting as CCL's apparent agent. CCL recognizes that a court cannot base summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion. *See U.S. v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). As explained in its motion, CCL is alternatively entitled to summary judgment on this count because, not only is the record devoid of any representation or manifestation made by CCL to Mrs. Noon that Nurse Ursua or any other medical provider was acting as its agent or employee, there is no evidence that Mrs. Noon relied on or changed her position in reliance on any alleged belief of same. Summary judgment is proper where, as here, a party fails to make a showing sufficient to establish the existence of an element essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. IN THE ALTERNATIVE, CCL IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES

Notwithstanding the fact that this Court has agreed with CCL that "Plaintiff may only recover punitive damages upon a showing of intentional conduct" [D.E. 45, p. 32; D.E. 60], Plaintiff once again argues that the appropriate standard for the recovery of such damages is a

showing of "wanton, willful, or outrageous" conduct, relying upon the Supreme Court's decision in *Atl. Sounding Co., Inc. v. Townsend*, 557 U.S. 404 (2009). As the Magistrate Judge explained in his Report, the Supreme Court's decision in *Atl. Sounding* – wherein the Court ruled solely on the separate, narrow issue of whether punitive damages were available to a seaman as a remedy for a shipowner's failure to pay maintenance and cure – did ***not*** overrule the Eleventh Circuit's holding in *In re Amtrak "Sunset Limited" Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 121 F.3d 1421 (11th Cir. 1997) that general maritime law limits the recovery of punitive damages to circumstances where there has been a showing of intentional misconduct. [D.E. 45, pp. 27-30].

Indeed, for the Supreme Court to overrule a case, its decision must have "actually overruled or conflicted with" the Eleventh Circuit's prior precedent. *U.S. v. Vega-Castillo*, 540 F.3d 1235, 1237 (2008); *Atl. Sounding Co., Inc. v. Townsend*, 496 F.3d 1282, 1284 (11th Cir. 2007). Even if there is serious tension between an Eleventh Circuit's decision and an intervening Supreme Court decision, a district court may not disregard Eleventh Circuit precedent as overruled or abrogated by the Supreme Court unless the conflicting Supreme Court decision is "clearly on point." *U.S. v. Sanders*, 461 F. App'x 854, 856 (11th Cir. 2012). There is an important difference between the ***holding*** in a case and the ***reasoning*** that supports that holding. *Crawford-El v. Britton*, 523 U.S. 574, 585 (1998). Even if the reasoning is at odds with a prior appellate court decision, that does not provide a court with a basis to depart from a prior circuit decision. *Vega-Castillo*, 540 F.3d at 1237. As the Eleventh Circuit has stated, "[o]bedience to a Supreme Court decision is one thing, extrapolating from its implications a holding on an issue that was not before that Court in order to upend settled circuit law is another thing." *Main Drug, Inc. v. Aetna U.S. Healthcare, Inc.*, 475 F.3d 1228, 1230 (11th Cir. 2007). Given that the Supreme Court in *Atl. Sounding* did not mention *Amtrak* or decide any issue relating to the standard for recovery of punitive damages in passenger personal injury cases, it did not "directly conflict" with or otherwise overrule *Amtrak*.

Plaintiff notes that the Magistrate Judge found the allegations in the Second Amended Complaint sufficient to support an award of punitive damages under *Amtrak* and brazenly represents to this Court that, "[w]hile not every detail alleged in the Second Amended Complaint has been borne out in discovery, the material ultimate facts upon which Magistrate Judge Torres relied have been." [D.E. 61, p. 16]. Such statement could not be further from the truth. The Magistrate Judge's determination that Plaintiff had sufficiently pled his punitive damage claim was based on allegations that (1) the porters who picked up the oxygen concentrator witnessed Mrs. Noon in obvious respiratory distress, commented on same, and did nothing to assist despite

