UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

RANDALL NOON, as Personal Representative of the Estate of KAREN NOON, Deceased,

Plaintiff,

v.

CARNIVAL CORPORATION, a Panamanian Corporation d/b/a CARNIVAL CRUISE LINES,

Defendant.

CASE NO. 18-CV-23181-WILLIAMS/TORRES

**DEFENDANT CARNIVAL CORPORATION'S RESPONSE TO PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS, IN SUPPORT OF CARNIVAL CORPORATION'S MOTION FOR FINAL SUMMARY JUDGMENT**

Christopher E. Knight
Fla. Bar No. 607363
Email: cknight@fowler-white.com
Marc J. Schleier
Fla. Bar No. 389064
Email: mschleier@fowler-white.com
Katina M. Hardee
Fla. Bar No. 16069
Email: khardee@fowler-white.com

FOWLER WHITE BURNETT, P.A.
*Attorneys for Defendant Carnival Corporation*
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 789-9200
Facsimile: (305) 789-9201

Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES (hereinafter "CCL"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 56 and S.D. L. R. 56.1, hereby files its Response to Plaintiff's Statement of Additional Material Facts, in support of Carnival Corporation's Motion for Final Summary Judgment, and states:

49. Disputed in part. Juanita Noon testified that the availability of shipboard medical care was not a concern to Juanita Noon before beginning the subject voyage because the Noon family had taken a cruise before. Juanita Noon did not, as Plaintiff states, testify that she believed that she was already familiar with the availability of an onboard medical center. [D.E. 52 at 27:9-12].

51. Disputed in part. Melissa Noon testified that, at dinner on the evening of July 5, 2017, Karen Noon said that "she thought she was getting a cold" and that the Noon family did not suggest that she go to the medical center or see a doctor. Melissa Noon did not, as Plaintiff states, testify that the Noon family believed that Karen was merely "getting a cold." [D.E. 53 at 49:8-19].

57. Disputed in part. While Juanita Noon testified that the representative from the onboard guest services department from whom oxygen was requested did not suggest that the Noon family bring Karen to the medical center to be examined and "never asked" to see Karen, Plaintiff correctly stated in paragraph 56 that requests for assistive devices including oxygen concentrators are sent to the medical center for handling. At the medical center, Nurse Ursua advised Mr. Noon and Juanita Noon to bring Mrs. Noon to the medical center "to have a doctor's consultation for proper medical assessment and evaluation." [D.E. 51-1, p. 1; D.E. 56 at 28:10-21]. Mr. Noon and Juanita did not agree to bring Mrs. Noon to the medical center, stating that they only needed an oxygen concentrator for Mrs. Noon, and that this had happened before. [D.E. 51-1, p. 1; D.E. 56 at 28:22-29:5].

58. Disputed. When Randall Noon and Juanita Noon went to the ship's medical center to pick up the oxygen concentrator Juanita had requested, Nurse Ursua advised Mr. Noon and Juanita to bring Mrs. Noon to the medical center "to have a doctor's consultation for proper medical assessment and evaluation." [D.E. 51-1, p. 1; D.E. 56 at 28:10-21]. Mr. Noon and Juanita did not agree to bring Mrs. Noon to the medical center, stating that they only needed an oxygen concentrator for Mrs. Noon, and that this had happened before. [D.E. 51-1, p. 1; D.E. 56 at 28:22-29:5]. Mr. Noon and Juanita opted to borrow an oxygen concentrator and purchased a nasal cannula for Mrs. Noon. [D.E. 51-1, p. 1; D.E. 56 at 26:3-27:16]. Nurse Ursua advised Mr. Noon and Juanita that if they needed medical assistance, they should call 911. [D.E. 51-1, p. 2; D.E. 56 at 36:23-37:25].

59. Disputed in part. While Nurse Ursua was in the medical center when Juanita and Randall Noon came to pick up the oxygen concentrator they had requested, he did not testify that he was "on duty" at such time. [D.E. 56 at 23:24-24:20].

60. Disputed in part. CCL's corporate representative, Suzanne Vazquez, testified that CCL had a policy for disembarkation of sick or injured passengers, which included arranging for ambulance or fire rescue for transport to a local hospital and, that, in the port of Miami, emergency services could respond with an ambulance within five minutes of being called. However, in order for such disembarkation to occur, CCL would need to be asked by the passenger to arrange for same or otherwise be made aware of an emergent situation. [D.E. 57 at 87:9-12; 89:1-9; 90:7-21; 94:20-95:16].

62. Disputed in part. While Juanita Noon testified that the crewmember who spoke with her on the morning of July 8, 2017 to advise her that the oxygen concentrator was going to be picked up stated that CCL had to account for all their equipment [D.E. 52 at 77:2-5], the concentrator was not portable, but rather needed to be plugged into an electrical outlet in order to


FOWLER WHITE BURNETT P.A. • BRICKELL ARCH, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

be used. [*Id.* at 72:2-5; D.E. 57 at 100:22-25]. Further, the Noon family was aware that the concentrator was only being borrowed and needed to be returned. [D.E. 51-1, p. 1; D.E. 56 at 26:3-27:16; 27:25-28:1-5; D.E. 57 at 27:18-28:6]. The Noon family was also aware that there were no portable concentrators onboard the ship. [D.E. 52 at 77:6-8; 78:3-5; D.E. 57 at 99:9-10].

