UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| RANDALL NOON , as Personal Representative of the Estate of KAREN NOON, deceased,<br><br>Plaintiff,<br><br>v.<br><br>CARNIVAL CORPORATION, a Panamanian Corporation d/b/a CARNIVAL CRUISE LINES,<br><br>Defendant. | CASE NO. 18-cv-23181-Williams/Torres |

**DEFENDANT CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES' OMNIBUS MOTION IN LIMINE, WITH SUPPORTING MEMORANDUM OF LAW**

Defendant CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES (hereinafter "CARNIVAL"), by and through its undersigned counsel, respectfully files this Omnibus Motion in Limine, with Supporting Memorandum of Law. As grounds therefor, CARNIVAL states:

## I. FACTS AND RELIEF SOUGHT

1. This is a wrongful death action arising out of alleged negligence on the part of medical and non-medical personnel in their interaction with Karen Noon, a passenger aboard the CARNIVAL cruise ship *Sensation* from July 3, 2017 to July 8, 2017. Mrs. Noon, who was a smoker and had chronic obstructive pulmonary disease ("COPD") for approximately thirty (30) years, began experiencing shortness of breath and respiratory problems during the cruise on July 5, 2017, but did not go to the medical center for treatment. Mrs. Noon's condition worsened on July 6th and 7th. As Mrs. Noon still did not want to go to the medical center, her husband, Plaintiff Mr. Randall Noon, and daughter, Juanita Noon, went to the medical center on July 7th to pick up

an oxygen concentrator for Mrs. Noon to use for the remainder of the cruise. Mrs. Noon used the concentrator until the morning of July 8th without incident.

2. On the morning of July 8, 2017, after the ship had reached its destination port of Miami, Mrs. Noon was advised that the concentrator would be picked back up by porters.[1] Mrs. Noon was not in respiratory distress when the porters arrived, nor did the porters observe Mrs. Noon or have any interaction with the Noon family. No CARNIVAL crewmember learned that Mrs. Noon was in distress until approximately 8:29 a.m. on July 8th, when the guest services representative closing out Mrs. Noon's onboard account allegedly commented that she did not look well. The representative immediately made arrangements for Mrs. Noon to be assisted off the ship in a wheelchair by a CARNIVAL crewmember. Neither Mrs. Noon nor anyone in her family requested that CARNIVAL or one of its crewmembers call 911 or any emergency transportation service or take her to the ship's medical center for treatment. Mrs. Noon disembarked at approximately 8:42 a.m., thirteen (13) minutes later. Mrs. Noon went into cardiopulmonary arrest soon after she disembarked, and died the next day.

3. In his Second Amended Complaint, Plaintiff Mr. Randall Noon asserted the following claims against CARNIVAL: (1) vicarious liability for negligent breach of nonmedical crewmember duty to provide aid or assistance to sick or injured passengers (Count I); (2) negligent breach of assumed or undertaken duty to obtain medical care – nonmedical crew (Count II); (3) negligent breach of assumed or undertaken duty to obtain medical care – medical crew – actual authority (Count III); and (4) negligent breach of assumed or undertaken duty to obtain medical care – medical crew – apparent authority. Plaintiff specifically limited the allegations of

[1] Mrs. Noon could not have disembarked the ship with the oxygen concentrator because it required an electrical outlet. Incidentally, CARNIVAL did not have a portable concentrator on the ship.

negligence against CARNIVAL to July 8, 2017, after the *Sensation* reached port in Miami, Florida.

4. Defendant CARNIVAL denied all material allegations and asserted numerous affirmative defenses, including that the alleged injuries of Plaintiff's decedent were the result of a pre-existing injury which was not aggravated by the alleged incident. [D.E. 67].

5. CARNIVAL *first* seeks to Preclude and Exclude All Evidence, Testimony and Argument at Trial Concerning the Gross Amounts Billed for the Medical Care of Plaintiff's Decedent. CARNIVAL reasonably anticipates that Plaintiff will attempt to introduce evidence, testimony and/or argument at trial regarding the gross amounts billed for Mrs. Noon's medical care and, in particular, the billed amounts for medical services that Plaintiff and Mrs. Noon have ***not*** paid and will ***never*** pay.

