UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

RANDALL NOON , as Personal Representative of the Estate of KAREN NOON, deceased,

Plaintiffs,

v.

CASE NO. 18-cv-23181-Williams/Torres

CARNIVAL CORPORATION, a Panamanian Corporation d/b/a CARNIVAL CRUISE LINES,

Defendant.

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S OMNIBUS MOTION IN LIMINE**

Defendant CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES (hereinafter "CARNIVAL"), by and through its undersigned counsel, files this Response in Opposition to Plaintiff's Omnibus Motion in Limine and states:

## I. DR. HYZY'S OPINIONS REGARDING THE NON-EXISTENCE OF A PHYSICIAN-PATIENT OR OTHER MEDICAL RELATIONSHIP ARE RELEVANT TO THE PREDICATE ESSENTIAL ELEMENT OF PLAINTIFF'S MEDICAL NEGLIGENCE CLAIM, WILL ASSIST THE JURY AND ARE THUS ADMISSIBLE.

1. Dr. Robert C. Hyzy, M.D., is CARNIVAL's medical expert who specializes and is triple board-certified in Internal Medicine, Pulmonary Disease, and Critical Care Medicine.[1] [D.E. 39, p. 1].

2. Based on Dr. Hyzy's experience as a medical doctor for over 37 years and the undisputed fact that "[n]o physician patient encounter" occurred while Mrs. Karen Noon was on

[1] Plaintiff has chosen not to depose Dr. Hyzy.

CARNIVAL's *Sensation*, Dr. Hyzy opined that "[a]t no time did [Mrs.] Noon enter into a medical relationship with any qualified medical provider while onboard ship during the July 2017 cruise." [D.E. 69-1, p. 3].

3. The admissibility of Dr. Hyzy's said opinion is, contrary to Plaintiff's contention, authorized by Federal Rule of Evidence 704. Rule 704 provides, in pertinent part, that "[a]n opinion is ***not*** objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a) (emphasis added).

4. Importantly, Rule 704 has been said to have "abolishe[d] the per se rule against testimony regarding ultimate issues of fact." United States v. Milton, 555 F.2d 1198, 1203 (5th Cir. 1977) (upholding admission of expert testimony interpreting transcript and drawing from expert's experience).[2]

5. Thus, the "mere fact that an expert's conclusion trenches upon a jury issue does ***not*** compel its exclusion." Id. (emphasis added). As the Milton court further observed:

> The provinces of judge, jury and expert witness are not categorically immutable and precise. ***Courts must accommodate to the expertise that the jury must receive from those who possess it, lest the jury flounder in confusion begotten by the arcane***.

Id. at 1204-1205 (emphasis added).

6. Several years later, the Eleventh Circuit held that "[t]o be admissible under rule 704, an expert's opinion on an ultimate issue must be helpful to the jury and also must be based on adequately explored legal criteria." Hanson v. Ralph Stanley Waller, LVL Inc., 888 F.2d 806, 812 (11th Cir. 1989). The Hanson court thus found that an expert who testified that a driver did

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

not do anything that contributed to his accident – in other words, the driver "did nothing wrong" – was a proper opinion on an ultimate issue under Rule 704. Hanson, 888 F.2d at 810.

7. With regard to the "issues" raised by Plaintiff's medical negligence claims, CARNIVAL submits that in order to maintain a cause of action against a physician (or other health care provider), privity must exist between the plaintiff and the physician, and the physician must have owed, and breached, a duty to the plaintiff. *See* Pate v. Threlkel, 661 So. 2d 278, 281 (Fla. 1995); Werner v. Varner, Stafford, and Seaman, P.A., 659 So. 2d 1308, 1309 (Fla. 4th DCA 1995); Boynton v. Burglass, 590 So. 2d 446, 449-50 (Fla. 3d DCA 1991); Joseph v. Shafey, 580 So. 2d 160 (Fla. 3d DCA 1990), *rev. denied*, 592 So. 2d 681 (Fla. 1981). The general rule is that, **in the absence of a physician-patient or medical relationship** between a plaintiff and a health care provider, **privity does not exist and no duty is created**. *See* Joseph, 580 So. 2d at 160; Vause v. Bay Med. Ctr., 687 So. 2d 258, 263 (Fla. 1st DCA 1996). A physician-patient or medical relationship is therefore essential to an action based on alleged medical negligence.

8. **Here**, Plaintiff's medical negligence claims (Counts III and IV) are undeniably 100% dependent on the existence of a physician-patient or medical relationship, which there was none.

