UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 18-CV-23181-WILLIAMS/TORRES

RANDALL NOON, as Personal
Representative of the Estate of
KAREN NOON, Deceased,

Plaintiff(s),

v.

CARNIVAL CORPORATION, a Panamanian
Corporation d/b/a CARNIVAL CRUISE LINES,

Defendant(s).
_______________________________________________/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS (D.E. 84) TO REPORT AND RECOMMENDATION (D.E. 77) ON DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW (D.E. 50)**

Plaintiff Randall Noon, as Personal Representative of the Estate of Karen Noon, Deceased, responds to the Objections filed on November 20, 2019, by Defendant Carnival Corporation d/b/a Carnival Cruise Lines (D.E. 77) to the Report and Recommendation of the Honorable Edwin Torres, Magistrate Judge of November 6, 2017 (D.E. 77). The Magistrate Judge recommended denial in part of Carnival's Motion for Final Summary Judgment of August 23, 2019 (D.E. 50). Repeating the arguments asserted in its Motion for Summary Judgment, Carnival postulates an imaginary pleading trap derived from its own previous motion practice. Once more Carnival overlooks key testimony, referenced in Plaintiff’s memoranda and the Magistrate Judge's report, demonstrating that Carnival actually knew of Ms. Noon's critical medical condition in sufficient time for effective intervention but failed to implement any of the reasonably available measures to save her life. Carnival once more persists in its unwarranted

narrow view of its crewmembers as being mere isolated individuals rather than members of a team who should communicate and cooperate to accomplish common goals of their employer benefiting safety.

**Carnival continues to misunderstand the nature of vicarious liability in the maritime context**

Through a series of prior motions to dismiss the complaint and amended complaints, the pleadings are now clarified to make a point that should in any event be obvious - the Plaintiff is seeking to hold Carnival vicariously liable for the operational actions and inactions of its crewmembers, both medical and non-medical, while dealing with Karen Noon's known medical emergency. (*See* DE 1, 7, 8, 9, 12, 14, 17, 19, 22, 23, 24, 30, 33, 34). Both in its motion for summary judgment and its objections, Carnival argues that the current state of the pleadings, the result of its own previous motion practice, creates some pleading trap which prevents the Plaintiff from proceeding, since in Carnival's view the Plaintiff should have pled a cause of action for direct rather than vicarious liability of Carnival crewmembers. (DE 84 at Pages 5-6; DE 50 at Pages 5-6). Under controlling law no such pleading trap exists; Carnival's liability in this case is clearly vicarious, just as the Plaintiff has pled and the evidence shows. Carnival's arguments to the contrary reflect unwarranted confusion about the nature of vicarious liability.

A cruise line operator, like any other corporate entity, can act only through individual crewmembers or employees acting as its agents. *See* Eleventh Circuit Pattern Instruction 3.2.2 ("When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.").

Under the familiar concept of respondeat superior, a corporate employer is vicariously responsible for the negligent acts or omissions of its employees acting within the scope of their employment. In the maritime context, the principle of respondeat superior is explained as the vessel operator's being vicariously liable for crewmembers' negligence or breach of duty while acting in the "furtherance of the vessel owner's business ... ." *Zuniga v. TMF, Inc.*, 261 F. Supp 2d 518, 524 (E.D. Va. 2003). While acting in furtherance of the vessel owner's (or operator's) business, crewmembers are acting as agents of the owner or operator. They are acting on behalf of the vessel owner or operator and fulfilling, or failing to fulfill, its duties as a corporate entity, not separate duties owed by them as isolated individuals.