actual knowledge of such condition; (2) Mrs. Noon's family members requested that the non-medical crewmembers supervising the disembarkation procedures arrange for transportation to a land-based hospital or medical facility, but the crewmembers refused; and (3) the non-medical crewmembers intentionally prevented Mrs. Noon or Mr. Noon from contacting any emergency service providers on their own. [D.E. 45, pp. 3, 8, 10-11, 32-34]. Such allegations bear no resemblance to the actual facts and appear to have only been included in the Second Amended Complaint so as to survive a motion to dismiss. Not only does the evidence demonstrate that Mrs. Noon was fine when the porters arrived [D.E. 51, ¶29], there is ***no*** evidence that the porters observed Mrs. Noon's condition, and the testimony is unequivocal that the porters did not comment on how Mrs. Noon looked. [*Id.*, ¶28]. Indeed, there is no evidence of any communications or other interactions between the porters and either Mrs. Noon or any member of her family. The evidence is also clear that Mrs. Noon's family members ***never*** requested that a CCL crewmember call 911 or emergency transportation service, or otherwise arrange for transportation to a land-based hospital or medical facility. [*Id.*, ¶¶30-31, 33, 36]. There is also no evidence that either Mrs. Noon or anyone in her family was prevented from arranging their own transportation off of the ship.

As explained above, Plaintiff recognizes that neither the porters nor the crewmembers supervising the disembarkation procedures did anything wrong and instead suggests for the first time that the guest services representative who called to advise the Noon family of the pick-up of the oxygen concentrator negligently caused Mrs. Noon's death. Even if the representative could possibly be found negligent, the aggravating factors discussed in the Magistrate Judge's Report are absent here. There is no evidence that the representative knew or was told that Mrs. Noon was in obvious respiratory distress (and the evidence reflects she was not). And there is no evidence that any request was made to the representative to arrange for transportation to a land-based hospital or medical facility – let alone refused such a request – or that the representative intentionally prevented Mrs. Noon or Mr. Noon from contacting any emergency service providers on their own. There is simply no basis for a jury to find that the representative intentionally pursued a course of conduct (1) with actual knowledge of the wrongfulness of the conduct and (2) the high probability that injury or damages would result. CCL is entitled to summary judgment on Plaintiff's punitive damage claims.

Finally, even if Plaintiff could create a genuine issue of material fact as to whether CCL's crewmembers engaged in "intentional misconduct," he has failed to refute CCL's argument that it

cannot be held liable for punitive damages based on any alleged misconduct of its crewmembers unless it was aware of such conduct and encouraged, authorized, ratified, or approved same. Plaintiff has not disputed that such a showing is required in order to impose punitive damages on an alleged employer or principal such as CCL, nor has he introduced evidence of any knowledge or ratification by CCL of any alleged intentional misconduct on the part of its crewmembers. As such, CCL is entitled to summary judgment on Plaintiff's punitive damage claims for this reason as well.

## IV. IN THE ALTERNATIVE, CCL IS ENTITLED TO SUMMARY JUDGMENT AS TO CERTAIN CLAIMS FOR DAMAGES SOUGHT PURSUANT TO THE FLORIDA WRONGFUL DEATH ACT

Plaintiff's one-paragraph response to this section of CCL's motion is limited to Plaintiff's contention that there is sufficient evidence to create a jury question as to Mr. Noon's damage claims for loss of support and services. Plaintiff does ***not*** oppose CCL's argument that Section 768.21, Florida Statutes, does not allow for damages for loss of Mrs. Noon's earning capacity. Plaintiff does ***not*** oppose CCL's argument that there is no evidence that Mrs. Noon lost any earnings between the date of her injury (July 8) and the date of her death (July 9), such that Plaintiff could recover for loss of earnings under Section 768.21(6)(a). Plaintiff does ***not*** oppose CCL's argument that Mrs. Noon's grandchildren, Makayla Noon, Sage May Lenard, and Elijah Randall Lenard, do not qualify as statutory "survivors" entitled to recover damages under the Florida Wrongful Death Act and that, in any event, there is no evidence that Mrs. Noon provided support and services to her grandchildren (let alone the value of same). Plaintiff does ***not*** oppose CCL's argument that Plaintiff may not recover loss of net accumulations under Section 768.21(6)(a) because he not only failed to provide a method of ascertainment of Mrs. Noon's future earnings, but the record is devoid of any evidence that Mrs. Noon had a propensity to save or had saved anything at all at the time of her death. Finally, Plaintiff does ***not*** oppose CCL's argument that Plaintiff may not recover funeral expenses on behalf of the estate under Section 768.21(6)(b) given that Mr. Noon, not the estate, actually paid for such expenses. In the event that this Court does not otherwise grant a final summary judgment in CCL's favor, this Court should grant a summary judgment on each of the foregoing damage claims for the reasons stated in CCL's motion.