63. Disputed in part. While Juanita Noon testified that she requested a portable oxygen system and the crewmember with whom she was speaking advised her that "they don't have any that could leave the ship" and that CCL "didn't have anything available," (D.E. 52 at 77:2-12; 78:5-12; 79:2), the concentrator that Mrs. Noon was using was not portable, but rather needed to be plugged into an electrical outlet in order to be used. [*Id.* at 72:2-5; D.E. 57 at 100:22-25]. Further, the Noon family was aware that the concentrator was only being borrowed and needed to be returned. [D.E. 51-1, p. 1; D.E. 56 at 26:3-27:16; 27:25-28:1-5; D.E. 57 at 27:18-28:6]. The Noon family was also aware that there were no portable concentrators onboard the ship. [D.E. 52 at 77:6-8; 78:3-5; D.E. 57 at 99:9-10].

64. Disputed in part. While CCL's corporate representative, Suzanne Vazquez, testified that CCL does have portable oxygen tanks available in the medical center available onboard for use in an emergency situation, she testified that are not given to guests in a cabin because they can start a fire or explosion. [D.E. 57 at 63:18-25].

65. Disputed. As Plaintiff's Request for Admissions was served on July 10, 2019, the deadline for CCL to serve its responses under Rule 36(a)(3) of the Federal Rules of Civil Procedure would have been thirty (30) days later, or August 9, 2019. However, in its Order dated June 10, 2019, this Court ordered that "[t]he Parties shall complete all discovery" by July 31, 2019. [D.E. 38, p. 2]. Local Rule 26.1(d) states that "written discovery responses . . . must be served in sufficient time that the response is due on or before the discovery cutoff date." S.D. L. R. 26.1(d) (emphasis added). The rule further provides that "[f]ailure by the party seeking discovery to

comply with this paragraph obviates the need to respond or object to the discovery." *Id.* As CCL's responses to Plaintiff's Request for Admissions would have been due after the discovery cutoff date, CCL was not obligated to, and did not, respond to Plaintiff's request. Plaintiff has not otherwise cited to any evidence supporting the subjects of his Request for Admissions.

66. Disputed in part. Juanita Noon testified that she advised the crewmember who called to arrange for the pick-up of the oxygen concentrator that "I guess we're going to go to the ER as soon as we get off the ship." [D.E. 52 at 77:9-10].

67. Disputed in part. Melissa Noon testified that the Noon family's plan was, "[a]s soon as [they] got off the ship, to find a doctor to take her to, whether it's emergency room or whatever." [D.E. 53 at 82:21- 23].

71. Disputed in part. While Randall Noon testified that Karen Noon "had all the money" and he "had no clue" what she did with it, he clarified that the money in the household came from both of them. [D.E. 54 at 72:8-13]. He further testified that he had a full-time job as a factory worker at the time of Mrs. Noon's death and was earning $19.23 an hour. [*Id.* at 6:7-25; 8:14-18].

72. Disputed in part. While Randall Noon testified that Karen Noon cooked, cleaned, and did laundry, he did not testify that Mrs. Noon performed "all" such services for the Noon household. [D.E. 54 at 72:13-25].

74. Disputed in part. While Randall Noon testified that, at the end of 2018, he "had to" sell the Noon family home, he did not testify that he did so based upon a financial inability to pay the $810 mortgage on the house. [D.E. 54 at 18:6-19:5; 80:16-20]. Rather, Mr. Noon moved in with his girlfriend, Stacy Patten, and paid the rent at her house. [*Id.* at 5:10-6:1; 80:14-15].

Respectfully submitted,

/s/ *Marc J. Schleier*



FOWLER WHITE BURNETT P.A. • BRICKELL ARCH, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

Christopher E. Knight
Fla. Bar No. 607363
E-mail: cknight@fowler-white.com
Marc J. Schleier
Fla. Bar No. 389064
E-mail: mschleier@fowler-white.com
Katina M. Hardee
Fla. Bar No. 16069
E-mail: khardee@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 789-9200
Facsimile: (305) 789-9201

**CERTIFICATE OF SERVICE**

I hereby certify that on September 13, 2019, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Marc J. Schleier*
Marc J. Schleier

**SERVICE LIST**

CASE NO. 18-cv-23181-WILLIAMS/TORRES

Philip M Gerson, Esq.
GERSON & SCHWARTZ, P.A.
1980 Coral Way
Miami, Florida 33145
E-Mail: pgerson@gslawusa.com; zdiaz@gslawusa.com
Telephone: (305) 371-6000