6. Plaintiff's expected efforts to "board" the gross amounts of Mrs. Noon's medical bills are improper, must be halted and all evidence, testimony and argument with regard to the gross amounts of Mrs. Noon's medical expenses should be precluded and excluded at trial.

7. CARNIVAL *also* seeks to Preclude and Exclude All Evidence, Testimony and Argument at Trial of Corporate/Shareholder Financial Condition/Wealth and the Economic Disparity Between the Parties. CARNIVAL reasonably believes that the Plaintiff may attempt to introduce evidence, testimony and/or argument at trial regarding the relative financial wealth of the parties and, in particular, the financial condition/value/wealth of CARNIVAL and its shareholders versus that of Plaintiff.

8. Plaintiff's anticipated efforts are improper and must be halted. Accordingly, all evidence, testimony and argument with regard to CARNIVAL's and its shareholders' financial well-being, assets, wealth and value, as well as the economic disparity between the parties, should be precluded and excluded at trial.

## MEMORANDUM OF LAW

### I. Preclude and Exclude All Evidence, Testimony and Argument at Trial Concerning the Gross Amounts Billed for the Medical Care of Plaintiff's Decedent.

CARNIVAL recognizes that general maritime law's collateral source rule "bars a tortfeasor 'from mitigating damages by setting off compensation received by the [victim] from an independent source.' *Bourque v. Diamond Drilling Co.*, 623 F.2d 531, 354 (5th Cir. 1980) (quoting *Haughton v. Blackships, Inc.*, 462 F.2d 788, 790 (5th Cir. 1972))." Coleman v. Celebrity Cruises, Inc., 16-Civ-25025-Lenard (S.D. Fla. March 29, 2017).[2] Nevertheless, CARNIVAL submits that the jury is entitled to learn the amounts actually paid should this matter proceed to trial, instead of the amounts Plaintiff is ***not*** responsible for and will ***never*** pay. Presenting phantom damages artificially inflates the actual damages suffered by Plaintiff. CARNIVAL does not intend to reference insurance at trial, but merely seeks to limit the admissibility of Plaintiff's economic damages to the medical expenses that were reasonable and necessary, and actually incurred in order to prevent a windfall to Plaintiff.

Less than six months ago, this Court in Underwood v. NCL (Bahamas) Ltd., No. 17-24492-CV-WILLIAMS/TORRES, 2019 WL 1559026 (S.D. Fla. Apr. 10, 2019), held that "the collateral source rule [did] not preclude Norwegian from introducing evidence of the amount *paid* by Plaintiff for her alleged medical expenses, as opposed to the amount *billed*." Id. at *3-4 (emphasis in original). The Underwood court found the analysis in Gharfeh v. Carnival Corp., No. 1:17-cv-20499-Martinez/Goodman, D.E. 122 at pp. 12-18 (S.D. Fla. Jan. 14, 2019), compelling.

[2] Furthermore, to quote the Fifth Circuit: "Properly understood, . . . the '[collateral source] rule also prevents tortfeasors from paying twice for the same injury – a result that would achieve both overdeterrence and overcompensation.'" Johnson v. Cenac Towing, Inc., 544 F.3d 296, 304 (5th Cir. 2008) (citation omitted).

Magistrate Judge Goodman in Gharfeh adopted this District's majority view and denied plaintiff's motion in limine to prohibit evidence of medical discounts and write-offs.

> Here, [plaintiff] ***may not introduce all of his medical bills***. Instead, he ***may introduce only the discounted bills***. Introducing all the medical bills without also providing simultaneous evidence of the discounts or write-offs would be unfairly prejudicial and would provide a skewed view of what constitutes reasonable medical expenses. ***The jury needs to be advised of the discounts or write-offs in order to make a fair assessment of reasonable medical expenses***.

Id. at p. 18 (emphasis added).

A little over one year earlier, Judge Ungaro and Judge Moreno ruled consistent with the Southern District's majority rule. *See* Marsh v. Celebrity Cruises, Inc., No. 1:17-cv-21097-UU, D.E. 100 at p. 3 (S.D. Fla. Dec. 18, 2017) (granting Celebrity's motion in limine and precluding "evidence at trial of the gross amount billed by healthcare providers, rather than the amount actually paid"); Geiger v. Carnival Corp., No. 1:16-cv-24753-FAM, D.E. 106 at p. 2 (S.D. Fla. Dec. 5, 2017) (denying plaintiff's motion in limine to preclude evidence concerning amounts written off for medical care).