9. CARNIVAL submits that the record evidence and testimony of Nurse Rosel Ursua, Plaintiff Randall Noon, and his daughters Melissa Lenard Noon and Juanita Noon, establish there is no medical relationship. See Deposition of Melissa Lenard Noon at 57:3-15, 62:6-13, 65:10-66:1, 72:7-15, 74:24-75:1 [D.E. 53]; see also Deposition of Randall Noon at 48:19-25, 47:23-25 [D.E. 54]; Deposition of Juanita Noon at 67:20-68:9 [D.E. 52]; and Deposition of Rosel Ursua at 24:4-13, 28:22-29:5 [D.E. 56]. If this issue survives CARNIVAL's motion for summary judgment, who better than a medical doctor with almost 40 years of experience and who has reviewed all

material records – i.e. Dr. Hyzy – to provide opinion trial testimony that will assist the jury in determining whether the requisite physician-patient or medical relationship existed in this case.

10. Finally, Plaintiff's reliance on Rogers v. Hierholzer, No. SA-16-CV-01171-FB, 2018 WL 6933282 (W.D. Tex. Dec. 28, 2018), is misplaced. Rogers is factually distinguishable because the plaintiff in Rogers was a prison inmate who did not need "to offer evidence of the existence of a physician-patient relationship in order for him to establish the elements of his claim" for violation of his Eight Amendment right to adequate medical care. Id. at *4. "The existence of a physician-patient relationship is not an element of a deliberate indifference claim, and testimony on this point could potentially confuse the jury by presenting evidence not relevant to the underlying dispute." Id. at *3.[3] Therefore, unlike the instant case, the existence of a physician-patient relationship in Rogers was absolutely irrelevant and expert testimony addressing whether such a relationship existed was unnecessary and would have confused the jury. Id. at *3-4.

## II. MRS. NOON'S "MEDICAL HISTORY" IS HIGHLY RELEVANT TO HER LIFE EXPECTANCY *AND* THE AMOUNT OF PLAINTIFF'S RECOVERABLE DAMAGES, IF ANY.

11. Contrary to Plaintiff's efforts to hide the truth about Mrs. Noon's extensive medical history, Mrs. Noon's numerous health conditions, (including, but not limited to, her obesity, bronchitis, asthma, high cholesterol, Type 2 Diabetes, and migraine headaches), are extremely probative of and relevant to what was Mrs. Noon's life expectancy at the time she died.[4] *See* McQueen v. Jersani, 909 So. 2d 491, 496 (Fla. 5th DCA 2005) ("The trier of fact must be given

---

[3] In fact, the Rogers court initially observed that "[a]s this case involves an alleged violation of Rogers's Eight Amendment right to adequate medical care, ***rather than medical negligence on the part of Dr. Smith***, it is unclear to the undersigned why at trial Dr. Mathis's opinion with respect to the existence of a physician-patient relationship would be relevant or assist the trier of fact." Id. (emphasis added).

[4] Plaintiff correctly concedes that Mrs. Noon's history of smoking and COPD is relevant to the liability and damages issues in this case. [D.E. 69, p. 4].

some evidence from which it can intelligently consider the decedent's life expectancy. Clearly this may be in the form of expert testimony from a physician who is familiar with the decedent's medical condition prior to death.").[5] In obvious recognition thereof, Plaintiff **failed** to provide his medical expert Robert J. Myerburg, M.D., with a copy of Mrs. Noon's "prior medical records." See Deposition of Robert J. Myerburg, M.D. [D.E. 55, p.38].

12. A close examination of Mrs. Noon's medical records from Sparrow Medical Group spanning over the last 30 years of her life establishes that she suffered from high cholesterol, obesity, bronchitis, Type 2 diabetes, migraines, COPD with asthma with chronic exacerbations and tobacco abuse, all of which have an impact on Mrs. Noon's life expectancy.[6]

13. Indeed, Mrs. Noon was even counseled at length by her doctor at Sparrow Medical Group that she needed to take her medications as prescribed to prevent organ damage.[7]

14. As such, CARNIVAL should be allowed to challenge Dr. Myerburg's opinions through cross examination in order to demonstrate that same are baseless and pure speculation, as he did not analyze Mrs. Noon's complete medical history and take her numerous health conditions into consideration in determining her life expectancy.[8]

15. Mrs. Noon's life expectancy is, in turn, undeniably pertinent to Plaintiff's claim for

---

[5] *See also* City of Tampa v. Johnson, 114 So. 2d 807 (Fla. 2d DCA 1959) (mortality tables constitute one of many factors which may be considered in estimating life expectancy).

[6] CARNIVAL will submit decedent's medical records to the Court for an in camera inspection, upon request.

[7] CARNIVAL will submit the deposition of Dr. Steven Edmondson to the Court for an in camera inspection upon request.

[8] CARNIVAL will submit decedent's medical records to the Court for an in camera inspection, upon request.

wrongful death damages (as discussed in greater below).[9] *See, e.g.,* McQueen, 909 So. 2d at 495 ("[I]nsofar as the measure of damages is concerned and the duration of the damages is calculated based on the joint life expectancies of the surviving spouse and the deceased spouse.").