An action for "direct" liability refers to the situation in which a problem arises at a high managerial level of the vessel operator, rather than through the crewmembers' operational attempts to further the business of the vessel. "Direct" liability may exist, for example, when the vessel operator has negligently selected or trained its crew or negligently designed its vessel, where the operator has failed to enforce or implement policies necessary for safety, or where the operator's policies themselves are flawed. *See, e.g, Zuniga*, 261 F. Supp 2d at 524(distinguishing claims for "direct negligence" through "negligent hiring" of crew or "the manner that it managed the vessel or crew," such as an alleged failure to enforce the ship's drug use policy, from "vicarious liability" for torts committed by a crewmember acting "in furtherance of the vessel owner's business ... ."); *Grant v. Entertainment Cruises, Inc.*, 308 F.Supp.3d 338, 341-42 (D.D.C. 2018)(distinguishing a vessel owner's "direct" liability for failing to provide safe working conditions from owner's "vicarious" liability for a tort committed by the captain in furtherance of ship's business, in that case docking the vessel). Even in cases of direct liability,

however, an entity operating the vessel is necessarily acting through individual agents, the managerial level employees responsible for the direct negligence. The managers, like the crew, are agents implementing or failing to implement corporate duties of the operator, not their separate duties as individuals.

Since the great majority of cases against cruise lines (including this one) inherently deal with the vessel operator's vicarious liability for the negligent operational acts or omissions of various crewmembers, the liability in most cases is obviously vicarious and there is usually no need to address a distinction between vicarious and direct liability. In other cases the cruise line may violate its duties either directly, vicariously, or both. In such cases there is also no need to address the distinction. Thus it is not surprising that the case law expressly analyzing distinctions between direct and vicarious liability of vessel operators is limited and that many opinions simply refer to the duties of the cruise line, without needing to analyze whether the cruise line's liability for violation of those duties is direct, vicarious, or both.

For example, in the case of *K.T. v. Royal Caribbean Cruises, Ltd.*, No. 17-14237, 2019 WL 3312530 (11th Cir. 2019), cited by Carnival both in its summary judgment motion and at Page 5, footnote 3 of its Objections, the issues were the foreseeability of the onboard sexual assault on K.T. and the negligent failure of Royal Caribbean's crewmembers to prevent other passengers from incapacitating and sexually assaulting K.T. Since it was obvious and undisputed that, if Royal Caribbean were negligent at all, its negligence would arise from acts or omissions of its crewmembers in furthering ship's business, i.e. providing for the safety of passengers, there was no need in *K.T.* for the opinion to address or focus on the distinctions between vicarious and direct liability. The Court in *K.T.* made it clear that the liability alleged in



GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

that case was that "Royal Caribbean's crewmembers did nothing to prevent the large group of men from plying K.T. with enough alcohol to incapacitate her and did nothing to stop those men from leading her away to a private cabin," and that as a result of this failure by "Royal Caribbean's crewmembers" "***Royal Caribbean*** breached the duty of ordinary care it owed her." (DE 50 at Page 5, DE 84 at Page 5 n.3, *quoting K.T.*, 2019 WL 3312530 at *3)(emphasis in Defendant's Motion). It is thus clear from the very quote upon which Carnival relies that Royal Caribbean's liability as pled in *K.T.* arose from a failure to act by its "crewmembers," that K.T. had alleged the vicarious liability of Royal Caribbean for the neglect of its crewmembers, and that when the Eleventh Circuit stated that "Royal Caribbean breached the duty of ordinary care it owed [K.T.]," this was simply a shorthand way of saying that Royal Caribbean was vicariously liable for its crewmembers' failure as its agents to comply with its duty of ordinary care. *See also K.T.*, 2019 WL 3312530 at *6 ("that foreseeable and known danger imposed on Royal Caribbean *and its crew* a duty of ordinary reasonable care .... The allegations are that Royal Caribbean *and its crew* breached that duty ....")(emphasis added). Royal Caribbean breached its duty of reasonable care in *K.T.* through its vicarious liability for failures to exercise reasonable care by its crewmembers, the only individuals through whom it could act. There is no hint in the *K.T.* opinion that the individual crewmembers had some separate duties, independent of their duties as Royal Caribbean's agents to implement Royal Caribbean's duty of reasonable care toward K.T.