While Plaintiff does argue that he is entitled to proceed with his damage claims for loss of support and services to Mr. Noon, he does ***not*** point to evidence that would support such claims. The only "evidence" identified by Plaintiff in support of Mr. Noon's loss of support claim is Mr. Noon's testimony that he "had to" sell his home, which Plaintiff speculates occurred because

"presumably he was unable to afford the mortgage payments without his late wife's income." [D.E. 61, p. 12]. As a threshold matter, Mr. Noon's act of selling his home after his wife's death, without more, does not establish that Mrs. Noon provided any financial support to Mr. Noon while she was alive. Moreover, Mr. Noon did not explain his reasons for selling the home and there is no testimony indicating that he sold the Noon family home based upon a financial inability to pay the $810 mortgage on the house. [D.E. 54 at 18:6-19:5; 80:16-20]. Plaintiff's conjecture that Mr. Noon required Mrs. Noon's income in order to pay the mortgage payments cannot support an award for loss of support. *See Deakle v. John E. Graham & Sons*, 756 F.2d 821, 830 n.4 (11th Cir. 1985) ("A damage award based on such conjecture would not be reasonably supported by the evidence in the record."). Indeed, if any presumption could be made as to why Mr. Noon sold the house, it was because he moved in with his girlfriend, Stacy Patten, at which residence he paid the rent. [D.E. 54 at 5:10-6:1; 80:14-15]. Even assuming *arguendo* that this Court could find that Plaintiff established that he lost support, Plaintiff failed to introduce evidence as to a reasonably certain lost value of same to support a recovery of damages for same. This Court should grant a summary judgment on Mr. Noon's claim for loss of support.

And while Plaintiff has pointed to services that Mrs. Noon provided to Mr. Noon which he must now provide for himself, he has failed to introduce the value of such services. In the absence of evidence assigning a value to services allegedly lost, a claim for loss of services fails. *See Ivy v. Sec. Barge Lines, Inc.*, 585 F.2d 732, 740 (5th Cir. 1978); *Matter of Adventure Bound Sports, Inc.*, 858 F. Supp. 1192, 1201 (S.D. Ga. 1994); *Lasseigne & Sons, Inc. v. Bacon*, No. 87-4003, 1988 WL 89557, at *4 (9th Cir. Aug. 16, 1988); *see also Rice v. Brown*, 645 So. 2d 1020, 1022 (Fla. 2d DCA 1994) (reversing loss of services award in wrongful death action where no evidence was presented revealing the cost of replacing the services of the decedents), *rev. denied*, 658 So. 2d 99 (Fla. 1995); *Columbia/JFK Med. Ctr. Ltd. v. Sangounchitte*, 977 So. 2d 639, 642 (Fla. 4th DCA 2008) (reversing lost services award where no evidence was presented, either through expert or lay testimony, as to the value of the services that could no longer be provided); *White Constr. Co. v. Dupont*, 430 So. 2d 915, 918-19 (Fla. 1st DCA 1983) (lost services award was not justified because there was no evidence presented as to the reasonable value of the services that could no longer be performed), *reversed on other grounds*, 544 So. 2d 1026 (Fla. 1984). This Court should grant a summary judgment on Mr. Noon's claim for loss of services.

WHEREFORE, Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES, respectfully requests that this Court grant its Motion for Final Summary Judgment.

Respectfully submitted,

/s/ *Marc J. Schleier*

Christopher E. Knight
Fla. Bar No. 607363
Email: cknight@fowler-white.com
Marc J. Schleier
Fla. Bar No. 389064
Email: mschleier@fowler-white.com
Katina M. Hardee
Fla. Bar No. 16069
Email: khardee@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 789-9200
Facsimile: (305) 789-9201

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of September, 2019, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ *Marc J. Schleier*
Marc J. Schleier

**SERVICE LIST**

CASE NO. 18-cv-23181-Williams/Torres

Philip M. Gerson, Esq.
GERSON & SCHWARTZ, P.A.
1980 Coral Way
Miami, Florida 33145-2624
E-Mail: pgerson@gslawusa.com
filing@gslawusa.com
zdiaz@gslawusa.com
Telephone: (305) 371-6000
Facsimile: (305) 371-5749
RANDALL NOON , as Personal
Representative of the Estate of
KAREN NOON, deceased