Judge Sietz similarly held that the plaintiff in Diczok v. Celebrity Cruises, Inc., No. 16-21011-CIV-Seitz/Turnoff, 2017 WL 3206327, at *3 (S.D. Fla. July 26, 2017), could ***not*** recover the full unreduced amount of medical bills as economic damages and rejected plaintiff's argument that such a restriction would violate the collateral source rule.

> [T]he collateral source doctrine does not govern the amount of medical expenses a plaintiff may claim in damages. ***An abundance of case law in this District holds that, under general maritime law, recoverable medical expenses are limited those actually paid by the plaintiff.*** *See, e.g., Szczurko v. Celebrity Cruises, Inc.*, Case No. 1:15-20592-CIV-UU [DE 41]; *Sampson v. Carnival Corporation*, Case No. 1:15-

> 24339-CIV-JLK [DE 47]. Therefore, Celebrity's motion is GRANTED. To the extent Diczok contends in his own motion that he is entitled to recover the full amount of billed medical expenses, his motion is DENIED.

Id. (emphasis added).

Over three years ago, Judge King in Frauenthal v. Oceania Cruises, Inc., No. 15-21517-CIV-KING, 2016 WL 2962897 (S.D. Fla. May 19, 2016), denied the plaintiff's motion in limine to exclude evidence or argument of collateral sources and any reductions of her medical bills which were the result of insurance contracts, reasoning as follows:

> With respect to collateral sources, ***evidence regarding payments made by collateral sources*** is generally inadmissible under maritime law, however it ***may become admissible as impeachment evidence under the right circumstances***. ***With respect to evidence of reductions to medical bills, the reasonable and customary cost of care for the medical services received by Plaintiff are the amounts which were actually paid by her or by a collateral source on her behalf, and evidence relating to other amounts which were written off are not relevant to this action. As such, if Plaintiff introduces evidence of medical bills which include amounts that were not actually paid by Plaintiff or by a collateral source, Defendant cannot be precluded from introducing evidence of reductions.***

Id. at *1 (emphasis added).

Judge Lenard in Brown v. NCL (Bahamas) Ltd., No. 15-21732-CIV-Lenard/Goodman, 2016 WL 8730145, at *5 (S.D. Fla. Oct. 13, 2016), granted NCL's motion in limine to exclude evidence of medical expenses billed as opposed to amounts actually paid.[3] In support thereof, the

---

[3] The plaintiff in Brown did ***not*** oppose, and implicitly agreed, with the defense's argument that plaintiff " 'should not be allowed to introduce evidence of medical bills that do not represent the amounts actually paid by the Plaintiff for her care [,]' regardless of who paid them." Id. at *5.

Brown court relied on Kellner v. NCL, Case No. 15-23002-Civ-Altonaga, D.E. 59 (S.D. Fla. May 20, 2016). In Kellner, Judge Altonaga ordered that the plaintiff "***may only introduce medical bills regarding amounts actually paid***. Plaintiff's counsel can inform the jury that the doctor accepted only a percentage of the original medical bill." Kellner, Case No. 15-23002-Civ-Altonaga, D.E. 59 (emphasis added). Accordingly, Judge Lenard in Brown limited "evidence of Plaintiff's damages—insofar as they are determined by medical expenses—to the ***amounts actually paid***, regardless of the source of payment." Brown, 2016 WL 8730145, at *5 (emphasis added).

Almost four years ago, Judge Ungaro in Szczurko v. Celebrity Cruises, Inc., No. 1:15-cv-20592-UU, D.E. 41 at pp. 2-3 (S.D. Fla. Dec. 30, 2015), also "agree[d] with the abundant case law within this District finding that Plaintiff is ***precluded from admitting evidence of the amount billed*** by healthcare providers, rather than the amount actually paid." (emphasis added). In that court's absolutely correct view, "[a]llowing Plaintiff to introduce the amount billed by the healthcare providers, rather than the amount paid, would result in a windfall to Plaintiff, who never actually received such a benefit." Id.