16. Section 768.21(1) of the Florida Statutes authorizes the recovery of future loss of support and services damages in wrongful death actions. That subsection further specifically states that "[i]n computing the duration of future losses, the ***joint life expectancies*** of the survivor and the decedent." §768.21(1), Fla. Stat. (2017) (emphasis added). **Here**, Mrs. Noon's life expectancy is accordingly relevant to Plaintiff's claim for future loss of support and services damages.

17. Additionally, Section 768.21(6)(a) allows the recovery of damages for "loss of the

---

[9] Paragraph 31 of Plaintiff's Second Amended Complaint alleges as follows:

> 31. As a direct and proximate result of the injury to and death of KAREN NOON, her surviving spouse RANDALL NOON has sustained damages pursuant to the Florida Wrongful Death law, Florida Statutes Section 768.21, applicable since the death of KAREN NOON occurred in port in Florida. He has lost the medical and funeral bills paid or incurred by him, ***the spousal companionship*** provided to him by KAREN NOON, ***her earnings, earning capacity and financial support, and the value of household and other services provided by her***. Furthermore, he has incurred ***mental pain and suffering*** as a result of Mrs. NOON's injury and death. These damages are permanent and continuing in their nature and will continue to be incurred by RANDALL NOON throughout the remainder of his life.

[D.E. 24, p. 7 - ¶ 31 (emphasis added)]. Paragraph 33 states:

> 33. As a further direct and proximate result of the injury to and death of KAREN NOON, the Estate of KAREN NOON has sustained damages pursuant to the Florida Wrongful Death law, Florida Statutes Section 768.21. The estate has lost the amount of medical and burial/funeral bills paid or incurred by it and ***net accumulations that would have been assets of the Estate if not for her death***.

[D.E. 24, p. 8 - ¶ 33 (emphasis added)].

prospective net accumulations of an estate" under expressly delineated circumstances. §768.21(6)(a), Fla. Stat. (2017). "Net accumulations" are defined as "the part of the decedent's expected net business or salary income, including pension benefits, that the decedent probably would have retained as savings and left as part of her or his estate ***if the decedent had lived her or his normal life expectancy***." §768.18(5), Fla. Stat. (2017) (emphasis added). **Here**, Mrs. Noon's life expectancy is thus equally relevant to Plaintiff's claim for net accumulations.

18. Mrs. Noon's life expectancy is also relevant to Plaintiff's asserted loss of Mrs. Noon's companionship and protection and for mental pain and suffering. *See* §768.21(2), Fla. Stat. (2017); McQueen, 909 So. 2d at 495-496 (holding that in a wrongful death claim, the jury may hear expert testimony on the issue of the decedent's life expectancy when assessing damages for loss of consortium; "Without some evidence of ***life expectancies***, how can the trier of fact intelligently measure the duration of the surviving spouse's loss?"; "some evidence relevant to ***joint life expectancies*** is necessary to a damages claim under section 768.21(2)") (emphasis added).

19. CARNIVAL accordingly has every right to present the unequivocally relevant evidence concerning the "state of [Mrs. Noon's] health [, in its entirety,] prior to her voyage on Carnival's vessel" for purposes of establishing Mrs. Noon's actual life expectancy and thereby providing the jury with a legally-authorized basis to limit the amount of Plaintiff's recoverable damages, if any.

WHEREFORE, Defendant CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES respectfully requests the Court to *deny* Plaintiff's Omnibus Motion in Limine for the reasons specifically addressed and discussed above.

Respectfully submitted,

*/s/ Katina M. Hardee*
CHRISTOPHER E. KNIGHT
Fla. Bar No. 607363
Email: cknight@fowler-white.com

ESTHER E. GALICIA
Fla. Bar No. 510459
Email: egalicia@fowler-white.com

KATINA M. HARDEE
Fla. Bar No. 16069
Email: khardee@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 789-9200
Facsimile: (305) 789-9201

*Attorneys for Defendant Carnival Corporation d/b/a Carnival Cruise Lines*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this _21st_ day of October, 2019, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ *Katina M. Hardee*
KATINA M. HARDEE
Fla. Bar No. 16069

**SERVICE LIST**

CASE NO. 18-cv-23181-Williams/Torres

Philip M. Gerson, Esq.
GERSON & SCHWARTZ, P.A.
1980 Coral Way
Miami, Florida 33145-2624
E-Mail: pgerson@gslawusa.com
filing@gslawusa.com
zdiaz@gslawusa.com
Telephone: (305) 371-6000
Facsimile: (305) 371-5749

*Attorneys for Plaintiff RANDALL NOON, as Personal Representative of the Estate of KAREN NOON, deceased*