The duty of Carnival at issue in the present case is its duty to its apparently sick or injured passengers to "exercise reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances." *Franza v. Royal Caribbean Cruises, Ltd.*, 722 F.3d 1225, 1246 (11th Cir. 2014), *citing Barbetta v. S/S Bermuda Star*, 848 F.2d 1364,



GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

1371 (5th Cir. 1988). This duty of reasonable care includes a duty to evacuate passengers requiring medical care off the ship, if evacuation is reasonable and necessary under the circumstances. *See Gharfeh v. Carnival Corp.*, 309 F.Supp.3d 1317, 1330-31 (S.D. Fla. 2018); *Wohlford v. Carnival Corp.*, 2017 U.S. Dist. LEXIS 72901 at ** 11-12 (S.D. Fla. 1:17-cv-20703-UU, May 11, 2017); *Franza*, 722 F.3d at 1254. The existence and scope of the duty of medical evacuation in turn depends on what is reasonably required under the circumstances, taking into consideration all relevant factors. These include the nature and seriousness of the medical emergency, the location of the ship, and the availability and accessibility of the nearest reasonably adequate medical care off the ship. *See Gharfeh*, 309 F.Supp.3d at 1330-31(discussing factors relevant when determining the existence and scope of a duty to evacuate). This duty of reasonable aid and assistance may be violated directly, through the adoption or implementation of flawed policies regarding aid and assistance, or as in the present case vicariously, through failures by crewmembers acting in furtherance of the vessel's business to offer aid and assistance when warranted. In either event the vessel operator will be acting, or failing to act, through its agents; in either event the failure to offer aid and assistance is a breach of duty by the vessel operator, not the individual crewmembers. Nowhere in *Franza* or *Barbetta* is there any suggestion that the vessel operator's duty of aid and assistance for some unknown reason cannot be violated vicariously or that crewmembers have some distinct duty regarding aid and assistance, aside from their duties to offer reasonable aid and assistance as agents of the vessel operator. The reference to the vessel operator's duty of aid and assistance obviously includes the operator's vicarious liability for its crewmembers' operational breaches.

The fundamental flaw in Carnival's reasoning is that it persists, as it has in previous filings, in viewing its crewmembers as isolated individuals having no duty to communicate with each other or to cooperate to perform necessary tasks "in furtherance of the vessel owner's business," which is not their own personal business. Carnival's assumption that its crewmembers have no duty to communicate or cooperate with each other flies in the face of the purpose of imposing vicarious liability in the first place, let alone common sense. No business organization can function properly without clear and timely internal communication among employees who are working, or supposed to be working, toward common goals. The duty of the organization's employees and agents is to work together to accomplish the goals and fulfill the duties of the organization. On board a self-contained environment such as an ocean going vessel, internal communication to alert other crewmembers to developing critical situations is even more important, and lack of effective internal communication can have deadly results, as it did in this case.

In this case, as in *K.T.* and most negligence cases filed against cruise lines, the Plaintiff has alleged and intends at trial to prove breaches of the duty of reasonable care of the defendant cruise line, in this case Carnival, through the various failures of its crewmembers to exercise reasonable care in furtherance of the business of the vessel, providing reasonably required aid and assistance to Carnival's passengers. Since Carnival in this case, like Royal Caribbean in *K.T.*, could act or fail to act only through its crewmembers, Carnival in this case, like Royal Caribbean in *K.T.*, is vicariously liable for the negligent failure to act of its crewmembers operating in furtherance of the vessel's business. This is what the Plaintiff has alleged and the


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

evidence shows. Carnival's imaginary pleading trap simply reflects unwarranted confusion on its part as to what should be a simple matter, the nature of vicarious liability.

**Despite Having Actual Knowledge of Karen Noon's Medical Condition and its Emergency Nature, Carnival through its Crewmembers Failed to Summon Emergency Services or to Take any Substitute Action to Preserve her Life, Thereby Breaching both the Duty of Reasonable Care under Maritime Law and Undertaken Duties**

As a fall-back position Carnival posits that its medical and non-medical crewmembers breached neither a duty of aid and assistance under *Barbetta* and *Franza* nor an undertaken duty to monitor Ms. Noon's condition after providing her with an oxygen concentrator at her family's request. In this argument as well, Carnival persists in its flawed assumption that its crewmembers have no duty to communicate or cooperate with each other while acting as its agents.