Other decisions from this District supporting CARNIVAL's Motion seeking to limit the admission of medical expenses evidence to ***only*** the amounts actually paid include: *E.g.*, Chimine v. Royal Caribbean Cruises, Ltd., No. 16-23775-CV-Moreno/Turnoff, 2017 WL 8809632, at *2 (S.D. Fla. Nov. 17, 2017) (granting RCCL's motion to preclude plaintiff from presenting evidence of "written off" medical charges; "On this issue, the case of Sampson v. Carnival Corporation, No. 15-cv-24339-JLK is instructive. In that case, Carnival prevailed on a similar motion in limine. There, Magistrate Judge Torres reasoned that allowing Plaintiff to introduce evidence as to the amounts *billed by* the healthcare providers, as opposed to the amounts *paid*, ***would result in a windfall to Plaintiff, who never actually received such a benefit***. Sampson, No. 15-cv-24339-

JLK at (ECF No. 47). ***Courts in this District have repeatedly reached the same conclusion on this issue***.") (emphasis added); Galarza v. Carnival Corp., No. 15-24380-CIV-Altonaga/O'Sullivan, D.E. 139 at p. 1 (S.D. Fla. Sept. 2, 2016) (denying plaintiff's motion in limine to exclude evidence regarding medical bills that were reduced or forgiven as part of the contracts between her insurer and her medical providers); Tercero v. Carnival Corp., No. 1:15-cv-21583-CIV-KING, D.E. 19 at p. 1 (S.D. Fla. Jan. 7, 2016) (granting Carnival's motion in limine to preclude plaintiff from presenting or claiming the medical charges written off by her healthcare providers; the court found that "the reasonable and customary cost of care for the medical services received by Plaintiff are the amounts which were actually paid by her or by a collateral source on her behalf, and evidence relating to other amounts which were written off are not relevant to this action."); Nappi v. Carnival Corp., No. 13-21659-CIV-King, D.E. 51 at p. 2 (S.D. Fla. Oct. 22, 2014) ("Upon consideration, the Court finds that ***the reasonable and customary cost of care for the medical services received by Plaintiff are the amounts which were actually paid*** by him or by a collateral source on his behalf, ***and evidence relating to other amounts which were written off are not relevant to this action***.") (emphasis added); Smith v. Royal Caribbean Cruises, Ltd., No. 13-20697-CIV-COOKE, 2014 WL 5312534, at *3 (S.D. Fla. Oct. 10, 2014) ("Defendant's Motion in *Limine* to limit the introduction of medical expenses, as evidence of damages, to the amount that plaintiff actually paid and exclude any reference to any other amounts billed or paid by collateral sources is GRANTED."); Gaskin v. Carnival Corp., No. 1:13-cv-22911-KMM, D.E. 85 (S.D. Fla. Oct. 8, 2014) (denying plaintiff's motion in limine regarding collateral sources "to the extent that Plaintiff seeks to admit evidence of the amount billed by healthcare providers, rather than the amount actually paid"; "To allow Plaintiff to introduce amounts billed by healthcare providers, rather than the amount actually paid, would result in a windfall to Plaintiff, who never

actually received a collateral source benefit for the amount billed."); *see also* Jarvis v. Carnival Corp., No. 16-cv-23727-MORENO/TURNOFF, D.E. 102 at p. 4 (S.D. Fla. July 31, 2017) (Turnoff, M.J.) (recommending that Carnival's motion in limine to preclude evidence of medical costs never incurred be granted and stating that, while the collateral source rule prohibits the introduction of evidence offered to show that a plaintiff has already been compensated for his/her injuries, "that does not translate into leave to introduce amounts *billed* by health care providers (e.g. doctors, hospitals, etc.), as opposed to the amounts that were *actually paid* out to them") (emphasis in original), *adopted by*, D.E. 132 (S.D. Fla. Aug. 31, 2017) (Moreno, J.).

As the numerous cases cited herein recognize, only the amounts of medical bills that represent the amounts actually ***paid*** by plaintiff or a third party for plaintiff's medical care is a collateral source.[4] Such cases correctly explain that no collateral source benefit is, in reality, conferred for the amount billed but not paid and, thus, a plaintiff would obtain an improper windfall should he/she be allowed to recover damages for such amount. *See also* Freeport Sulphur Co. v. S/S Hermosa, 526 F.2d 300, 304 (5th Cir. 1976) (noting that the purpose of compensatory damages in maritime tort cases "is to place the injured person as nearly as possibl[e] in the condition he would have occupied if the wrong had not occurred").