Carnival undertook its duty to monitor Ms. Noon's condition vicariously, through Rosel Ursua, the nurse in the ship's medical center who provided the concentrator to the Noon family at their request. The undertaken duty was breached, as pled and as the evidence shows, when Carnival retrieved the concentrator upon which Ms. Noon had been relying once the ship had reached port in Miami, Florida, without summoning readily available land based emergency services[1], providing Ms. Noon with a substitute portable oxygen system to sustain her until emergency services could arrive, or taking both actions.

At approximately 7:00 A.M. on the morning the ship returned to port, an unidentified crewmember called the Noon family's stateroom to retrieve the concentrator, explaining to Ms. Noon's daughter Juanita that Carnival "had to account for all their equipment." (DE 52,

[1] Carnival's corporate representative testified in deposition that with the ship docked in the Port of Miami as it was, land based emergency services would have been able to respond within "five minutes" or less if timely summoned. (DE 57, Deposition of Suzanne Vazquez, July 9, 2019 at Pages 87:9-12; 89:1-9; 90:7-21; 94:20-95:16).

Deposition of Juanita Noon, July 25, 2019 at Page 77:2-5). Ms. Juanita Noon then had the following succinct conversation with the unidentified crewmember, the import of which Carnival continues to overlook:

> Then I asked them okay, so what are we supposed to do, do you have the portable ones. They said they don't have any that could leave the ship. I said okay, then I guess we're going to go to the ER as soon as we get off the ship, and it wasn't much longer somebody was back or at the door because the door was open because we were packing.
>
> (DE 52, Juanita Noon at Page 77:6-12).

Even assuming for the sake of argument that the unidentified crewmember was too obtuse or inattentive to understand without being expressly told that a person using an oxygen concentrator was relying on it to assist with breathing and would be in an emergency medical situation if the concentrator were removed without a substitute, Juanita Noon did expressly inform the crewmember of her mother's critical situation by explaining the family's intention to "go to the ER as soon as we get off the ship." That she phrased the family's request for emergency assistance in that manner rather than using the exact words "please call 911" hardly made the request less urgent. Any crewmember possessing even a modicum of judgment and common sense would understand from Juanita Noon's statement, if not otherwise, that Karen Noon would require immediate emergency assistance once the oxygen concentrator was retrieved.

Juanita Noon also expressly requested a second reasonable form of aid and assistance, a portable oxygen system. This request also made it clear to the crewmember, or should have, that Karen Noon still had a need for emergency oxygen supplementation and consequently for emergency services.


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

Carnival assumes as it has previously that no portable oxygen system was available onboard and that the crewmember advised Juanita Noon of this, but that is not what the either the crewmember or Carnival's corporate representative said. According to Juanita Noon, the crewmember said, not that no portable oxygen systems were available onboard, but that none that "could leave the ship" were available. This ambiguous statement could mean as Carnival has suggested that no portable oxygen systems were present on the vessel, but could also mean that one was available but that Carnival policy would not allow it to leave the ship with the Noon family, since Carnival had to "account for all of its equipment" even at the cost of its passengers' lives. Furthermore, Carnival's corporate representative testified that Carnival vessels did carry portable oxygen systems, precisely for use in "emergency" situations, but would not allow them to be used inside passenger staterooms due to a potential fire risk. (DE 57, Vazquez at page 63:18-25).