Accordingly, CARNIVAL submits that the jury should only be permitted to learn the ***amounts actually paid***, instead of the gross amount billed, which includes amounts for which no party is responsible and will ***never*** pay. The presentation of evidence of the full original amount of Mrs. Noon's medical bills does nothing but improperly suggest to the jury that Plaintiff has

---

[4] The court in Gharfeh recognized that this appears to be the majority view. 2019 WL 186864, at *6-7. While some courts in this District have reached a different conclusion, CARNIVAL submits that the position taken in Gharfeh and the other cases cited in this Motion is better-reasoned and provides for a fairer result.

more damages than were actually incurred. Again, CARNIVAL does not seek credit for any benefit or any amount that has actually been paid for Mrs. Noon's medical care by Plaintiff, an insurer or another third party. Rather, consistent with the legal authority set forth herein, evidence of the full unreduced amount of medical bills should ***not*** be admitted, as it would only serve to artificially inflate the actual damages sustained by Plaintiff and give Plaintiff an improper windfall.

**II. Preclude and Exclude All Evidence, Testimony and Argument at Trial of Corporate/Shareholder Financial Condition/Wealth and the Economic Disparity Between the Parties.**

Evidence, testimony and argument of CARNIVAL's and its Shareholders' net worth and financial condition is irrelevant, and any claimed relevance is outweighed by the dangers of unfair prejudice, confusion of the issues and misleading the jury. Exclusion of evidence, testimony and argument of CARNIVAL's and its Shareholders' overall financial condition is an appropriate and necessary procedural safeguard in order to protect CARNIVAL and its Shareholders against an excessive and arbitrary damages award. *See* Honda Motor Co. v. Oberg, 512 U.S. 415, 432 (1994) ("evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses, particularly those with strong local presence").

"The general rule is that, during trial, 'no reference should be made to the wealth or poverty of a party, nor should the financial status of one party be contrasted with the other's.'" Brough v. Imperial Sterling Ltd., 297 F.3d 1172, 1178 (11th Cir. 2002) (citation omitted); *see* Kellner v. NCL, Case No. 15-23002-Civ-Altonaga, D.E. 59, 2016 WL 8677428, at *1 (S.D. Fla. May 20, 2016) (granting defendant's motion in limine and ruling that "[t]he parties may not refer to the financial resources of the Plaintiff or Defendant"); Rosario v. Labor Ready Se., Inc., No. 14-21496-CIV, 2015 WL 12086100, at *5 (S.D. Fla. Aug. 31, 2015) (granting motion to exclude any references to or evidence of the financial standing or wealth of the parties); Mowbray v. Carnival Corp., No. 08-20931-CIV-Altonaga/Brown, 2009 WL 10667070, at *6 (S.D. Fla. Apr. 13, 2009)

(precluding evidence of plaintiff's financial resources and the disparity of resources between plaintiff and defendants); Eli Research LLC v. Must Have Info Inc., No. 2:13-cv-695, 2015 WL 6501070, at *2 (M.D. Fla. Oct. 22, 2015) (granting motions in limine to exclude any reference to the wealth or poverty of the parties). "The erroneous admission of such evidence can constitute reversible error." Brough, 297 F.3d at 1178.

Additionally, attempts to arouse the sympathy of the jury by pointing out the economic disparity between a plaintiff and a defendant have always also been condemned by Florida's state courts. For example, in Sossa v. Newman, 647 So. 2d 1018 (Fla. 4th DCA 1994), the reviewing court held:

> ***In Florida, the general rule is that during trial no reference should be made to the wealth or poverty of a party nor should the financial status of one party be contrasted with the other's***. The reason the courts are so adamant about this rule is that jurors have a tendency to favor the poor as against the rich and, ***if provoked by such inflammatory evidence, the jury is likely to apply the deep pocket theory of liability***.

Id. at 1020 (emphasis added).