Carnival points out that, since the crewmember who called to retrieve the concentrator is unidentified, it is not clear whether that crewmember was nurse Ursua, some other crewmember from the medical center, or a crewmember working in a non-medical department.[2] Since the crewmember through whom Carnival undertook its duties with regard to the concentrator, Nurse Rosel Ursua, worked in the ship's medical center, and the crewmember who called to retrieve the concentrator may have been a different individual and may not have worked in the medical department at all, Carnival argues that the Plaintiff cannot prove that the individual crewmember

[2] Nurse Ursua testified that Carnival's policy regarding passenger requests for assistive equipment such as the concentrator was that the passenger was supposed to make the request initially to the ship's non-medical guest services department, which would then relay the request to the medical center. (Deposition of Rosel Ursua, July 1, 2019 at Page 43:10-18).


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

who undertook the duty was the same one who breached the duty and therefore cannot prove breach of an undertaken duty.

There are two serious flaws with Carnival's reasoning. First, as explained in detail above, the duties at issue are the duties of Carnival as an entity, not individual duties of individual crewmembers. Carnival undertook the duty to monitor Ms. Noon's use of the oxygen concentrator vicariously, through its crewmember Nurse Ursua. It also breached that undertaken duty vicariously, through the crewmember who spoke with Juanita Noon and then failed either to take appropriate action or to communicate with other crewmembers who could. Since the duty was undertaken and breached by Carnival, acting through crewmember agents who were in turn acting in furtherance of the vessel's business, not their own, it makes no difference whether the crewmembers through whom it undertook and breached the duty were the same or different; in either event, Carnival was vicariously liable for their acts and omissions in furtherance of the vessel's business.

The second flaw in Carnival's argument is the one addressed above in the discussion of the nature of vicarious liability. Carnival considers the acts of the crewmembers providing and retrieving the concentrator as acts of isolated individuals, not as acts of Carnival's agents who should be communicating and cooperating to accomplish Carnival's business. This view of the crewmembers' duties is nonfunctional, unrealistic, and in an enclosed environment such as a cruise ship can (and in this case did) lead to deadly results. The various crewmembers interacting with the Noon family had a duty to communicate with each other and with other crewmembers as necessary to fulfill both Carnival's undertaken duty and its duty of aid and assistance. They failed in their duty to communicate with each other, a failure leading directly to


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

Ms. Noon's death. Magistrate Judge Torres' ruling denying summary judgment in part is correct, and the Court should adopt his report and recommendation as the ruling of the Court.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 3, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I ALSO CERTIFY that the foregoing document is being served this day on all counsel of record or pro se parties identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

**s/PHILIP M. GERSON**
PHILIP M. GERSON
Florida Bar No. 127290
pgerson@gslawusa.com
filing@gslawusa.com
cbenedi@gslawusa.com
GERSON & SCHWARTZ, P.A.
1980 Coral Way
Miami, FL 33145-2624
Telephone: (305) 371-6000
Facsimile: (305) 371-5749
Attorneys for Plaintiffs

**SERVICE LIST**
NOON v. CARNIVAL CORP.
CASE NO. 18-CV-23181-WILLIAMS/TORRES

Philip M. Gerson, Esq.
Florida Bar # 127290
E-mail: pgerson@gslawusa.com
Nicholas I. Gerson, Esq.
Florida Bar # 20899
E-mail: ngerson@gslawusa.com
Edward S. Schwartz, Esq.
Florida Bar # 346721
E-mail: eschwartz@gslawusa.com
David Markel, Esq.,
Florida Bar # 78306
E-mail: dmarkel@gslawusa.com
Raul G. Degaldo II, Esq.
Florida Bar # 94004
E-mail: rdelgado@gslawusa.com
GERSON & SCHWARTZ, P.A.
1980 Coral Way
Miami, Florida 33145
Attorneys for Plaintiff

Marc J. Schleir
Florida Bar # 389064
E-mail: MSchleir@fowler-white.com
E-mail: Mjs@fowler-white.com
Christopher Knight
Florida Bar # 607363
E-mail: Cknight @fowler-white.com
Amanda A. Kessler
Florida Bar # 60885
E-mail: akessler@fowler-white.com
Andrew Garrett Tuttle
E-mail: atuttle@fowler-white.com
Katina M. Hardee
E-mail: KHardee@fowler-white.com
FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Attorneys for Defendant