The anticipated evidence and references to CARNIVAL's financial well-being, or any testimony and comments to this matter being a case of "David vs. Goliath," are inappropriate and should not be permitted. *See* Tampa Transit Lines v. Cobin, 62 So. 2d 10 (Fla. 1953) (references to financial wealth of parties is prejudicial); *see also* Linzy v. Rayburn, 58 So. 3d 424 (Fla. 1st DCA 2011) (error to discuss financial status of either party or the defendant's ability to pay any damages). The inherent danger posed by the introduction of such evidence or remarks is that "the jury will be influenced by the wealth or power of one party or another or sympathy for a party's weakness, poverty or misery." Battlemento v. Dove Fountain, Inc., 593 So. 2d 234, 242 (Fla. 5th DCA 1991).

Numerous Florida state court cases further hold that a new trial is required when the jury is told to consider a defendant's superior economic resources. *See, e.g.,* Tampa Transit Lines, 62 So. 2d at 12 (statement that defendant was spending large sums of money to defend case was "highly prejudicial"; improper remarks in closing required new trial); Pippin v. Latosynski, 622 So. 2d 566, 569 (Fla. 1st DCA 1993) (new trial warranted by improper remarks in closing argument; court found reference to money spent on defense a "blatant impropriety"); City Provisioners, Inc. v. Anderson, 578 So. 2d 855, 856 (Fla. 5th DCA 1991) (new trial required where plaintiff's counsel made improper statements in closing argument and "the dominant theme [was] sympathy for the extreme poverty and lack of resources of the plaintiff and the injustice foisted upon the plaintiff by the cruel and overreaching conduct of the defendant in defending the lawsuit"); Borden, Inc. v. Young, 479 So. 2d 850, 851 (Fla. 3d DCA 1985) (improper closing argument which included references to defendants' resources and assets required new trial); Pierce v. Smith, 301 So. 2d 805, 808 (Fla. 2d DCA 1974) (improper appeal to sympathy predicated on economic disparity constituted reversible error).

In sum, any evidence of or reference by the Plaintiff (or his witnesses) to the financial positions of the parties is wholly irrelevant to the instant action because it does ***not*** tend to prove or disprove any disputed fact. Such evidence, testimony and argument will only serve to cloud the issues in this action. Therefore, any evidence, comment and remark regarding a party's wealth or poverty is highly irrelevant and inadmissible under Rules 401 and 403 of the Federal Rules of Evidence.

WHEREFORE, Defendant CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES respectfully requests the Court to ***grant*** Defendant's Omnibus Motion in Limine and (a) limit the admission of evidence regarding decedent's medical expenses to only the amounts

actually paid; and, (b) preclude and exclude all evidence, testimony and argument regarding Defendant CARNIVAL's and its Shareholders' financial condition/wealth and the economic disparity between Plaintiff and Defendant, as specifically addressed and discussed above.

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)**

In accordance with Local Rule 7.1(a)(3), undersigned counsel for the movant has conferred with counsel for the Plaintiff, Philip M. Gerson, Esq., in a good faith effort to resolve the issues raised in this Omnibus Motion in Limine. Counsel for Plaintiff opposes all relief requested in the Omnibus Motion in Limine.

Respectfully submitted,

*/s/ Katina M. Hardee*

CHRISTOPHER E. KNIGHT
Fla. Bar No. 607363
Email: cknight@fowler-white.com
ESTHER E. GALICIA
Fla. Bar No. 510459
Email: egalicia@fowler-white.com
KATINA M. HARDEE
Fla. Bar No. 16069
Email: khardee@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 789-9200
Facsimile: (305) 789-9201

*Attorneys for Defendant Carnival Corporation d/b/a Carnival Cruise Lines*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of October, 2019, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ *Katina M. Hardee*
KATINA M. HARDEE
Fla. Bar No. 16069

**SERVICE LIST**

CASE NO. 18-cv-23181-Williams/Torres

Philip M. Gerson, Esq.
GERSON & SCHWARTZ, P.A.
1980 Coral Way
Miami, Florida 33145-2624
E-Mail: pgerson@gslawusa.com
filing@gslawusa.com
zdiaz@gslawusa.com
Telephone: (305) 371-6000
Facsimile: (305) 371-5749
*Attorneys for Plaintiff RANDALL NOON, as Personal Representative of the Estate of KAREN NOON, deceased*